# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JEREMY PINSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-486 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 11, 13, 21 |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, *et. al*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND MOTION TO APPOINT COUNSEL

## I. INTRODUCTION

*Pro se* Plaintiff Jeremy Pinson ("Pinson"), an inmate at the United States Penitentiary in Tucson, Arizona, began this case by filing a Freedom of Information Act ("FOIA") complaint in December 2016. Pinson now files three motions for preliminary injunction, and in the alternative seeks the appointment of counsel. Pinson asks this Court to enjoin the United States Department of Justice ("DOJ") from withholding court filings, denying access to e-mail communications and the law library, failing to provide stamps, and disseminating information to other inmates. Pinson separately asks the Court to require the Bureau of Prisons ("BOP") to respond to a particular FOIA request in compact disc format. The Court denies the motions for preliminary injunction because Pinson has not shown that she will be irreparably harmed in the absence of a preliminary injunction or is likely to succeed on the merits. Pinson has also failed to show that the appointment of counsel is justified.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Pinson, together with two other individuals now no longer a part of this action, initially filed a complaint in December 2016 against the DOJ and the Central Intelligence Agency ("Defendants"). *See* Pl.'s Compl. at 1, ECF No. 1. After Pinson was denied leave to proceed *in forma pauperis*, she petitioned the D.C. Circuit for a writ of mandamus in March 2017. *See In re: Jeremy Pinson*, 17-5039, ECF No. 1664975 (D.C. Cir. Mar. 7, 2017). On February 21, 2018, the D.C. Circuit remanded the matter back to this Court after it granted Pinson's petition. *See* Circuit Court Order, ECF No. 3.

In her complaint, Pinson alleged that Defendants violated FOIA, 5 U.S.C. § 552, after she submitted a "dozen" FOIA requests to seven entities and did not receive a response within the time frame provided under the statute.[1] *See* Pl.'s Compl. at 1–2. Pinson further claimed that the BOP's Office of Internal Affairs maintained documents and e-mails containing false conclusions and information about Pinson that the CIA refused to allow her to contest. *See id.* at 2. Pinson requested the release of the records and correction of the false information. *Id.*

On May 11, 2018, Defendants moved to dismiss Pinson's complaint. *See* Defs.' Mot. to Dismiss and Mot. for More Definite Statement at 1, ECF No. 9-1. Defendants pointed to Pinson's inability to identify the subject matter or dates of the FOIA requests, and to the lack of any indication as to what information about her was purportedly false. *Id.* at 2. Pinson filed an amended complaint on June 22, 2018, which added alleged violations of the Administrative Procedure Act, 5 U.S.C. § 702, and First and Eighth Amendments. *See* Pl.'s First Am. Compl. at 1, ECF No. 16.

---

[1] 5 U.S.C. § 552(a)(6)(A)(i) provides that each agency upon request for records shall "determine within 20 days . . . whether to comply with such request."

Pinson filed her first motion for preliminary injunction on May 29, 2018, alleging that DOJ employees have not given her any filings in the case; have blocked an e-mail address that she used to access records and research needed to amend her complaint, info@helpfromoutside.com; and have been disseminating information to a fellow inmate about a Prison Rape Elimination Act ("PREA") investigation involving her, in violation of the Privacy Act, 5 U.S.C. § 552a. *See* Pl.'s First Mot. for Preliminary Inj. ("Pl.'s First Mot.") at 1, ECF No. 11; First Decl. of Jeremy Pinson ("First Pinson Decl.") ¶ 3, ECF No. 11. Pinson requests that the Court "enjoin (i) continued withholding of mail relating to [the] litigation[,] (ii) continued blockage of engaging in legal activities with info@helpfromoutside.com, (iii) disseminating contents of agency files to Tyreise Swain." Pl.'s First Mot. at 2.

