# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JEREMY PINSON,

    *Plaintiff*,

       v.

U.S. DEPARTMENT OF JUSTICE, et al.,

    *Defendants*.

Civil Action No.: 18-0486 (RC)

**MEMORANDUM OF LAW IN SUPPORT OF
PARTIAL MOTION TO DISMISS AND FOR SUMMARY JUDGMENT
REGARDING PLAINTIFF'S CLAIMS AS TO THE BUREAU OF PRISONS**

JESSIE K. LIU
D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN
D.C. BAR # 924092
Chief, Civil Division

*/s/ Brian J. Field*
BRIAN J. FIELD
D.C. BAR #985577
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2551
E-mail: Brian.Field@usdoj.gov

## BACKGROUND

Defendant Department of Justice ("DOJ") files this motion with respect to the Freedom of Information Act ("FOIA") claims that *pro se* Plaintiff Jeremy Pinson makes against the Bureau of Prisons ("BOP"). This motion follows the partial motion to dismiss and for summary judgment filed on April 9, 2019, on behalf of the DOJ (Office of the Inspector General), the Federal Bureau of Investigation ("FBI"), the DOJ (Office of Information Policy), the United States Marshals Service, the Executive Office for United States Attorneys, and the Central Intelligence Agency. *See* ECF No. 49. That motion provided a detailed procedural background of this litigation, and BOP respectfully refers the Court to that motion for a discussion how this litigation has progressed since Pinson's initial February 21, 2018 Complaint. *See* ECF No. 1.

In the June 2018 Amended Complaint, Pinson listed fifty-six FOIA requests that she[1] claimed to have submitted to BOP and that formed the basis of her claim that BOP violated FOIA. *See* Am. Comp. at 5 (ECF No. 16). After removing duplicates included in Pinson's list, there are forty-eight FOIA requests remaining. With few exceptions, Pinson's FOIA claims fail due to her failure to exhaust administrative remedies. Accordingly, the following background discussion of these FOIA requests does not wade into the specific substantive details of each request. Rather, in the interest of clarity, the following discussion focuses on the pertinent facts for each FOIA request.

*Request 2015-06335*. In this request, Pinson sought various records related to investigations about herself. *See* Decl. of K. Christenson ¶ 16 (attached as Ex. 1). BOP determined that there were approximately 1,774 pages of responsive records, the processing of which would

---

[1] As Pinson identifies using female pronouns, Defendant will follow suit here. *See Pinson v. DOJ*, 246 F. Supp. 3d 211, 214 n.1 (D.D.C. 2017).

result in fees of $83.70.  *Id.* ¶ 18.  BOP notified Pinson of this fee, which Pinson agreed to pay. *Id.*  Based on Pinson's agreement to pay fees, BOP processed the records.  *Id.* ¶ 19.  On July 6, 2016 (after BOP completed processing), BOP informed Pinson that the responsive, non-exempt records would be released once she paid the outstanding fees.  *Id.*

On September 21, 2016, Pinson had not yet paid the fees.  *Id.* ¶ 21.  Accordingly, BOP administratively closed this request.  *Id.*  Additionally, BOP informed Pinson that (in accordance with DOJ regulations), BOP was also administratively closing the following requests:  2015-01418; 2016-07240; 2016-06818; 2016-07057; 2016-05893; 2016-04932; 2016-6821; 2016-05822; 2016-06820; 2016-05508; 2016-03880; 2016-05378; 2016-06819; and 2016-05245.  *Id.* ¶¶ 20-21.  BOP further informed Pinson that, if she decided to pay the pending fees for request 2015-06335, she must advise BOP in writing of "how she wanted to proceed with the requests closed as a result of her non-payment of fees."  *Id.* ¶ 21.

On November 9, 2016, Pinson (through an outside organization) submitted a portion of the outstanding fees.  *Id.* ¶ 23.  BOP thereafter released records responsive to request 2015-06335.  *Id.*  Pinson did not appeal this response.  *Id.* ¶ 25.  Additionally, Pinson did not provide BOP with any indication of how she wished for it "to proceed with the other requests administratively closed as a result of the unpaid fees."  *Id.* ¶ 24.  Pinson also did not submit any administrative appeal of BOP's decision to administratively close the other FOIA requests listed above.  *Id.* ¶ 25.

