UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEREMY PINSON, <br><br> *Plaintiff*, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, et al., <br><br> *Defendants*. | Civil Action No.: 18-0486 (RC) |

**REPLY IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT AND MOTION FOR SUMMARY JUDGMENT**

JESSIE K. LIU
D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN
D.C. BAR # 924092
Chief, Civil Division

*/s/ Brian J. Field*
BRIAN J. FIELD
D.C. BAR #985577
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2551
E-mail: Brian.Field@usdoj.gov

## BACKGROUND

In her[1] First Amended Complaint, *pro se* Plaintiff Jeremy Pinson brought Freedom of Information Act ("FOIA") and Privacy Act claims against Defendants Bureau of Prisons ("BOP"), the Federal Bureau of Investigation ("FBI"), the Department of Justice ("DOJ") Office of Information Policy ("OIP"), the United States Marshals Service ("USMS"), the Office of Inspector General ("OIG"), and the Central Intelligence Agency ("CIA"). *See* 1st Am. Compl. at 5 (ECF No. 16). On April 29, 2019, Defendants filed a Partial Motion to Dismiss and for Summary Judgment with respect to several Defendants: OIG, FBI, OIP, USMS, EOUSA, and CIA. *See* Memo. in Supp. of Defs.' Partial Mot. to Dismiss & for Summ. J. (ECF No. 49-1) ("Defs.' Mot."). On June 3, 2019, Defendants filed a Motion to Dismiss and for Summary Judgment on behalf of BOP. *See* Memo. in Supp. of Defs.' Partial Mot. to Dismiss & for Summ. J. (ECF No. 54-1) ("BOP Mot."). On June 15, 2019, Pinson filed her first Opposition to these Motions. *See* Pl.'s Response to Partial Mot. to Dismiss and for Summ. J. (ECF No. 57) ("1st Opp."). On June 24, 2019, Pinson filed her second Opposition. *See* Brief in Supp. of Opp. to BOP Mot. for Dismissal or Summ. J. (ECF No. 60) ("2d Opp.").

As discussed below, Pinson's Oppositions fail to respond to the arguments made by OIP, USMS, EOUSA, or the CIA. Accordingly, the Court should grant Defendants' Motion as to those Defendants. For OIG, Pinson merely claims to have not received the four responses that OIG sent to her FOIA requests. As discussed below, OIG has confirmed that the responses were, in fact, sent to Pinson. But OIG has now sent another copy of the responses. Accordingly, the Court should grant Defendants' Motion as to OIG.

---

[1] As Plaintiff identifies using female pronouns, Defendants will follow suit. *See Pinson v. DOJ*, 246 F. Supp. 3d 211, 214 n.1 (D.D.C. 2017).

For the FBI, it explained that Pinson's claims were doomed by her failure to exhaust her administrative remedies due to a failure to pay fees, failure to provide requisite third party authorizations, and the failure to submit administrative appeals before initiating this action. In her Opposition, Pinson ignores the lion's share of these arguments, thereby conceding them. And where she does respond, she ignores the presumption of good faith afforded to agency declarations in FOIA cases, baldly asserting that she never received certain responses. For BOP, Pinson relies on largely the same argument—asserting that she did not receive the responses that triggered her obligation to pay fees or otherwise exhaust her administrative remedies.

At bottom, Pinson has failed to rebut the Defendants' arguments in favor of dismissal and summary judgment. Accordingly, the Court should grant Defendants' Motions.

## I. Pinson Failed To Respond To The Arguments Made By Defendants OIP, USMS, EOUSA, And The CIA

OIP stated that it discontinued processing Pinson's two FOIA requests pursuant to DOJ regulations upon learning that Pinson owed more than $150 in accrued fees to two DOJ subcomponents—BOP and the FBI. *See* Defs.' Mot. at 25; Brinkman Decl. ¶ 9. DOJ regulations provide that any DOJ component may require payment of outstanding fees before a request is processed. *See* Defs.' Mot. at 25 (citing 28 C.F.R. § 16.10). In neither Opposition did Pinson respond to OIP's argument. *See generally* 1st & 2d Opps. Rather, Pinson limited her discussion of fees to the arguments that BOP and the FBI made. *See id.* By failing to respond to OIP's argument, there is nothing in the record to call OIP's argument into question. Accordingly, the Court should grant Defendants' Motion as to OIP.