Defendants state in their opposition to Pinson's first motion that they first learned Pinson had not received a copy of the Defendants' motion to dismiss on May 31, 2018. *See* Decl. of Brian Field ("Field Decl.") ¶ 5, ECF No. 12-1. Defendants argue that notices from the court or the United States Attorney's Office to Pinson are not tracked and therefore that it is impossible to fully determine whether she receives legal mail. *See* First Decl. of Clinton Stroble ("First Stroble Decl.") ¶ 8, ECF No. 12-2; Defs.' Opp'n to Pl.'s First Mot. for Preliminary Inj. (Defs.' First Opp'n) at 4, ECF No. 12. Defendants, however, assert that Pinson was delivered a copy of all docket entries in the case to "[her] current incarceration location" on June 7, 2018.[2] Field Decl. ¶ 7; Defs.' First Opp'n at 2.

Furthermore, Defendants argue that an Administrative Remedy Report produced by the BOP reflects that Pinson submitted 78 grievance requests at the BOP's Institutional, Regional, or

---

[2] Pinson admitted to receiving Defendants' motion to dismiss and "other documents" on June 13, 2018. Third Decl. of Jeremy Pinson ¶ 1, ECF No. 15.

3

Central Office levels from June 2017 to June 2018, but none expressed a concern about not receiving filings regarding her FOIA case or access to e-mail services. *See* First Stroble Decl. ¶¶ 4–5; Defs.' First Opp'n at 6. Defendants also argue that Pinson's ability to e-mail info@helpfromoutside.com was terminated after the BOP learned that representatives from helpfromoutside.com were sending messages to third parties on inmates' behalf in violation of BOP monitoring procedures. *See* First Stroble Decl. ¶ 9; Defs.' First Opp'n at 6.

On June 11, 2018, Pinson filed her second motion for preliminary injunction, and in the alternative, sought the appointment of counsel. Pl.'s Second Mot. for Preliminary Inj. and Mot. to Appoint Counsel ("Pl.'s Second Mot."), ECF No. 13. Pinson requests that the Court enjoin DOJ from depriving her of stamps needed to mail items to the court and of the ability to "send legal mail or [access] a law library terminal during lengthy lockdowns." *Id.* at 3. Pinson states that during a ten-day lockdown period from May 25, 2018 to June 4, 2018, no one provided her with any postage despite her requests, no one came to pick up her outgoing legal mail, and all out-of-cell movement was suspended. *See* Second Decl. of Jeremy Pinson ("Second Pinson Decl.") ¶¶ 3–4, ECF No. 13.

Defendants oppose Pinson's second motion on similar grounds to her first motion. *See* Defs.' Opp'n to Pl.'s Second Mot. for Preliminary Inj. ("Defs.' Second Opp'n"), ECF No. 17. In response to Pinson's alleged inability to access the law library terminal during prison lockdowns, Defendants argue that although inmates are not allowed to access the law library during lockdowns, they are permitted to request materials from the library. *See* Second Decl. of Clinton Stroble ("Second Stroble Decl.") ¶¶ 3–4, ECF No. 17-1; Defs.' Second Opp'n at 4. While Pinson's prison is no longer on lockdown status, Defendants insist that a BOP employee had personally picked up mail from her during the previous lockdown. *See* Second Stroble Decl. ¶ 4;

Defs.' Second Opp'n at 5. Defendants also contend that Pinson was provided ten postage stamps during the previous lockdown, pursuant to a general policy that inmates are permitted twenty stamps for legal mail and five stamps for social mail monthly. *See* Second Stroble Decl. ¶ 4; Defs.' Second Opp'n at 5. Defendants assert that Pinson has no pending administrative appeal regarding her claims for access to legal mail, lack of stamps, or use of the inmate law library. *See* Defs.' Second Opp'n at 5.

On August 27, 2018, Pinson filed her third motion for preliminary injunction. Pl.'s Third Mot. for Preliminary Inj. ("Pl.'s Third Mot."), ECF No. 21. Pinson asks that the Court require the BOP to supply the production of documents in FOIA No. 2017-01605 in compact disc format. *Id.* at 1. Defendants incorporate their grounds for opposition to Pinson's first two motions in their opposition to her third motion. *See* Defs.' Opp'n to Pl.'s Third Mot. for Preliminary Inj. ("Defs.' Third Opp'n"), ECF No. 23. Defendants argue that Pinson seeks relief beyond that available through a preliminary injunction. *Id.* at 1.