*Request 2017-01605*.  Pinson also submitted a FOIA request for various e-mails about herself.  *Id.* ¶ 26.  BOP acknowledged receipt of this request on November 15, 2016.  *Id.* ¶ 27. BOP determined that there were approximately 443 staff whose e-mails it would need to search for responsive records.  *Id.* ¶ 32.  BOP estimated it would take approximately 110.75 hours to conduct these searches, which would result in fees of approximately $2,066.25.  *Id.*

On January 25, 2017, BOP informed Pinson of this estimate and stated that Pinson must pay the fees in advance (or modify her request).  *Id.* ¶ 34.  On February 8, 2017, Pinson agreed to pay up to $100 in search fees.  *Id.* ¶ 35.  BOP thereafter conducted searches for responsive records.  *Id.* ¶ 36.  On November 15, 2017, BOP notified Pinson that it had conducted searches pursuant to her agreement to pay the $100 in fees and that BOP had processed more than 3,000 pages of responsive records.  *Id.* ¶ 38.  BOP stated that it would release the non-exempt records once Pinson paid the $100.  *Id.*

On January 17, 2018, Pinson had still not paid the fees, and BOP informed Pinson that it was administratively closing the request.  *Id.* ¶ 39.  Additionally, BOP informed Pinson that, due to her failure to pay the fees, it was administratively closing 24 other requests, seven of which Pinson identified in this litigation:  2017-00076; 2017-01050; 2017-01759; 2017-01768; 2017-02443; 2017-03830; and 2017-03976.  *Id.*  Pinson did not administratively appeal any of these closures.  *Id.* ¶ 40.

*Request 2017-01680*.  Pinson also submitted a request for all correspondence authored by former BOP Director Samuels.  *Id.* ¶ 134.  BOP determined that there were at least 89,170 items responsive to this request, the processing of which BOP determined would result in fees exceeding $250.00.  *Id.* ¶ 137.  Accordingly, on January 24, 2017, BOP informed Pinson that she would need to either pay the fees in advance or modify her request.  *Id.*  When Pinson had not responded by March 31, 2017, BOP sent Pinson a letter informing her that the request was being administratively closed.  *Id.*  Pinson did not appeal this determination.  *Id.* ¶ 138.

*Requests to Which BOP Issued Final Responses*.  In addition to the requests that were closed for Pinson's failure to pay fees, there were also several requests where BOP issued final

responses and Pinson did not submit an administrative appeal before the February 21, 2018 Complaint in this action:

- For Request 2017-4296, BOP issued its final response on September 21, 2017, *id*. ¶ 122, and Pinson did not submit an appeal, *id.* ¶ 123.

- For Request 2016-5251, BOP issued its final response on August 31, 2016, *id.* ¶ 56, and Pinson did not submit an appeal, *id.* ¶ 57.

- For Request 2014-5115, BOP issued its final response on September 11, 2016, *id.* ¶ 44, and Pinson did not submit an appeal, *id.* ¶ 45.

- For Request 2017-2623, BOP issued its final response on February 14, 2017, *id.* ¶102, and Pinson did not submit an appeal, *id.* ¶ 103.

- For Request 2017-1575, BOP issued its final response on January 30, 2017, *id.* ¶ 81, and Pinson did not submit an appeal, *id.* ¶ 82.

- For Request 2017-2309, BOP issued its final response on September 25, 2017, *id.* ¶ 97, and Pinson did not submit an appeal, *id.* ¶ 98.

- For Request 2017-2203, BOP issued its final response on January 27, 2017, *id.* ¶ 93, and Pinson did not submit an appeal, *id.* ¶ 94.

- For Request 2017-0070, BOP issued its final response on January 20, 2017, *id.* ¶ 69, and Pinson did not submit an appeal, *id.* ¶ 70.

- For Request 2017-4297, BOP issued its final response on September 18, 2017, *id.* ¶ 126, and Pinson did not submit an appeal, *id.* ¶ 127.