For USMS, Defendants detailed the search USMS conducted and also the bases for withholding portions of records pursuant to FOIA Exemptions 7(C) and 7(F). *See* Defs.' Mot. at 26–29 (citing Kil Decl.). In her Oppositions, Pinson fails to challenge these arguments. *See*

2

*generally* 1st & 2d Opps.  By failing to respond, there is nothing in the record to call USMS's argument into question.  Accordingly, the Court should grant Defendants' Motion as to USMS.  To the extent that the Court reads Pinson's generic argument that "[t]he exemptions cited dont [sic] apply" to respond to USMS's arguments, *see* 1st Opp. at 5, the argument does nothing to call into question the fact that summary judgment should be granted in favor of USMS.  Pinson does not challenge a single USMS withholding.  Rather, Pinson makes the broad statement that a "weighty public interest" and "[t]he rank of the public official involved may be considered" when analyzing a withholding.  1st Opp. at 5.  This argument fails for the simple fact that Pinson does not tie it in any way to USMS's withholdings.  And even if Pinson had tried to do so, she would have struggled to demonstrate an overriding public interest in records about herself, *see* Kil Decl. ¶ 2, that overcomes the interests protected by FOIA Exemptions 7(C) and 7 (F).  Accordingly, summary judgment should be granted in USMS's favor.

For EOUSA, Defendants similarly detailed the searches and responses to the FOIA requests Pinson listed in her First Amended Complaint.  *See* Defs.' Mot. at 10–12 (citing Wilkinson Decl., Nails Decl., Ogden Decl., & Robinson Decl.).  Pinson did not respond to these arguments in her Oppositions.  *See* 1st & 2d Opp.  By failing to do so, there is nothing in the record calling into question EOUSA's processing of Pinson's requests.  And since EOUSA did not withhold any responsive information from Pinson, her generic argument about exemptions not applying has no relevance here.  *See* 1st Opp. at 5.  Accordingly, the Court should grant summary judgment in EOUSA's favor.

For the CIA, Defendants sought dismissal of this claim because Pinson failed to include any factual allegations to support her claims.  *See* Defs.' Mot. at 30–32.  In her Oppositions, Pinson did not respond to these arguments.  *See generally* 1st & 2d Opp.  By failing to respond, Pinson

3

has conceded the Motion to Dismiss as to the CIA.  *See Rhodes v. Superior Ct. of the District of Columbia*, 303 F. Supp. 3d 1, 5 (D.D.C. 2018) ("treat[ing] as conceded defendants' arguments" that "[p]laintiffs' opposition does not address").

Finally, Pinson appeared to include a claim under the Administrative Procedure Act ("APA") in her First Amended Complaint.  *See* 1st Am. Compl. ¶¶ 3–5.  Noting that Pinson failed to identify what Government action she purports to challenge, Defendants sought dismissal of this claim.  *See* Defs.' Mot. at 32–33.  Pinson did not respond to this argument in either Opposition.  *See* 1st & 2d Opps.  By failing to respond, Pinson has conceded the Motion to Dismiss as to her APA claim.  *See Rhodes*, 303 F. Supp. 3d at 5 ("treat[ing] as conceded defendants' arguments" that "[p]laintiffs' opposition does not address").

## II.     Pinson's Claims Against OIG Fail

OIG received four FOIA requests from Pinson.  *See* Defs.' Mot. at 2–3; Waller Decl. ¶ 5.  In Defendants' Motion, Defendants outlined OIG's processing of each request, detailing the search methods and bases for asserting FOIA Exemptions 5, 6, and 7(C).  *See* Defs.' Mot. at 2–3, 20–22.  In her Oppositions, Pinson does not challenge OIG's explanation of its searches or withholdings.  *See generally* 1st & 2d Opps.  In fact, Pinson does not address OIG at any point in either Opposition.  *See id.*  Rather, her lone contention is a statement in a declaration that "[a]t no time did I receive a final response or production on [sic] OIG requests[.]"  ECF No. 57-2 ¶ 4.

Here, the record demonstrates that OIG sent each response.  *See* Waller Decl. ¶¶ 7–10.  Further, the Supplemental Waller Declaration explains that after receiving Pinson's Oppositions, OIG reviewed its tracking system, which "is an application that facilitates the management and efficiency of the FOIA process throughout the OIG."  Supp. Waller Dec. ¶ 4 (attached as Ex. A).  Among other things, this system tracks OIG responses to FOIA requests.  *See id.*  After receiving

4

Pinson's Oppositions, OIG "conducted a query in the OIG's FOIA tracking system to confirm the OIG's record that responses were sent" and the system "confirm[ed] the close out dates and entries for each of Plaintiff's FOIA requests indicating that the responses were sent to Plaintiff, as stated in the first declaration." *Id.* ¶ 5. Out of an abundance of caution, OIG (through undersigned counsel) is providing those responses to Pinson again along with a copy of the instant reply. *See* Decl. of B. Field (attached as Ex. B) (stating that along with service of the instant reply, Defendants have also provided Pinson with another copy of OIG's FOIA responses).