The three motions for preliminary injunction, and the motion for appointment of counsel, are now before this Court.

### III. LEGAL STANDARD

**A. PRELIMINARY INJUNCTION**

"[A] preliminary injunction is an injunction to protect [the] plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits." *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 954 (D.C. Cir. 2005) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedures § 2947 (2d ed. 1992)). "[T]he decision to grant injunctive relief is a discretionary exercise of the district court's equitable powers." *John Doe Co. v. Consumer Fin. Prot. Bureau*, 235 F. Supp.

3d 194, 201 (D.D.C. 2017) (quoting *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1209 (D.C. Cir. 1989)). A preliminary injunction is an "extraordinary remedy," and one is "never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

To warrant preliminary injunctive relief, the moving party "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 20. Of these factors, likelihood of success on the merits and irreparable harm are particularly crucial. S*ee Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (reading *Winter* "to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction'") (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (2009) (Kavanaugh, J., concurring)); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (internal citations and quotation marks omitted) ("[A] movant must demonstrate at least some injury for a preliminary injunction to issue, for the basis of injunctive relief in federal courts has always been irreparable harm.").

**B. APPOINTMENT OF COUNSEL**

While a civil litigant is not guaranteed counsel, *see Gaviria v. Reynolds*, 476 F.3d 940, 943 (D.C. Cir. 2007), federal courts are authorized by statute to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *accord Willis v. FBI*, 74 F.3d 531, 532 (D.C. Cir. 2001). "The district court judge controls the 'discretionary' decision of whether to appoint counsel, and that decision 'will be set aside only for abuse.'" *Pinson v. DOJ*, 273 F. Supp. 3d 1, 4 (D.D.C. 2017) (quoting *Willis*, 74 F.3d at 532). Local Civil Rule 83.11 applies in

determining whether appointment of counsel is appropriate in FOIA cases. *Willis*, 74 F.3d at 533. The Court must balance several factors:

> (i) the nature and complexity of the action; (ii) the potential merit of the *pro se* party's claims; (iii) the demonstrated inability of the *pro se* party to retain counsel by other means; and (iv) the degree to which the interests of justice will be served by appointment of counsel, including the benefit the Court may derive from the assistance of the appointed counsel.

D.D.C. Civ. R. 83.11 (b)(3). Any one factor may be controlling. *Willis*, 74 F.3d at 532 ("Given the magistrate[] [judge's] conclusion that [the plaintiff] was capable of handling his relatively straightforward FOIA case unaided, the magistrate did not need to go any further.").

### IV. ANALYSIS

Pinson requests the Court to enjoin DOJ from 1) continuing to withhold mail related to the litigation; 2) denying her the ability to engage in legal activities with info@helpfromoustide.com; 3) disseminating contents of agency files to Tyreise Swain; 4) depriving her of the opportunity to send legal mail or access a law library terminal during lengthy lockdowns; and 5) depriving her of the stamps necessary to mail items to the court. *See* Pl.'s First Mot. at 2; Pl.'s Second Mot. at 3. Pinson also requests that the Court 6) require the BOP to respond to a particular FOIA request in compact disc format. Pl.'s Third Mot. at 1. In the alternative, Pinson asks the Court to appoint counsel. Pl.'s Second Mot. at 3.

For each requested preliminary injunction, the Court evaluates whether Pinson has demonstrated that she is likely to succeed on the merits and that she will suffer an irreparable harm absent issuance of a preliminary injunction. The Court concludes that she has not. Because these requirements are mandatory, the Court does not consider the remaining factors. *See Howard v. Evans*, 193 F. Supp. 2d. 221, 228 (D.D.C. 2002) ("[T]he court need not determine the viability of . . . plaintiff's arguments respecting the remaining . . . prongs of [a] preliminary

injunction standard in light of the rule that a preliminary injunction may only issue when the movant demonstrates a showing that supports *all* four of preliminary injunction factors"). The Court denies all requests for preliminary injunction.

The Court also evaluates whether appointment of counsel is appropriate given the facts and circumstances of the case. Pinson has failed to demonstrate the complexity and merits of the action, and her inability to retain counsel by other means. The Court therefore denies the request for appointment of counsel.