- For Request 2015-3237, BOP issued its final response on July 26, 2016, *id.* ¶ 51, and Pinson did not submit an appeal, *id.* ¶ 52.

- For Request 2017-4282, BOP issued its final response on November 3, 2017, *id.* ¶ 118, and Pinson did not submit an appeal, *id.* ¶ 119.

- For Request 2017-1578, BOP issued its final response on August 24, 2017, *id.* ¶ 86, and Pinson did not submit an appeal, *id.* ¶ 87.

- For Request 2017-4380, BOP issued its final response on August 30, 2017, *id.* ¶ 130, and Pinson did not submit an appeal, *id.* ¶ 131.

- For Request 2017-1817, BOP issued its final response on February 23, 2017, *id.* ¶ 90, and Pinson did not submit an appeal, *id.* ¶ 91.

- For Request 2016-5391, BOP issued its final response on September 13, 2016, *id.* ¶ 60, and Pinson did not submit an appeal, *id.* ¶ 61.

- For Request 2017-4065, BOP issued its final response on August 11, 2017, *id.* ¶ 113, and Pinson did not submit an appeal, *id.* ¶ 114.

- For Request 2017-3884, BOP issued its final response on September 21, 2017, *id.* ¶ 109, and Pinson did not submit an appeal, *id.* ¶ 110.

- For Request 2016-7466, BOP issued its final response on April 26, 2017, *id.* ¶ 64, and Pinson did not submit an appeal, *id.* ¶ 65.

*Request 2017-1288.* Pinson submitted a FOIA request seeking "a copy of her transfer summary completed by a psychologist USMCFP Springfield." *Id.* ¶ 71. To process this request, BOP contacted staff at USMCFP Springfield to request a copy of the transfer summary. *Id.* ¶ 73. To locate this record, the "psychology staff at USMCFP Springfield" accessed the archived Psychology Data System ("PDS"), where such records are located. *Id.* As described in the Christenson Declaration, such psychology records are retrieved using an inmates name and register

number. *Id.* Using this information, BOP located 8 pages of records responsive to this FOIA request. *Id.*

On January 26, 2017, BOP initially informed Pinson that it was withholding these 8 pages in full. *Id.* ¶ 74. Pinson did not appeal this determination. *Id.* ¶ 75. Later, on May 22, 2019, BOP determined that it was able to release these records, and it released these eight pages of records to Pinson in full. *Id.* ¶ 76.

*Requests Subject to Pending Litigation*. In addition to this matter, Pinson is currently a plaintiff in a similar case, *Pinson v. Department of Justice*, No. 12-cv-1872 (D.D.C.). In that matter, the Parties have engaged in several rounds of summary judgment briefing. In that litigation, the Parties are already addressing several FOIA requests that Pinson attempts to address again here: 2016-2371; 2011-7156; 2012-0039; and 2013-1684. *Id.* ¶ 13; *see also Pinson v. Dep't of Justice*, No. 12-cv-1872 (D.D.C.) (ECF Nos. 147, 259, 265, 293, 357, 403, 426).

*Misidentified Request*. Finally, Pinson lists Request 2017-4435 in her Amended Complaint. *See* Am. Compl. at 5. Pinson did not submit a request with this reference number. *See* Christenson Decl. ¶ 132.

## STANDARDS OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's claims may be dismissed for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). For such a motion, the Court must resolve all factual doubts in the plaintiff's favor. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests[.]" *Twombly v. Bell Atl. Co.*, 550 U.S. 544, 555 (2007) (quotation marks omitted); *see also* Fed. R. Civ. P. 8(a) (a complaint must provide "a short and plain statement of

the claim showing that the pleader is entitled to relief"). But a motion to dismiss should be granted if the complaint fails to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To satisfy this standard, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 570. In reviewing a complaint's allegations, a "court need not accept inferences drawn by [the] plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Likewise, a court need not accept legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Defendant moves for summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56. Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party has satisfied its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248.