Pinson's unsupported statement in her declaration fails to create a genuine issue of material fact. Rather, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* Here, the Government's declarations are afforded a presumption of good faith. *See SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Moreover, "[t]here is a 'strong presumption that mails, properly addressed, having fully prepaid postage, and deposited in the proper receptacles, will be received by the addressee in the ordinary course of the mails.'" *Makuch v. FBI*, No. 99-cv-1094, 2000 WL 915640, at *3 (D.D.C. Jan. 5 2005) (citing *Legille v. Tegtmeyer*, 382 F. Supp. 166, 169 (D.D.C. 1974)); *see also Samenow v. Citicorp Credit Srvs.*, 253 F. Supp. 3d 197, 207 (D.D.C. 2017) ("letters properly addressed and sent via U.S. mail are presumed to be received.").

### III.  Pinson's Claims Against The FBI Fail

For the FBI, Defendants explained why Pinson's claims fail with respect to the fifteen FOIA she identified in the First Amended Complaint. *See* Defs.' Mot. at 3–8, 22–25. As Defendants explained, Pinson failed to exhaust her administrative remedies for these requests.

5

Specifically, the FBI explained that there were three ways in which Pinson failed to exhaust her administrative remedies.

First, Pinson failed to pursue an administrative appeal for several requests where the FBI had "respond[ed] to the FOIA request before the suit was filed[.]" Defs.' Mot. at 24 (quoting *Hull v. United States Attorney*, 279 F. Supp. 3d 10, 12–13 (D.D.C. 2017)). Specifically, Pinson failed to submit an administrative appeal after the FBI responded to the following FOIA requests: Request 1354738-000; Request 1360579-000. *See* Hardy Decl. ¶¶ 18, 21. In her Oppositions, Pinson does not challenge the fact that the FBI responded to the requests before her complaint. And where the response is issued "before the suit is filed," "an administrative appeal is mandatory." *Hull*, 279 F. Supp. 3d at 12–13. Accordingly, it is beyond dispute that Pinson has failed to exhaust her administrative remedies with respect to these requests. *See id.*

Second, Pinson failed to exhaust her administrative remedies by failing to provide third party waivers for several requests. *See* Defs.' Mot. at 24–25. Specifically, this relates to the following FOIA requests: Request 1353986, Request 1364610, Request 1365503, and Request 1366537. *See* Hardy Decl. ¶¶ 10, 28, 34, 40. A requester "has failed to exhaust [her] administrative remedies" when she does "not submit proper FOIA requests to the [agencies]," including not providing "written authorization from [the third parties] for release of information to plaintiff." *Strunk v. State*, 693 F. Supp. 2d 112, 115 (D.D.C. 2010). Accordingly, Pinson's failure to provide these authorizations is fatal to her claim. In her Opposition, Pinson does not address this argument or suggest that she has, at any point, provided such authorizations. Accordingly, it is beyond dispute that Pinson has failed to exhaust her administrative remedies with respect to these requests. *See id.*

Third, Pinson failed to exhaust her administrative remedies by failing to pay her outstanding fee balance. *See* Defs.' Mot. at 23–24. As the FBI explained, advance payment may be required where, as here, a requester has previously failed to pay fees in a timely fashion. *See id.*; *see also* 5 U.S.C. § 552(a)(4)(A)(v); 28 C.F.R. § 16.10(i)(3). The FBI explained that Pinson failed to pay fees for Request 1358548. *See* Defs.' Mot. at 5–6; Hardy Decl. ¶ 62–71. Due to this nonpayment, and in accordance with the governing DOJ regulations, the FBI discontinued processing of several FOIA requests. *See* Defs.' Mot. at 23; *see also* Hardy Decl. ¶¶ 71, 75, 84, 90, 93–94, 101, 108, 115, 121. Accordingly, the FBI explained that this nonpayment operates as a basis for the FBI discontinuing processing Pinson's requests entirely. *See* Defs.' Mot. at 24 (citing cases). In fact, even paying the fees now would not save Pinson's claims. *See Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 555 F. Supp. 2d 16, 22–23 (D.D.C. 2008).