### A. MOTIONS FOR PRELIMINARY INJUNCTION

Pinson moves for preliminary injunctive relief on a variety of issues relating to her access to this Court and ability to litigate her FOIA claims. Defendants assert that Pinson has failed to exhaust her administrative remedies under the Prison Litigation Reform Act (PLRA) regarding her access to litigation-related mail, e-mail services, postage stamps, and to the law library during prison lockdowns, and thus that she is barred from bringing a civil action. *See* Defs.' First Opp'n at 5–7; Defs.' Second Opp'n at 5–6. The Court does not address this argument because Pinson has not shown that she will suffer irreparable harm absent a preliminary injunction and is likely to succeed on the merits of any of these claims.

#### 1. Mail Relating to This Litigation

Pinson first alleges that she has not received any filings in this case and requests the Court to enjoin DOJ from withholding mail related to the litigation. *See* Pl.'s First Mot. at 1–2. In order to establish that she will suffer "irreparable harm" absent an injunction, Pinson must point to an injury that is "both certain and great[,] . . . actual and not theoretical[,]" and so imminent "that there is a clear and present need for equitable relief." *John Doe Co.*, 235 F. Supp. 3d at 202–03 (internal quotation marks omitted) (quoting *Chaplaincy of Full Gospel*

*Churches*, 454 F.3d at 297). Defendants argue that a copy of all docket entries in this litigation was sent by certified mail to Pinson on June 7, 2018. *See* Defs.' First Opp'n at 2. Pinson admits to receiving the motion to dismiss and other documents on June 13, 2018. *See* Third Decl. of Jeremy Pinson ¶ 1, ECF No. 15. Pinson also received Defendants' opposition to her second motion for preliminary injunction, as she filed a reply on July 16, 2018. *See* Pl.'s Reply to Opp'n to Second Mot. for Preliminary Inj. ("Pl.'s Reply"), ECF No. 19. Pinson has not shown that her failure to receive pleadings in this matter was due to anything other than inadvertently misaddressed mailings, or that such inadvertence is likely to be repeated in the future. Pinson's claim that she was not given any filings in this case is thus moot, and she cannot point to an injury likely to cause the "irreparable harm" needed to obtain the requested preliminary injunction against continued withholding of mail. *See Winter,* 555 U.S. at 20. Accordingly, Pinson's request to enjoin DOJ from withholding mail related to this litigation is denied.

### 2. Access to E-mail

Next, Pinson requests the Court to enjoin DOJ from blocking access to the e-mail address info@helpfromoutside.com. *See* Pl.'s First Mot. at 2. Pinson asserts that she cannot access records and research needed to "pay[] FOIA and [c]ourt filing fees, and amend[] the complaint in this action." First Pinson Decl. ¶ 2. Defendants argue that the warden of Pinson's prison terminated access to the e-mail address after learning that representatives from helpfromoutside.com were sending messages to third parties on inmates' behalf in violation of BOP monitoring procedures. *See* Defs.' First Opp'n at 6. Pinson fails to demonstrate that she is likely to succeed on the merits or that she will suffer irreparable harm absent a preliminary injunction.

Defendants assert that Pinson's complaint did not include any challenges to BOP policies, and that because a preliminary injunction serves a "'limited purpose,'" it is not warranted here. *See* Defs.' First Opp'n at 6–7 (quoting *Select Milk Producers, Inc.*, 400 F.3d at 954). Pinson's initial complaint does not mention her inability to access the e-mail address, but her amended complaint does. *See* Pl.'s First Am. Compl. ¶¶ 15–16. Pinson states in the Amended Complaint that BOP employees told her access to the e-mail address was blocked in order to "inhibit [Pinson]'s access to her paralegal" and "deny [her] the ability to pay court filing fees and access PACER through her assistant." *Id*. Pinson further asserts that representatives from helpfromoutside.com have never passed messages from inmates to third parties, and that Defendants filed false declarations to "retaliate against [Pinson]." *Id*. ¶ 17–18.