The "vast majority" of FOIA cases are decided on motions for summary judgment. *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Citizens for*

*Responsibility & Ethics in Washington v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) ("*CREW*"). An agency is entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See Weisberg v. DOJ*, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research Ctr. v. DOJ*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

## ARGUMENT

### I. Pinson Failed To Exhaust Her Administrative Remedies

Nearly all of Pinson's claims should be dismissed for her failure to exhaust her administrative remedies. Under FOIA, "[e]xhaustion of administrative remedies is generally required before seeking judicial review." *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam). "A FOIA 'requester may generally seek judicial review of his FOIA request only after he has exhausted all administrative remedies.'" *Otero v. Dep't of Justice*, 292 F. Supp. 3d 245, 252 (D.D.C. 2018) (quoting *Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir. 1995)). "If the requester does not take one of these steps, his claim is subject to dismissal." *Id.* at 253. As discussed below, there are two ways in which Pinson failed to exhaust her administrative resources.

1. The payment of fees is one component of exhaustion. As another Court in this District has explained, DOJ "regulations authorize the assessment of search fees, and the [DOJ component] need not have continued its search unless or until it received the plaintiff's payment." *Otero*, 292

8

F. Supp. 3d at 252 (citing 28 C.F.R. § 16.10(e)(2)).  Specifically, DOJ regulations provide that when a "requester has been notified that the actual or estimated fees are in excess of $25.00, the request shall not be considered received and further work will not be completed until the requester commits in writing to pay the actual or estimated total fee[.]"  28 C.F.R. § 16.10(e)(2); *see also* 5 U.S.C. § 552(a)(4)(A)(v) (FOIA provides that an agency "may require advance payment of any fee [if] the requester has previously failed to pay fees in a timely fashion").  Additionally, "[w]here a requestor has previously failed to pay a properly charged FOIA fee to any component or agency within 30 calendar days of the billing date, a component may require that the requester pay the full amount due … , and the component may require that the requester make an advance payment of the full amount of any anticipated fee before the component begins to process a new request or continues to process a pending request of any pending appeal."  28 C.F.R. § 16.10(i)(3).

Pinson's failures to pay fees are fatal the majority of her FOIA claims against BOP.  As detailed above, there are three instances in which Pinson's failure to pay fees resulted in the closure of her FOIA requests.  First, after agreeing to pay fees for Request 2015-6335, Pinson failed to do so.  *See* Christenson Decl. ¶ 21.  As a result, that request was administratively closed, along with the following requests:  2015-01418; 2016-07240; 2016-06818; 2016-07057; 2016-05893; 2016-04932; 2016-6821; 2016-05822; 2016-06820; 2016-05508; 2016-03880; 2016-05378; 2016-06819; and 2016-05245.  *Id.*  And despite Pinson subsequently paying fees for Request 2015-6335, *id.* ¶ 23, she did not respond to BOP's instructions for how to reopen the other requests, *id.* ¶ 24, which were properly closed due to Pinson's failure to pay fees, *see* 28 C.F.R. § 16.10(i)(3).[2]

---

[2] As discussed below, Pinson also failed to submit an administrative appeal challenging these closures.  Accordingly, Pinson's claims based on these requests are also foreclosed by that failure. *See Hull v. United States Attorney*, 279 F. Supp. 3d 10, 12–13 (D.D.C. 2017).

Accordingly, Pinson failed to exhaust her administrative remedies for these requests.  *See Otero*, 292 F. Supp. 3d at 252-53.

Second, a similar course of events occurred for Request 2017-1605, where Pinson failed to pay the $100 in fees to which she had agreed.  *See* Christenson Decl. ¶¶ 35-39.  Accordingly, BOP closed this request and others that were pending at the same time:  2017-00076; 2017-01050; 2017-01759; 2017-01768; 2017-02443; 2017-03830; and 2017-3976.  *Id.*  These requests were properly closed due to Pinson's failure to pay fees, *see* 28 C.F.R. § 16.10(i)(3).[3]  Accordingly, Pinson failed to exhaust her administrative remedies for these requests.  *See Otero*, 292 F. Supp. 3d at 252-53.