In her Oppositions, Pinson lodges various arguments. Pinson argues that for Request 1358548, the FBI failed to respond within the statutory limit and thus "the request was constructively exhausted <u>before</u> FBI claimed non-payment[.]" 1st Opp. at 3 (emphasis in original). Yet, that overlooks the fact that the FBI responded about the fee issue in 2017, *see* Hardy Decl. ¶¶ 62–71. That was well-before Pinson's 2018 complaint. Once an agency has responded, a requester must exhaust her administrative remedies before seeking judicial review. *Hull*, 279 F. Supp. 3d at 12–13.

Pinson also claims to have not received "the fee assessment" for Request 1358548. 1st Opp. at 2. But as noted, the Hardy Declaration states that it sent the correspondence to Pinson. *See* Hardy Decl.¶¶ 62–70 (attaching copies of the correspondence). Moreover, the FBI has further confirmed both the fact that the letters were sent and that the fee has still not been received. *See* 2d Hardy Decl. ¶¶ 6–7 (attached as Ex. C). Here, Pinson's unsupported statements do not create

genuine issues of material fact. Rather, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* Here, the Hardy Declarations are afforded a presumption of good faith. *See SafeCard Servs.*, 926 F.2d at 1200. Moreover, "[t]here is a 'strong presumption that mails, properly addressed, having fully prepaid postage, and deposited in the proper receptacles, will be received by the addressee in the ordinary course of the mails.'" *Makuch*, 2000 WL 915640, at *3. For the foregoing reasons, Pinson's attempt to avoid summary judgment by claiming to have not received these materials fails. Rather, the Court should grant Defendants' Motion in the FBI's favor.

**IV.   Pinson's Claims Against BOP Fail**

For BOP, Pinson listed fifty-six FOIA requests in her First Amended Complaint. *See* BOP Mot. at 1. After removing duplicates, there were forty-eight FOIA requests remaining. *See id.* For nearly each request, Pinson failed to exhaust her administrative remedies. And for the others, the record demonstrates that BOP satisfied its obligations under FOIA.

1. Pinson failed to exhaust her administrative remedies because she failed to pay FOIA fees that were due. *See* BOP Mot. at 8–11. As BOP explained in its Motion, there were three instances in which Pinson's failure to pay fees resulted in the closure of her FOIA requests. First, after agreeing to pay fees for Request 2015-6335, Pinson failed to do so. *See* Christenson Decl. ¶ 21. That failure led to BOP administratively closing fourteen requests. *See* BOP Mot. at 9 (listing request numbers); Christenson Decl. ¶ 21. And despite subsequently paying the fee, Pinson did not follow BOP's instruction for informing BOP whether she wished BOP to reopen the other

8

requests. *Id.*; *see also* Supp. Christenson Decl. ¶¶ 4–7 (attached as Ex. D).[2] Second, Pinson failed to pay fees for Request 2017-1605, which led BOP to close that request and seven other then-pending requests. *See* BOP Mot. at 10 (listing request numbers); Christenson Decl. ¶ 35–39. Third, Pinson failed to pay advance fees for request number 2017-1680. *See* BOP Mot. at 10; Christenson Decl. ¶ 137. In each instance, Pinson failed to exhaust her administrative remedies. *See Otero v. Dep't of Justice*, 292 F. Supp. 3d 245, 252–53 (D.D.C. 2018); *Antonelli*, 555 F. Supp. 2d at 22–23.

In response, Pinson states that she paid the fee for Request 2017-1605.[3] 1st Opp. at 2; 2d Opp. at 3 (making similar arguments about various other FOIA requests). This does not save Pinson's claim. First, this does not address at all the other fee issues, where Pinson failed to pay her fee and then after doing so, failed to follow BOP's instructions about how to reopen the previously closed requests. *See* BOP Mot. at 8–9. And for Request 2017-1605, BOP's records demonstrate that Pinson has not, in fact, paid any fees for Request 2017-1605. *See* Supp. Christenson Decl. ¶¶ 4–7. Although it is correct that Pinson apparently *tried* to pay fees, she did so by mailing the payment to the incorrect address. After being informed of this, the payment was returned. To date, Pinson has not transmitted payment for this request to the correct address. *See* Supp. Christenson Decl. ¶ 7. Moreover, Pinson's claim to have not received correspondence about

---

[2] Notably, Pinson also failed to submit administrative appeals for those closures. *See* Mot. at 10 n.3.