Pinson's motion details that the "[t]he blockage has prevented access to records and research needed to amend the [c]omplaint in this [c]ase." Pl.'s First Mot. at 1. While the Amended Complaint does not indicate what claim Pinson purports to bring in connection with the termination of her e-mail access, this alleged denial of access to records and research can essentially be characterized as a denial of Pinson's constitutional right to access the courts. A claim based on the denial of such right requires a "very high bar of showing that [Pinson] had been injured by [her] lack of access." *Pinson*, 273 F. Supp. 3d at 10; *see also Lopez v. District of Columbia*, 300 F. Supp. 3d 253, 256 (D.D.C. 2018) (internal citations and quotation marks omitted) (granting defendants' motion to dismiss because plaintiff's "path to the court [wa]s not completely foreclosed" and thus he was not "presently denied an opportunity to litigate" as required "to make out a forward-looking constitutional-right-of-access [to the courts] claim"); *Isaac v. Samuels*, 132 F. Supp. 3d 56, 59–60 (D.D.C. 2015) (citations omitted) (granting defendants' motion to dismiss because plaintiff could not show "actual prejudice or injury from

10

BOP's failure to provide him with state law materials" to challenge his conviction during his incarceration).

Here, Pinson does not identify any motion or complaint that she has been prevented from filing, and "is thus far from demonstrating 'that a nonfrivolous legal claim ha[s] been frustrated or . . . impeded.'" *Pinson*, 273 F. Supp. 3d at 10 (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996)). To the contrary, Pinson has amended her complaint and responded to the government's pleadings. *See* Pl.'s Response to Defs.' Mot. to Dismiss, ECF No. 15; Pl.'s Am. Compl.; Pl.'s Reply. Accordingly, she has not demonstrated a likelihood of success on the merits on a claim for lack of access to the courts.

Second, to the extent the Amended Complaint points to any other right of action subject to a lower standard than the constitutional right of access to the courts, Pinson has also not demonstrated that she will suffer irreparable harm absent an injunction. Even without access to her e-mail, Pinson has been able to file a significant number of motions and briefs, including in response to briefs filed by the Government. Neither has she shown an inability to pay any fees necessary for the prosecution of this action. Pinson makes no showing as to how the lack of access to info@helpfromoutside.com has injured, or will injure, her ability to continue prosecuting this case. Because she has not pointed to an irreparable harm that would result from failing to grant an injunction and because she is not likely to succeed on the merits, Pinson's motion to enjoin DOJ from blocking access to info@helpfromoutside.com is denied.

### 3. Dissemination of Agency Files

Pinson also requests the Court to enjoin the DOJ from disseminating contents of agency files to a fellow inmate, Tyreise Swain. *See* Pl.'s First Mot. at 2. Specifically, Pinson alleges that Swain was provided information about a PREA investigation involving her. *See id.* at 1.

The Court denies the motion for preliminary injunction because Pinson has not shown she will suffer irreparable harm absent an injunction.

Defendants point out that a preliminary injunction has a "limited purpose"—to "preserve the trial court's power to adjudicate the underlying dispute by maintaining the status quo ante[,]" *Select Milk Producers*, 400 F.3d at 954, and note that the PREA investigation was not mentioned in Pinson's original complaint. However, Pinson has now raised the issue in her amended complaint, *see* Pl.'s Am. Compl. ¶ 20, and the Court accordingly considers whether she has met the standard for a preliminary injunction.

Again, Pinson has not shown that she will be irreparably harmed by the absence of a preliminary injunction. In order to demonstrate irreparable harm, Pinson must allege an injury that is "concrete and corroborated, not merely speculative." *E.g. Toxco, Inc. v. Chu,* 724 F. Supp. 2d 16, 30 (D.D.C. 2010). Here, Pinson does not provide any indication of an ongoing release of information that continues to damage her.

First, Pinson fails to make clear that the agency has released anything to Swain. Instead, she implies that Swain took advantage of the trust the BOP placed in him to obtain unauthorized access to the alleged information. *See* First Pinson Decl. ¶ 3 (supporting claim of dissemination of documents by noting that Swain "has access to . . . inmate records which are unsecured by virtue of his extended employment in a staff office area"). Therefore, at most, Pinson seems to complain about the security of the documents, rather than about an agency release. But Pinson fails to provide sufficient factual information indicating what information is stored, and where, that Swain is allowed to access. Nor has Pinson explained how she has first-hand knowledge to make these assertions. This makes Pinson's allegations highly speculative.