Third, Pinson failed to pay advance fees for request number 2017-1680.  As noted, DOJ regulations provide that when a "requester has been notified that the actual or estimated fees are in excess of $25.00, the request shall not be considered received and further work will not be completed until the requester commits in writing to pay the actual or estimated total fee[.]"  28 C.F.R. § 16.10(e)(2).  Here, BOP estimated that there would be more than $250 in fees to process this request.  *See* Christenson Decl. ¶ 137.  Pinson's failure to pay those fees constitutes a failure to exhaust her administrative remedies.  *See Otero*, 292 F. Supp. 3d at 252-53.

At bottom, Pinson's failure to pay fees for each of these requests operates as a basis for BOP discontinuing processing Pinson's requests entirely.  *See Otero*, 292 F. Supp. 3d at 252–53; *see also Blakeney v. FBI*, No. 17-cv-2288, 2019 WL 450678, at *7 (D.D.C. Feb. 5, 2019); *Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 555 F. Supp. 2d 16, 22–23 (D.D.C. 2008).  In fact, even if Pinson paid the fees *now*, the FOIA claims are doomed.  *See Antonelli*, 555 F. Supp. 2d at 23 ("Because the payment of assessed fees … is a prerequisite to filing a FOIA lawsuit in

---

[3] As discussed below, Pinson also failed to submit an administrative appeal challenging these closures.  Accordingly, Pinson's claims based on these requests are also foreclosed by that failure.  *See Hull*, 279 F. Supp. 3d at 12–13.

the district court, plaintiff's alleged payments tendered during the course of this litigation … are immaterial to the issue at hand."). Accordingly, BOP is "entitled to judgment as a matter of law on the claims resulting from [Pinson's] non-payment of fees." *Id.*

2. For nearly all of her requests, Pinson also failed to pursue an administrative appeal. Where an agency has "respond[ed] to the FOIA request before the suit is filed," "an administrative appeal is mandatory." *Hull*, 279 F. Supp. 3d at 12–13 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). This dooms two categories of Pinson's claims. First, before her February 21, 2018 Complaint, Pinson failed to file administrative appeals for the various requests that were administratively closed due to her failure to pay fees. *See* Christenson Decl. ¶¶ 25, 39-40, 138. Additionally, before her February 21, 2018 Complaint, Pinson failed to file administrative appeals for the various FOIA requests to which BOP issued final responses. *See* Christenson Decl. ¶¶ 44-45, 51-52, 56-57, 60-61, 64-65, 69-70, 81-82, 86-87, 90-91, 93-94, 97-98, 102-103, 109-110, 113-114, 118-119, 122-123, 126-127, 130-131. This failure is fatal to Pinson's claims based on these FOIA requests. *See Hull*, 279 F. Supp. 3d at 12–13.

## II. Where Not Barred By Pinson's Failure To Exhaust Administrative Remedies, BOP Satisfied Its Obligations Under FOIA

As noted earlier, there was one FOIA request for which Pinson's claims are not barred by either her failure to pay fees or her failure to pursue an administrative appeal before filing her Complaint—Request 2017-1288. BOP responded to that request during the pendency of this litigation, issuing 8 pages of records in full. *See* Christenson Decl. ¶ 76. As BOP satisfied its obligations under FOIA with respect to this request, the Court should grant summary judgment in BOP's favor.

Under FOIA, an agency must establish that it conducted a search that is "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351; *see also Am.*

11

*Immigration Council v. DHS*, 21 F. Supp. 3d 60, 70 (D.D.C. 2014) (hereinafter "*AIC*"). Here, the agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68.

"The issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but whether the search for those documents was adequate." *Weisburg*, 705 F.2d at 1485. A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). The fundamental question is not "'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'" *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg*, 705 F.2d at 1485)). An agency may satisfy its burden by providing an affidavit or declaration that "set[s] forth the search terms used and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *AIC*, 21 F. Supp. 3d at 70.

Here, the Christenson Declaration establishes that BOP conducted a search reasonably calculated to uncover all relevant documents. Indeed, the declaration spells out in detail the process by which BOP: (i) identified the locations most likely to have responsive records for each of the four requests; and (ii) conducted a search of those locations reasonably likely to identify the responsive records.