[3] Pinson also errantly states that assessing fees here "was illegal in the first place." 1st Opp. at 4; *see also* 2d Opp. at 2. Pinson argues that it was somehow improper to require advanced payment here prior to release. *Id.* But Pinson overlooks the fact that for Request 2017-1605, Pinson agreed to pay up to $100 in fees. *See* Christenson Decl. ¶ 35. And where the requester had previously failed to pay fees, BOP is permitted to require advanced payment. *See* 28 C.F.R. § 16.10(i)(3). Contrary to Pinson's statement that BOP "provides no evidence of previous nonpayment," the Christenson Declaration explains that Pinson had failed to pay fees previously for Request 2015-6335. 1st Opp. at 4; Christenson Decl. ¶¶ 16–25. Accordingly, BOP properly required advanced payment of fees.

9

this fee issue is rebutted by the fact that the Christenson Declaration states that the correspondence was sent, attaching copies of the correspondence to her Declaration in the record of this case. *See, e.g.*, Christenson Decl. ¶¶ 26–41, Exs. C, L, M.

Here again, Pinson's unsupported statement in her Oppositions fails to create a genuine issue of material fact. Rather, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* Here, the Christenson Declarations are afforded a presumption of good faith. *See SafeCard Servs.*, 926 F.2d at 1200. Moreover, "[t]here is a 'strong presumption that mails, properly addressed, having fully prepaid postage, and deposited in the proper receptacles, will be received by the addressee in the ordinary course of the mails.'" *Makuch*, 2000 WL 915640, at *3. At bottom, the record is clear that BOP issued and mailed correspondence to Pinson regarding these fees and that Pinson has (to date) failed to pay those fees. Moreover, even if Pinson paid those fees now, Pinson's FOIA claims fail. *See Antonelli*, 555 F. Supp. 2d at 23 ("Because the payment of assessed fees … is a prerequisite to filing a FOIA lawsuit in the district court, plaintiff's alleged payments tendered during the course of this litigation … are immaterial to the issue at hand").

2. Pinson also failed to exhaust her administrative remedies because she failed to pursue administrative appeals before seeking judicial review. *See* BOP Mot. at 11. In response, Pinson argues again that constructive exhaustion prevents BOP from asserting any argument that she failed to exhaust her administrative remedies. *See* 2d Opp. at 1–2, 4. Once again, however, even if BOP did not issue its response within the statutory timeframe, its subsequent responses prior to

the complaint required Pinson to complete the administrative appeal process. *See Hull*, 279 F. Supp. 3d at 12–13. And there is no dispute that Pinson did not do so here.

3. Finally, there are a few miscellaneous arguments that warrant brief discussion. First, Pinson also attempted to include in her First Amended Complaint several FOIA requests that are already subject of another lawsuit. *See* BOP Mot. at 6, 13–15. In her Opposition, Pinson states that she "stipulates to dismissal of [these] claims." 2d Opp. at 4.

Second, for Request 2017-1288, Pinson's claim fails because BOP issued the eight pages of records in full and Pinson failed to pursue an administrative appeal. Mot. at 5–6; Christenson Decl. ¶¶ 71–76. Accordingly, Pinson is misguided when she states that "BOP improperly withheld the 8 pages related to Request 2017-1288[.]" 2d Opp. at 4. The records were released in full and, moreover, Pinson's failure to challenge that release is fatal to any attempt to bring a claim here. *See Hull*, 279 F. Supp. 3d at 12–13.

Third, Pinson makes the generalized statement that "no meaningful search was conducted on several requests cited by BOP." 2d Opp. at 4. This broad statement fails to rebut any of the details included in the Christenson Declaration, which is afforded a presumption of good faith. *See SafeCard Servs.*, 926 F.2d at 1200. In all events, BOP respectfully refers the Court to the Christenson Declaration, which it submits demonstrates that it fully complied with its obligations under FOIA.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their Motions.

August 15, 2019                                        Respectfully submitted,

                                                       JESSIE K. LIU
                                                       D.C. Bar #472845
                                                       United States Attorney

                                                       DANIEL F. VAN HORN
                                                       D.C. BAR # 924092
                                                       Chief, Civil Division

                                                   By: *Brian J. Field*
                                                       BRIAN J. FIELD
                                                       D.C. BAR #985577
                                                       Assistant United States Attorney
                                                       555 4th Street, N.W.
                                                       Washington, D.C. 20530
                                                       Tel: (202) 252-2551
                                                       E-mail: Brian.Field@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2019, I served the foregoing by placing it in the United States mail, marked "legal mail, open in presence of inmate" to:

>Jeremy Pinson
>#16267-064
>USP Tucson, U.S. Penitentiary
>P.O. Box 24550,
>Tucson, AZ 85734
>
>*/s/ Brian J. Field*
>Brian J. Field