Second, Pinson fails to allege that further release of agency files and dissemination of their contents will injure her in the future, and instead only argues that the dissemination of documents injured her in the past by "labeling [her] as an informant." Pl.'s Am. Compl. ¶ 22. Pinson has alleged that information *was* made available to Swain, which *had* the effect of causing damage, but nothing more. *See* Pl.'s Am. Compl ¶ 22 ("The release of the PREA details to Swain *had* the net effect of labeling [Pinson] as an informant because it *was* disseminated by Swain to numerous other inmates.") (emphasis added). Pinson requests in her motion for preliminary injunction that "agency files" no longer be released, but not agency files that concern her specifically. *See* Pl.'s First Mot. at 2. Because Pinson only alleges a speculative future injury resulting from a generalized claim of dissemination of agency files to Swain, she cannot show that she will be irreparably harmed without a preliminary injunction and her request to enjoin DOJ from disseminating contents of agency files is denied.

### 4. Access to Legal Mail and the Law Library During Lockdowns

Next, Pinson requests the Court to enjoin DOJ from depriving her of the "opportunity to send legal mail or [access] a law library terminal during lengthy lockdowns." Pl.'s Second Mot. at 3. The Court denies the motion for preliminary injunction because Pinson has not shown that she is likely to succeed on the merits or that she would suffer irreparable harm absent a preliminary injunction.

Pinson is unable to show a likelihood of success on the merits. Pinson again appears to characterize her claims for lack of access to legal mail and to the law library as claims for interference with her right to access the courts, and to argue that lack of access during lockdowns is in itself a constitutional violation. *See* Pl.'s Second Mot. at 2 (arguing that denial of stamps to mail legal documents violates the First Amendment and pointing to *Bounds v. Smith*, 430 U.S.

817, 824–25 (1977)). However, as noted in part IV.A.2, a constitutional right of access claim requires a very high showing of injury. Pinson contends that her prison was "in a state of lockdown" when she submitted her second motion for preliminary injunction on June 11, 2018. Pl.'s Second Mot. at 1. But thereafter, Pinson filed an amended complaint, responded to Defendants' motion to dismiss and Defendants' opposition to her second motion for preliminary injunction, and filed a third motion for preliminary injunction. Clearly, Pinson has not demonstrated "that a nonfrivolous legal claim ha[s] been frustrated or . . . impeded[,]" *Pinson*, 273 F. Supp. 3d at 10 (quoting *Lewis*, 518 U.S. at 349), and she is unable to establish a likelihood of success on the merits of a claim for access to the courts.

Moreover, Pinson is also unable to show that she will suffer irreparable harm absent an injunction. Pinson's prison is no longer on lockdown. *See* Second Stroble Decl. ¶ 4. Because she now appears to have the ability to access the law library and send legal mail, this issue is thus moot and she cannot point to the irreparable harm required for a preliminary injunction. *See, e.g.*, *John Doe Co.*, 235 F. Supp. at 202 (noting that demonstrating irreparable harm requires pointing to an injury "both certain and great[,] . . . actual and not theoretical[,]" and so imminent "that there is a clear and present need for equitable relief" (internal quotation marks omitted) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297)). Accordingly, Pinson's request to enjoin DOJ from depriving her of the ability to send legal mail and access the law library during prison lockdowns is denied.

### 5. Access to Stamps

Pinson next requests the Court to enjoin DOJ from depriving her of stamps necessary to mail items to the court. Pl.'s Second Mot. at 3. Pinson and the Defendants dispute whether Pinson had access to postage stamps in the past. *Compare* Second Pinson Decl. ¶ 3, *with* Second

Stroble Decl. ¶ 4.  The Court denies the motion for preliminary injunction because Pinson has failed to show likelihood of success on the merits or irreparable harm.