Request 2017-1288 sought "a copy of [Pinson's] transfer summary." Christenson Decl. ¶ 71. BOP explained that such records are contained in PDS. *Id.* ¶ 73. Further, BOP explained that the records in PDS are "retrievable by inmate name and register number." *Id.* After searching

PDS with this information, BOP was able to locate the requested transfer summary, which consisted of 8 pages. *Id.*

Through this search, BOP "fulfilled its obligation" to "demonstrate beyond material doubt that its search[es] w[ere] reasonably calculated to uncover all relevant documents." *AIC*, 21 F. Supp. 3d at 70. Ultimately, Pinson cannot overcome the presumption of good faith afforded to the Christenson Declaration. *See SafeCard Servs.*, 926 F.2d at 1200. This Court should thus conclude that BOP has demonstrated that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested. *See AIC*, 21 F. Supp. 3d at 70.

Notably, summary judgment is also appropriate with respect to this FOIA request as BOP released the responsive records in full. FOIA mandates disclosure of government records unless the record or a portion thereof falls within one of FOIA's enumerated exemptions. *See* 5 U.S.C. § 552(b). As BOP did not withhold any portion of the released records, it satisfied its obligation to release all responsive, non-exempt records. *See id.*; *see also Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

### III. The Court Should Dismiss Pinson's Remaining Claims

Finally, this Court should dismiss Pinson's claims regarding two remaining categories of requests identified in the Amended Complaint. First, Pinson lists Request 2017-4435 in her Amended Complaint. *See* Am. Compl. at 5. As the Christenson Declaration explains, a "careful review of FOIA Request No. 2017-04435 reveals that this request was not filed by inmate Pinson, not filed by another individual on behalf of inmate Pinson, nor was it filed by inmate Pinson on behalf of another individual." Christenson Decl. ¶ 132. Rather, "Pinson has clearly misidentified this request[.]" Under FOIA, an "agency's disclosure obligations are triggered by its receipt of a

request that 'reasonably describes [the requested] records' and 'is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed.'" *Ruiz v. Dep't of Justice*, 636 F. Supp. 2d 85, 87 (D.D.C. 2009) (quoting 5 U.S.C. § 552(a)(3)(A)) (alteration in original).  But here, Pinson fails to state a claim for relief because she did not submit Request 2017-04435.  *See* Christenson Decl. ¶ 132.  Accordingly, she fails to state that BOP's "disclosure obligations [were] triggered" with respect to such a request.  *Ruiz*, 636 F. Supp. 2d at 87.

Second, Pinson's Amended Complaint identifies several requests that are already the subject of another act in this Court.  *See* Christenson Decl. ¶ 13.  Accordingly, this Court should dismiss Pinson's FOIA claims with respect to Requests 2016-2371; 2011-7156; 2012-0039; and 2013-1684, because Pinson elected to challenge them in another civil action.  *See id.*; *see also Pinson v. Dep't of Justice*, No. 12-cv-1872 (D.D.C.) (ECF Nos. 147, 259, 265, 293, 357, 403, 426).  There is no reason why Pinson should not continue to litigate these claims in the action she originally selected.  The "first-filed" rule is instructive here:  "The usual rule in this circuit has been that where two cases between the same parties on the same cause of action are commenced in two different Federal Courts, the one which is commenced first is to be allowed to proceed to its conclusion first."  *UtahAmerican Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1124 (D.C. Cir. 2012).  And even when the matters are not identical, courts recognize that "'parallel litigation of factually related cases in separate fora is inefficient."  *Handy v. Shaw*, 325 F.3d 246, 249 (D.C. Cir. 2003); *see also Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 626 (D.C. Cir. 1975) ("the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided").  Indeed, "[s]o long as the parallel cases involve the same subject matter, the district court should—for judicial economy—resolve both suits in a single forum." *Handy*, 325

F.3d at 350.  The same principles weigh in favor of dismissing Pinson's claims here that are already the subject of his previously filed action—*Pinson v. Department of Justice*, 12-cv-1872 (D.D.C.).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion.

June 3, 2019

Respectfully submitted,

JESSIE K. LIU
D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN
D.C. BAR # 924092
Chief, Civil Division

By: *Brian J. Field*
BRIAN J. FIELD
D.C. BAR #985577
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2551
E-mail: Brian.Field@usdoj.gov