Pinson again appears to characterize her claim as one for interference with her right of access to the courts, because she argues that the government is intentionally denying her stamps to prevent her from communicating with the Court.  *See* Pl.'s Second Mot. at 1–2 (noting that the DOJ is "willfully denying [her] postage to obstruct her access to this court and others" and quoting *Bounds*, 430 U.S. at 824–25).  As explained in part IV.A.2, a claim based on the denial of such right requires a "very high bar of showing that [Pinson] had been injured by [her] lack of access." *Pinson*, 273 F. Supp. 3d at 10.  Following the filing of her second motion for preliminary injunction, Pinson filed an amended complaint, responded to Defendants' motion to dismiss and Defendants' opposition to her second motion, and filed a third motion for preliminary injunction, all after alleging she was deprived of the stamps necessary to mail items to the court.  Once again, there is no suggestion that Pinson's ability to assert her legal claims has been significantly frustrated or impeded, and therefore she is unable to demonstrate a likelihood of success on the merits of a claim for access to the courts.

Pinson has also failed to show that she will suffer irreparable harm absent an injunction.  As noted above, Pinson has been able to file numerous motions with the Court despite her alleged lack of access to stamps.  It does not appear that Pinson has been detrimentally impacted by the alleged lack of stamps, and there is therefore no indication that she will suffer any harm absent an injunction.  And Pinson's prison is no longer on lockdown, *see* Second Stroble Decl. ¶ 4, thus any issue with stamp delivery during the lockdown is moot.  Accordingly, Pinson's request that the Court enjoin DOJ from depriving her of stamps necessary to mail items to the court is denied.

15

### 6. Production of Documents in Compact Disc Format

Finally, Pinson asks the Court to "require[] defendants to supply the production of documents in Bureau of Prisons FOIA No. 2017-01605, in Compact Disc format." Pl.'s Third Mot. at 1. The Court denies the motion for preliminary injunction because Pinson has not shown that she will be irreparably harmed absent a preliminary injunction.

Pinson argues that "the BOP refuses to provide the information in CD format" as required by 5 U.S.C. § 552(a)(3)(B) for her FOIA request No. 2017-01605, and is now "trying to evade such a production because it is trying to force [her] to accept the material in paper-format for the duplication cost of $100.00." Pl.'s Third Mot. at 1. The underlying FOIA request is part of the Amended Complaint, *see* Am. Compl. at 5, and this request for a preliminary injunction thus asks the Court to order a specific type of relief on Pinson's claim in the Amended Complaint for release of all requested information under FOIA, *see id.* at 4. Whether, and how, any production of documents to Pinson should be made pursuant to her claims in the Amended Complaint is an issue that will be addressed if raised by the parties during summary judgment briefing of the underlying FOIA claims. Pinson has not indicated why she will be harmed if the issue is not addressed now, and there is therefore no showing of irreparable injury that could support a preliminary injunction. Pinson's request for a preliminary injunction to require compact disc production is denied.

### B. MOTION FOR APPOINTMENT OF COUNSEL

In the alternative to an injunction, Pinson asks the Court to appoint counsel in order to "ameliorate all such problems" for which she seeks preliminary injunctive relief. *See* Pl.'s Second Mot. at 2–3. Federal courts can provide for the appointment of counsel when a person is unable to afford an attorney. 28 U.S.C. § 1915(e)(1); *accord Willis*, 74 F.3d at 532. The Court

must consider the nature, complexity, and potential merits of the action, along with the Plaintiff's inability to retain counsel by other means, and the interests of justice that are served through such appointment. D.D.C. Civ. R. 83.11 (b)(3). "Because Plaintiff is proceeding *pro se,* the Court will construe her filings more liberally than it would the formal pleadings or legal briefs drafted by lawyers." *Ojelade v. Unity Health Care, Inc.*, 962 F. Supp. 2d 258, 261 (D.D.C. 2013) (citing *Thompson v. HSBC Bank USA, N.A.,* 850 F. Supp. 2d 269, 273 (D.D.C. 2012)). Because three of the factors the Court considers point away from appointing counsel, the Court denies the motion.

First, Pinson does not assert that her claims are likely to raise complex legal or factual issues that will require representation, nor do the claims themselves appear to present complex legal or factual issues at this stage. Pinson states that she seeks appointment of counsel in order to help prevent multiple alleged acts by Defendants directed at her ability to litigate her FOIA claims. And in her Amended Complaint, she alleges a straightforward set of facts involving the multiple Defendants' failure to respond to FOIA requests and alleged retaliation against her. Pl.'s Am. Compl. at 3. The mere fact that "many requests" are involved does not "increase the complexity [of her case] by very much." *Pinson*, 273 F. Supp. 3d at 5. There are no "complex questions of fact" immediately discernable at this stage. *Saunders v. Davis*, 2016 WL 4921418, at * 15 (D.D.C. Sept. 15, 2016). And Pinson has very capably pursued her FOIA claims without the assistance of appointed counsel in her previously filed case also before this court. *See generally* Pinson v. U.S. DOJ, No. 12-cv-1872-RC (D.D.C.). This factor weighs against the appointment of counsel.

Pinson has also not demonstrated to the Court through any filings that she is unable to obtain counsel on her own. None of Pinson's communications with the Court have indicated her

17

efforts or inability to obtain counsel. Without more information, "[t]aking the unusual step of appointing civil counsel would be particularly inappropriate in light of [Pinson's] failure to show that [s]he has previously sought counsel . . . ." *Saunders,* 2016 WL 4921418 at *15.

Furthermore, Pinson has proven that she is able to communicate with the Court through the motions she has filed in this case without the aid of counsel. *See Willis*, 274 F.3d at 532 (affirming denial of appointment of counsel when the plaintiff demonstrated he was capable of representing himself by making logical presentations to the court through his "numerous coherent filings"). Pinson has a history of litigation in federal court, repeatedly engaging in litigation against the DOJ *pro se*—demonstrating her ability to communicate with the court without the assistance of counsel. The degree to which the interests of justice will be served by the assistance of appointed counsel thus does not seem to outweigh the burden placed on, and limited resources of, the Civil Pro Bono Panel, particularly given that this case "does not appear to involve any complex testimony, difficult legal issues, or unsettled law to such a degree that lawyering skills would be required at this juncture." *Ojelade*, 962 F. Supp. 2d at 262.

Finally, it is at best uncertain whether Pinson's claims have merit. At this stage in the litigation, it is unclear whether Pinson will succeed on the claims presented in her amended complaint. "[T]he district court has a 'plain duty . . . to appoint counsel to assist' the plaintiff '[w]hen necessary to insure that an indigent prisoner's allegations receive fair consideration.'" *Gaviria*, 476 F.3d at 944 (quoting *Hudson v. Hardy*, 412 F.2d 1091, 1095 (D.C. Cir. 1968)). But if the claims are "unsupported" or do not have a "preliminary showing of [being] meritorious," appointment of counsel is not required. *Id.* Here, it is far too early for the Court to assess whether Pinson's claims have any merit.

While specifically not addressed in this order, Defendants argue that Pinson's inability to exhaust her administrative remedies bars a number of the claims discussed in her motions for preliminary injunction. *See* Defs' First Opp'n at 5–7; Defs.' Second Opp'n at 5–6. If Pinson did not exhaust all of her administrative remedies before filing suit, the Court could very well find that she is barred from bringing a civil action on some or all of her non-FOIA claims, regardless of the merits of the action. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under . . . [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Jones v. Bock*, 549 U.S. 199, 212 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). With respect to Pinson's other claims, Defendants have not yet responded to the Amended Complaint. Thus, it is too early to determine if Pinson is entitled to any relief on those claims.

Ultimately, despite the uncertainty as to the merits of Pinson's claims, because the three other factors taken into consideration strongly suggest that the appointment of counsel is not warranted at this stage, the Court denies Pinson's motion for the appointment of counsel.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's First Motion for Preliminary Injunction (ECF No. 11), Plaintiff's Second Motion for Preliminary Injunction and Motion to Appoint Counsel (ECF No. 13), and Plaintiff's Third Motion for Preliminary Injunction (ECF No. 21) are **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  October 29, 2018                                      RUDOLPH CONTRERAS
                                                                                   United States District Judge