# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JEREMY PINSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-486 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 47, 49, 54, 56, 58 |
| | : | | 62, 64, 66, 67, 68 |
| | : | | 73, 77 |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS IN PART & FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTIONS, HEARING, SANCTIONS, AND APPOINTMENT OF COUNSEL

## I. INTRODUCTION

*Pro se* Plaintiff Jeremy Pinson is currently an inmate at U.S. Penitentiary ("USP")

Tucson, a federal prison located in Arizona. While in federal custody, Pinson filed dozens of

Freedom of Information Act ("FOIA") requests with different components of the U.S.

Department of Justice ("DOJ") as well as with the Central Intelligence Agency ("CIA"). Here,

Pinson primarily alleges that she[1] received inadequate responses to these requests. *See* Am.

Compl. at 2, ECF No. 16 (alleging that the FOIA requests were "acknowledged but never

answered"). Pinson also brings claims under the Privacy Act and the Administrative Procedure

Act ("APA") against the government, as well as *Bivens* claims under the First and Eight

Amendments against several government employees—none of whom have apparently been

served or are currently represented by the DOJ.

---

[1] Pinson identifies using feminine pronouns, and the government and this Court follow suit. *See Pinson v. U.S. Dep't of Justice*, 246 F. Supp. 3d 211, 214 n.1 (D.D.C. 2017).

In response, the DOJ has filed two pre-answer motions—one on behalf of the Federal Bureau of Investigation ("FBI"), the DOJ's Office of Information Policy ("OIP"), DOJ's Office of the Inspector General ("OIG"), the Executive Office of U.S. Attorneys ("EOUSA"), the U.S. Marshals Service ("USMS"), and the CIA; the other on behalf of the Federal Bureau of Prisons ("BOP")— asking the Court to dismiss some of Pinson's FOIA claims (as well as her APA claim) and grant summary judgment in its favor on others. Specifically, the DOJ has moved to dismiss Pinson's FOIA claims against the FBI and OIP, as well as some of her FOIA claims against the BOP, for failure to exhaust administrative remedies. The DOJ has also moved to dismiss Pinson's FOIA claims against the CIA, as well as her APA claim, for failure to state a claim. The DOJ has moved for summary judgment in its favor on Pinson's FOIA claims against the OIG, EOUSA, and the USMS, as well as her remaining FOIA claims against BOP.

For the reasons stated below, the Court will grant in part and deny in part the DOJ's partial motions to dismiss and for summary judgment. Namely, the Court grants summary judgment for Defendants as to Pinson's claims relating to three of her FBI requests; twenty-one of her BOP requests; all six of her EOUSA requests; both of her OIP requests, and her single USMS request. The Court denies summary judgment for Pinson's claims relating to twelve of her FBI requests; twenty-seven of her BOP requests; and all four of her OIG requests. The Court also dismisses Pinson's APA claims and her claims relating to her CIA FOIA requests. The Court also resolves a number of unrelated motions that are currently pending and ripe for decision.

## II. FACTUAL BACKGROUND

Pinson's amended complaint lists the specific FOIA requests at issue. *See* Am. Compl. App. A ("List of FOIA Requests"), ECF No. 16. Because the agencies' handling of each FOIA

request is crucial to the disposition of Pinson's claims, the Court will discuss each request in some detail.

## A. FBI Requests

Fifteen requests were directed to the FBI. *See* List of FOIA Requests.

### 1. Request No. 1353986

On July 13, 2016, the FBI received a letter from Pinson dated June 16, requesting all records about Bernie Sanders. Hardy Decl. ¶ 5 & n.3, ECF No. 49-4. That same day, the FBI replied to Pinson's request assigning it a request number and asserting FOIA Exemptions 6 and 7(C), as records implicating privacy concerns of a third party. *Id.* ¶ 6. The FBI informed Pinson that absent a showing of consent, proof of death, or an overriding public interest the FBI could neither confirm nor deny the existence of responsive records. *Id.* The FBI advised Pinson that, if she did not provide such information within thirty days, her request would be administratively closed and that she could appeal the FBI's decision to OIP within ninety days. *Id.* Pinson appealed to OIP in a letter dated August 15, challenging the FBI's determination on grounds of overriding public interest, *id.* ¶ 7, which OIP received on December 12, *id.* ¶ 8 n.4. On December 13, OIP acknowledged receipt of Pinson's appeal. *Id.* ¶ 8. On January 13, 2017, OIP affirmed the FBI's decision and informed Pinson of her right to file suit in federal court. *Id.* ¶ 9.

### 2. Request No. 1354738

On July 26, 2016, the FBI received a letter from Pinson dated July 10, requesting all records regarding the Pulse Nightclub shooting. *Id.* ¶ 11 & n.5. That same day, the FBI replied to Pinson's request, assigning it a request number, asserting FOIA Exemption 7(A) as records pertaining to a pending or prospective law enforcement proceeding, and directing Pinson to publicly available information on the FBI website. *Id.* ¶ 12. Pinson appealed to OIP in a letter

dated August 2 challenging the FBI's determination and asserting that public internet records were "of no use" to her and that "FOIA requires production in the format [Pinson] request[s]," namely paper, *id.* Ex. H, which OIP received August 23, *id.* ¶ 14 n.6. On August 26, OIP acknowledged receipt of Pinson's appeal. *Id.* ¶ 14. On September 9, OIP remanded Pinson's request to the FBI for the FBI to provide paper copies of any online public information related to Pinson's request but otherwise affirmed the FBI's determination. *Id.* ¶ 15.

On March 30, 2017, the FBI mailed Pinson thirteen pages of information responsive to her request. *Id.* ¶ 16. On April 20, the FBI mailed Pinson a second set of thirteen pages and advised Pinson of her right to appeal to OIP within ninety days. *Id.* ¶ 17. The FBI has no record of an appeal from Pinson as of August 16, 2018. *Id.* ¶ 18.

### 3. Request No. 1358548

On September 26, 2016, the FBI received a letter from Pinson dated August 19, requesting documents the FBI provided to the House Oversight Committee on August 16, 2016 that summarized the FBI's closed investigation into Hillary Clinton's use of private email servers while serving as Secretary of State, as well as other files pertaining to Ms. Clinton. *Id.* ¶¶ 54, 55 n.19. On September 27, the FBI replied to Pinson's request assigning it a request number and directing Pinson to the FBI's FOIA Library to access responsive records. *Id.* ¶ 55. On October 17, the FBI informed Pinson of an additional release of records responsive to her request available on the FBI's FOIA Library. *Id.* ¶ 56. Pinson appealed to OIP in a letter dated November 15, challenging the FBI's determination and seeking a CD copy of the records due to Pinson's lack of access to the internet, *id.* ¶ 57, which OIP received December 1, *id.* ¶ 58 n. 20. On December 6, OIP acknowledged receipt of Pinson's appeal. *Id.* ¶ 58. On January 5, 2017, OIP received a second appeal from Pinson, requesting paper copies of the record release, in a

letter dated December 19, *id.* ¶¶ 59, 60 n.21, of which OIP acknowledged receipt on January 11, *id.* ¶ 60. On January 25 and February 16, OIP remanded both appeals to the FBI for further processing. *Id.* ¶ 61, 63.

On February 6, the FBI advised Pinson that it had located 809 pages of responsive records and notified Pinson that the FBI required a commitment to pay twenty-five dollars in fees and an alternative address to release the records. *Id.* ¶ 63. On February 23, the FBI received an undated letter from Pinson indicating Pinson's commitment to pay the twenty-five-dollar fee, which did not list an alternative address. *Id.* ¶ 64. That same day, the FBI sent a letter to Pinson confirming Pinson's commitment to pay the fee and requesting Pinson to provide an alternative address. *Id.* ¶ 65. By a letter dated March 2, Pinson provided the FBI an alternate address. *Id.* ¶ 66. On March 14, the FBI advised Pinson that 650 pages of records were being released to her by CD and that, as a first interim records release, payment of fees was not required until the second interim release. *Id.* ¶ 67. On March 27, the FBI advised Pinson that 197 pages of records were being released to her by CD and that twenty-five dollars in duplication fees was due within thirty days. *Id.* ¶ 68.

On May 2, the FBI advised Pinson that, based on her OIP appeal, it was releasing 808 pages of responsive records at a cost of $40.40, resulting in a total of $65.40 in fees owed to the FBI due within thirty days. *Id.* ¶ 69. On June 13, the FBI advised Pinson that due to the nonpayment of fees it was closing the current request and two other pending FOIA requests.[2] *Id.* ¶ 70. The FBI also advised Pinson that she could appeal the decision to OIP within ninety days. *Id.* As of August 16, 2018, the FBI has no record of Pinson appealing the above fee

---

[2] Namely, FBI FOIA Requests 1260359 (not at issue here) and 1372119 (at issue here and discussed below).

determinations. *Id.* ¶ 72. Pinson has indicated that the fee, as a result of the present litigation, has been sent, Pl.'s Resp. to Partial Mot. to Dismiss & for Summ. J. ("Pl.'s DOJ Opp'n") 2, ECF No. 57, which the FBI is unable to confirm, 2d Hardy Decl. ¶ 6–7, ECF No. 69-3.

#### 4. Request No. 1360160

On October 17, 2016, the FBI received a letter from Pinson dated October 6, requesting all records regarding her October 3, 2016 interview with the FBI and all records concerning investigation of Pinson since September 20, 2016. Hardy Decl. ¶ 76 & n.23. On October 26, the FBI replied to Pinson's request, assigning it a request number and requesting "further personal identifying information" in order to conduct the search. *Id.* ¶ 77. On November 9, Pinson provided the requisite information, *id.* ¶ 78, which the FBI received on November 22, *id.* ¶ 78 n.24. On November 23, the FBI acknowledged receipt of Pinson's perfected request. *Id.* ¶ 79. On December 9, the FBI advised Pinson in a letter that the responsive records were part of a pending investigation and exempt from disclosure under FOIA Exemption 7(A). *Id.* ¶ 80. Pinson appealed to OIP in a letter dated December 27, challenging the FBI's determination, *id.* ¶ 81, which OIP received on January 9, 2017, *id.* ¶ 82 n.26. On January 12, OIP acknowledged receipt of Pinson's appeal. *Id.* ¶ 82. On February 10, OIP affirmed the FBI's decision in a letter sent to Pinson and informed Pinson of her right to file suit in federal court. *Id.* ¶ 83. As of February 17, 2018, the pending investigation of Pinson ended; however, the FBI has discontinued processing Pinson's FOIA request due to outstanding fees. *Id.* ¶ 84.

#### 5. Request No. 1360562

On November 1, 2016, the FBI received a letter from Pinson dated October 16, requesting all records relating to the "unauthorized data theft" from the Democratic National Committee. *Id.* ¶ 95 & n. 30. On November 15, the FBI replied to Pinson's request assigning it

a request number. *Id.* ¶ 96. On April 3, 2017, the FBI advised Pinson in a letter that responsive records were part of a pending investigation and exempt from disclosure under FOIA Exemption 7(A). *Id.* ¶ 97. Pinson appealed to OIP in an undated letter postmarked April 13, challenging the FBI's determination, *id.* ¶ 98, which OIP received on May 9, *id.* ¶ 99 n.31. On May 12, OIP acknowledged receipt of Pinson's appeal. *Id.* ¶ 99. On June 5, OIP affirmed the FBI's decision and informed Pinson of her right to file suit in federal court. *Id.* ¶ 100. Subsequently, the FBI has made certain records public; however, the FBI has discontinued processing Pinson's FOIA request due to outstanding fees. *Id.* ¶ 101.

### 6. Request No. 1360576

On November 1, 2016, the FBI received a letter from Pinson dated October 16, requesting all records relating to the "unauthorized data theft from John Podesta" in late 2016. *Id.* ¶ 19 & n.9. On November 15, the FBI replied to Pinson's request assigning it a request number. *Id.* ¶ 20. On April 3, 2017, the FBI sent a letter to Pinson neither confirming nor denying the existence of responsive records to her request, pursuant to FOIA Exemptions 1, 3, 7(A), and 7(E), and advised Pinson of her right to appeal to OIP within ninety days. *Id.* ¶ 21. The FBI has no record of an appeal from Pinson as of August 16, 2018. *Id.* ¶ 22.

### 7. Request No. 1364610

On December 12, 2016, the FBI received an undated letter from Pinson postmarked December 6, requesting any records pertaining to several Trump Administration transition staff. *Id.* ¶ 23 & n.10. On January 11, 2017, the FBI replied to Pinson's request assigning it a request number and asserting FOIA Exemptions 6 and 7(C), as records implicating privacy concerns of third parties. *Id.* ¶ 24. The FBI informed Pinson that absent a showing of consent, proof of death, or an overriding public interest the FBI could neither confirm nor deny the existence of

responsive records. *Id.* The FBI advised Pinson that if she did not provide such information within thirty days, her request would be administratively closed and that she could appeal the FBI's decision to OIP within ninety days. *Id.* Pinson appealed to OIP in a letter dated January 23, challenging the FBI's determination on grounds of overriding public interest, *id.* ¶ 25, which OIP received February 9, *id.* ¶ 26 n.11. On February 17, OIP acknowledged receipt of Pinson's appeal. *Id.* ¶ 25. On March 21, OIP affirmed the FBI's decision and informed Pinson of her right to file suit in federal court. *Id.* ¶ 27.

### 8. Request No. 1365468

On December 16, 2016, the FBI received an undated letter from Pinson, requesting information regarding the "Clinton Email Server Investigation." *Id.* ¶ 73 & n.22. On January 30, 2017, the FBI replied to Pinson's request assigning it a request number and advising Pinson that the request was being administratively closed as a duplicate request (specifically, Request No. 1358548, discussed above). *Id.* ¶ 74. The FBI also advised Pinson that she could appeal the decision to OIP within ninety days, *id.*, but she did not do so, *id.* ¶ 75.

### 9. Request No. 1364504

On January 5, 2017, the FBI received a letter from Pinson dated December 26, 2016, requesting records pertaining to a criminal matter involving Pinson received from USP Terre Haute in October 2016 and the related investigation file. *Id.* ¶¶ 85, 86 n.27. On January 13, the FBI replied to Pinson's request assigning it a request number and advising Pinson that responsive records were part of a pending investigation and exempt from disclosure under FOIA Exemption 7(A). *Id.* ¶ 86. Pinson appealed to OIP in a letter dated January 23, challenging the FBI's determination, *id.* ¶ 87, which OIP received on February 9, *id.* ¶ 88 n.28. On February 17, OIP acknowledged receipt of Pinson's appeal. *Id.* ¶ 88. On March 22, OIP affirmed the FBI's

decision and informed Pinson of her right to file suit in federal court. *Id.* ¶ 89. As of February 17, 2018, the pending investigation of Pinson ended; however, the FBI has discontinued processing Pinson's FOIA request due to outstanding fees. *Id.* ¶ 90.

### 10. Request No. 1365683

On January 26, 2017, the FBI received a letter from Pinson dated January 11, requesting a thirty-five-page dossier supplied by Senator John McCain to the FBI on December 9, 2015. *Id.* ¶ 102 & n.102. On February 1, the FBI replied to Pinson's request, assigning it a request number. *Id.* ¶ 103. On March 29, the FBI sent a letter to Pinson neither confirming or denying the existence of responsive records to her request, pursuant to FOIA Exemptions 1, 3, 7(A), and 7(E), and advised Pinson of her right to appeal to OIP within ninety days. *Id.* ¶ 104. Pinson appealed to OIP in a letter dated April 6, challenging the FBI's determination, *id.* ¶ 105, which OIP received April 24, *id.* ¶ 106 n.33. On April 25, OIP acknowledged receipt of Pinson's appeal. *Id.* ¶ 106. On August 2, OIP affirmed the FBI's decision and informed Pinson of her right to file suit in federal court. *Id.* ¶ 107.

### 11. Request No. 1365503

On January 24, 2017, the FBI received an undated letter from Pinson, requesting any records pertaining to all Trump Administration Cabinet nominees. *Id.* ¶ 29 & n.12. That same day, the FBI replied to Pinson's request assigning it a request number and asserting FOIA Exemptions 6 and 7(C), as records implicating privacy concerns of third parties. *Id.* ¶ 30. The FBI informed Pinson that absent a showing of consent, proof of death, or an overriding public interest the FBI could neither confirm nor deny the existence of responsive records. *Id.* The FBI advised Pinson that, if she did not provide such information within thirty days, her request would be administratively closed and that she could appeal the FBI's decision to OIP within ninety

days.  *Id.*  Pinson appealed to OIP in a letter dated February 7, challenging the FBI's determination on grounds of overriding public interest, *id.* ¶ 31, which OIP received February 23, *id.* ¶ 32 n.13.  On February 28, OIP acknowledged receipt of Pinson's appeal.  *Id.* ¶ 32.  On August 3, OIP affirmed the FBI's decision and informed Pinson of her right to file suit in federal court.  *Id.* ¶ 33.

### 12.  Request No. 1366537

On January 26, 2017, the FBI received an undated letter from Pinson postmarked December 6, requesting any records pertaining to several talk show hosts.  *Id.* ¶ 35 & n.14.  On February 9, the FBI replied to Pinson's request assigning it a request number and asserting FOIA Exemptions 6 and 7(C), as records implicating privacy concerns of third parties.  *Id.* ¶ 36.  The FBI informed Pinson that absent a showing of consent, proof of death, or an overriding public interest the FBI could neither confirm nor deny the existence of responsive records.  *Id.*  The FBI advised Pinson that, if she did not provide such information within thirty days, her request would be administratively closed and that she could appeal the FBI's decision to OIP within ninety days.  *Id.*  Pinson appealed to OIP in a letter dated February 15, challenging the FBI's determination, *id.* ¶ 37, which OIP received February 9, *id.* ¶ 38 n.15.  On March 4, OIP acknowledged receipt of Pinson's appeal.  *Id.* ¶ 38.  On March 21, OIP affirmed the FBI's decision and informed Pinson of her right to file suit in federal court.  *Id.* ¶ 39.

### 13.  Request No. 1372813

On May 3, 2017, the FBI received a letter from Pinson dated March 15, requesting all records pertaining to the FBI's investigation of WikiLeaks.  *Id.* ¶ 116 & n. 36.  On May 5, the FBI replied to Pinson's request assigning it a request number and advising Pinson that responsive records were part of a pending investigation and exempt from disclosure under FOIA Exemption

7(A).  *Id.* ¶ 117.  Pinson appealed to OIP in a letter dated May 12, challenging the FBI's

determination, *id.* ¶ 118, which OIP received July 25, *id.* ¶ 119.  On November 28, OIP affirmed

the FBI's decision and informed Pinson of her right to file suit in federal court.  *Id.* ¶ 120.

### 14.  Request No. 1372119

On April 21, 2017, the FBI received a letter from Pinson dated April 13, requesting all

records regarding incidents at Federal Correctional Institution ("FCI") Talladega from June 25 to

August 3, 2010.  *Id.* ¶ 91 & n. 29.  On April 24, the FBI replied to Pinson's request assigning it a

request number.  *Id.* ¶ 92.  On June 13, the FBI notified Pinson that the agency was closing

Pinson's request due to outstanding fees.  *Id.* ¶ 93.

### 15.  Request No. 1371871

On April 19, 2017, the FBI received a letter from Pinson dated April 17, requesting all

records regarding the investigation of Carter Page.  *Id.* ¶ 109 & n.34.  That same day, the FBI

responded to Pinson's request assigning it a request number.  *Id.* ¶ 110.  On May 16, the FBI sent

a letter to Pinson neither confirming or denying the existence of responsive records, under FOIA

Exemptions 1, 3, 7(A), and 7(E), and advised Pinson of her right to appeal to OIP within ninety

days.  *Id.* ¶ 111.  Pinson appealed to OIP in a letter dated May 24, challenging the FBI's

determination, *id.* ¶ 112, which OIP received August 9, *id.* ¶ 113 n.35.  On August 15, OIP

acknowledged receipt of Pinson's appeal.  *Id.* ¶ 113.  On December 17, OIP affirmed the FBI's

decision and informed Pinson of her right to file suit in federal court.  *Id.* ¶ 107.

### B.  BOP Requests

### 1.  Request No. 2014-05115

On March 7, 2014, BOP received a letter from Pinson dated February 24, requesting all

records relating to money paid by BOP for lawsuits against it or its employees between January

2008 and January 2014 and a copy of the complaints for such incidents.  Christenson Decl. ¶ 42,

ECF No. 54-3.  On March 12, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that, due to the nature of her request, "the amount of time necessary to respond to your request will increase."  *Id.* ¶ 43 & Ex. R.  On September 1, 2016, BOP released responsive records, with redactions under FOIA Exemptions 6, 7(C), 7(E), and 7(F), and advised Pinson of her right to appeal to OIP within ninety days.  *Id.* ¶ 44 & Ex. S.  As of May 28, 2019, BOP has no record of an administrative appeal for Request 2014-05115.  *Id.* ¶ 45.

## 2.  Request No. 2015-03237

On February 24, 2015, BOP received a letter from Pinson dated February 13, requesting all records relating to "a use of force on February 11, 2015; use of restraints from February 11, 2015 through February 12, 2015; the [Special Investigation Systems ("SIS")], FBI, [Office of Internal Affairs] or OIG investigation into the February 11, 2015 incident and all video records of the February 2015 incident at USMCFP Springfield, all involving her."  *Id.* ¶ 46 & Ex. T.  On March 3, BOP responded to Pinson's request, assigning it a request number, and notifying Pinson that, due to the nature of her request, "the amount of time necessary to respond to your request will increase."  *Id.* ¶ 47 & Ex. U.  On July 26, 2016, BOP released responsive records, with redactions under FOIA Exemptions 6, 7(C), 7(E), and 7(F), and advised Pinson of her right to appeal to OIP within ninety days.  *Id.* ¶ 51 & Ex. V.  As of May 28, 2019, BOP has no record of an administrative appeal for Request 2015-03237.  *Id.* ¶ 52.

## 3.  Request No. 2016-05251

On June 7, 2016, BOP received a letter from Pinson dated May 30, requesting all records relating to "oral statements made by an Officer and an SIS staff member at USP Allenwood wherein they alleged to have stated they intended to give inmate Pinson additional time in the Special Housing Unit [("SHU")] . . . for filing a FOIA request seeking access to a threat assessment" as well as "all records related to her hospitalization on May 25, 2016."  *Id.* ¶ 53 &

Ex. W.  On June 10, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months." *Id.* ¶ 54 & Ex. X. On August 31, BOP released responsive records, with redactions under FOIA Exemptions 6, 7(C), and 7(F), and advised Pinson of her right to appeal to OIP within ninety days. *Id.* ¶ 56 & Ex. Y.  As of May 28, 2019, BOP has no record of an administrative appeal for Request 2016-05251. *Id.* ¶ 57.

### 4.  Request No. 2015-06335 & Related Requests

On July 13, 2015, BOP received an undated letter from Pinson requesting all information relating to all Prison Rape Elimination Act (PREA) investigations, SIS investigations, and Psychology Database System investigations concerning Pinson since April 2, 2015. *Id.* ¶ 16 & Ex. D.  On July 15, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months." *Id.* ¶ 17 & Ex. E. On March 16, BOP sent Pinson a notification that processing her request would result in fees in the amount of $83.70, which would require advance payment, modification to meet a lower fee, or notification to opt for two free hours of records search as provided by statute. *Id.* ¶ 18.  On March 28, BOP received a letter from Pinson dated March 22, expressing her commitment to pay the fees. *Id.*  On July 6, BOP notified Pinson of the result of the review of responsive records, advised Pinson that the final fees totaled $70.50, and advised Pinson that the responsive records would be released after payment of the fees. *Id.* ¶ 19.  On September 21, BOP notified Pinson that, due to her failure to pay the above fees, her request, along with fourteen other FOIA requests,[3] would be administratively closed. *Id.* ¶ 21.  BOP further advised Pinson that, should

---

[3] Namely, BOP FOIA Requests 2015-01418, 2016-07240, 2016-06818, 2016-07057, 2016-05893, 2016-04932, 2016-6821, 2016-05822, 2016-06820, 2016-05508, 2016- 03880, 2016-05378, 2016-06819, and 2016-05245 (all at issue here).

she pay the fees for Request 2015-06335, that "she must advise [BOP] in writing how she wanted to proceed" with her other requests. *Id.*

On October 21, Pinson responded to BOP, informing BOP that she was unaware of the unpaid fees for her request because she had been transferred to another federal prison and had not been forwarded mail. *Id.* ¶ 22 & Ex. I. On November 9, Julia Capel, founder of Help From Outside (a non-profit that provides paralegal services to prisoners), submitted a money order in the amount of $70.50, on behalf of Pinson, to pay the fees for Request 2015-06335, which BOP received on November 17. *Id.* ¶ 23. BOP released records thereafter. *Id.* Pinson has stated that she communicated with BOP employees to reopen the fourteen closed FOIA requests. Br. in Supp. of Opp'n to BOP Mot. for Dismissal or Summ. J. ("Pl.'s BOP Opp'n") 3, ECF No. 60; Pl.'s Statement of Facts ¶ 4, ECF No. 60-1. As of May 28, 2019, BOP has no record of an administrative appeal for Request 2015-06335 or the fourteen related administratively-closed requests. *Id.* ¶ 25.

### 5. Request No. 2016-05391

On May 13, 2016, OIP remanded an appeal of a November 14, 2013 FOIA Request (not at issue here) to BOP for further processing, which was subsequently assigned a new request number 2016-05391. *Id.* ¶ 58 & Ex. AA. On September 13, BOP released responsive records, with redactions under FOIA Exemptions 5, 6, 7(C), and 7(F), and advised Pinson of her right to appeal to OIP within ninety days. *Id.* ¶ 60 & Ex. BB. As of May 28, 2019, BOP has no record of an administrative appeal for Request 2016-05391. *Id.* ¶ 61.

### 6. Request No. 2016-07466

On August 9, 2016, BOP received a letter from Pinson dated July 25, requesting all records "which 1) reflected the SIS at USP Allenwood investigating the activities of inmate Pinson and another inmate at USP Allenwood and 2) reflected the SIS participated in the

physical housing separation of inmate Pinson and another inmate at USP Allenwood." *Id.* ¶ 62 & Ex. CC. On April 26, 2017, BOP responded to Pinson's request, finding no responsive records to her request, and advising Pinson of her right to appeal to OIP within ninety days. *Id.* ¶ 64 & Ex. EE. As of May 28, 2019, BOP has no record of an administrative appeal for Request 2016-07466. *Id.* ¶ 65.

### 7. Request No. 2017-00070

On September 22, 2016, BOP received an undated letter from Pinson requesting "copies of all investigations of criminal matters referred to the FBI from 2015 to 2016 from USP Terre Haute and all FD-302 interviews with USP Terre Haute inmates from 2015 to 2016." *Id.* ¶ 66. On November 18, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months." *Id.* ¶ 67 & Ex. GG. On January 20, 2017, BOP released responsive records, with redactions under FOIA Exemptions 5, 6, 7(C), 7(E), and 7(F), and advised Pinson of her right to appeal to OIP within ninety days. *Id.* ¶ 69 & Ex. HH. As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-0070. *Id.* ¶ 70.

### 8. Request No. 2017-01288

On November 29, 2016, BOP received a letter from Pinson dated November 21, requesting "a copy of her transfer summary completed by a psychologist at USMCFP Springfield." *Id.* ¶ 71. On December 2, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months." *Id.* ¶ 89 & Ex. JJ. On January 26, 2017, BOP notified Pinson that eight pages of responsive records were not available for release and that she could appeal to OIP within ninety days. *Id.* ¶ 74 & Ex. KK. As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-01299. *Id.* ¶ 75. After reviewing Request 2017-01288 in the course of this litigation, the

request was reopened, and the FBI released the responsive document to Pinson on May 22, 2019. *Id.* ¶ 76.

### 9. Request No. 2017-01578

In a letter dated December 2, 2016, Pinson requested from the BOP "all photographs taken of herself in the Receiving & Discharge/Intake area of USP Terre Haute, FCI Greenville and USMCFP Springfield." *Id.* ¶ 83. In a letter dated November 15, 2016, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months." *Id.* ¶ 85 & Ex. QQ. On August 24, 2017, BOP released responsive records, with redactions under FOIA Exemptions 6, 7(C), 7(E), and 7(F), and advised Pinson of her right to appeal to OIP within ninety days. *Id.* ¶ 86 & Ex. RR. As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-01578. *Id.* ¶ 87.

### 10. Request No. 2017-01605 & Related Requests

On December 13, 2016, BOP received a letter from Pinson dated November 28, requesting emails from various BOP staff regarding Pinson since October 1. *Id.* ¶ 26 & Ex. K. In a letter dated November 15, 2016, BOP replied to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months." *Id.* ¶ 27 & Ex. L. On January 25, 2017, BOP sent Pinson a notification that processing her request would result in fees in the amount of $2,006.25, which would require advance payment, modification to meet a lower fee, or notification to opt for two free hours of records search. *Id.* ¶ 34. On February 8, BOP received a letter from Pinson dated February 2, wherein she agreed to pay up to $100 in search expenses. *Id.* ¶ 35 & Ex. N. On November 15, BOP notified Pinson of the result of the review of responsive records and advised Pinson that the responsive records would be released after payment of the $100 fee within thirty days. *Id.* ¶ 38. On January 17, 2018, BOP notified Pinson that, due to her failure to pay the above fees, her request, along with seven other

FOIA requests,[4] would be administratively closed. *Id.* ¶ 39. BOP further advised Pinson that, should she pay the fees for Request 2017-01605, that "she must notify the BOP in writing if she wished for the BOP to reopen the requests administratively closed for failure to pay fees." *Id.* As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-01605 or the related administratively-closed requests. *Id.* ¶ 40. Pinson has stated that she communicated with BOP employees to reopen the fourteen closed FOIA requests. Pl.'s BOP Opp'n 3; Pl.'s Statement of Facts ¶ 4.

After the start of this litigation, on May 21 and June 17, 2019, Pinson twice attempted to pay the $100 fee by money order from Help From Outside. Suppl. Christenson Decl. ¶ 4, ECF No. 69-4. BOP returned the money order on both occasions for failure to follow the appropriate procedures, namely, addressing it to the right BOP office, in paying the fee. *Id.* ¶ 5–8.

### 11. Request No. 2017-01575

On December 13, 2016, BOP received a letter from Pinson dated December 2, requesting all records relating to "Administrative Tort Claim Numbers TRT-NCR-2017-00284, TRT-NCR-2016-06217, 24 TRT-NCR-2016-06216, and TRT-NCR-20167-00583." *Id.* ¶ 77 & Ex. MM. In a letter dated November 15, 2016, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months." *Id.* ¶ 78 & Ex. NN. On January 30, 2017, BOP released responsive records, with redactions under FOIA Exemption 7(A), and advised Pinson of her right to appeal to OIP within ninety days. *Id.* ¶ 81 & Ex. OO. As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-01575. *Id.* ¶ 82.

---

[4] Namely, BOP FOIA Requests 2017-00076, 2017-01050, 2017-01759, 2017-01768, 2017- 02443, 2017-03830, and 2017-3976 (all at issue here).

### 12. Request No. 2017-01680

On December 19, 2016, BOP received a letter from Pinson dated December 14, requesting "copies of all agency correspondence and emails authored by former Director Samuels during his tenure as Director and a directory of names and titles of current Central Office staff." *Id.* ¶ 134. On December 20, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months." *Id.* ¶ 135 & Ex. AAAA. On January 24, 2017, BOP sent Pinson a notification that processing her request would result in fees in the amount of $4,453.250, which would require advance payment, modification to meet a lower fee, or notification to opt for two free hours of records search. *Id.* ¶ 137. BOP also advised Pinson that, if she did not respond to the fee notification within thirty days, her request would be administratively closed. *Id.* On March 31, BOP administratively closed the request because BOP has no record of a response from Pinson. *Id.* As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-01680. *Id.* ¶ 138.

### 13. Request No. 2017-01817

On December 22, 2016, BOP received a letter from Pinson dated December 13, requesting "copies of all Institution Supplements for USMCFP Springfield related to movement between housing units and the use of psychiatric seclusion." *Id.* ¶ 88. On December 23, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months." *Id.* ¶ 89 & Ex. TT. On February 23, 2017, BOP advised Pinson that all releasable program statements and institution supplements were available in the institution law library and therefore publicly available. *Id.* ¶ 90. BOP also advised Pinson of her right to appeal to OIP within ninety days. *Id.* As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-0187. *Id.* ¶ 91.

### 14.  Request No. 2017-02203

On January 13, 2017, BOP received a letter from Pinson dated December 30, 2016, requesting all records relating to the death of an inmate at USMCFP Springfield.  *Id.* ¶ 92.  On January 27, BOP responded to Pinson's request, assigning it a request number and notifying Pinson, pursuant to FOIA Exemptions 6 and 7(C), "that her request for records of another inmate were categorically denied because of the inherent safety and security risks when an inmate possesses another inmate's records."  *Id.* ¶ 93.  BOP also advised Pinson of her right to appeal to OIP within ninety days.  *Id.*  As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-02203.  *Id.* ¶ 94.

### 15.  Request No. 2017-02309

On January 18, 2017, BOP received a letter from Pinson dated January 9, requesting "copies of all PREA information maintained by USP Terre Haute, including but not limited to staff emails, concerning herself."  *Id.* ¶ 95.  On January 20, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months."  *Id.* ¶ 96 & Ex. YY.  On September 25, BOP released responsive records, with redactions under FOIA Exemptions 5, 6, 7(C), 7(E), and 7(F), and requested from Pinson further clarifying information in order to reasonably search employee emails.  *Id.* ¶ 97 & Ex. ZZ.  BOP also notified Pinson of her right to appeal to OIP within ninety days.  *Id.*  As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-02309.  *Id.* ¶ 98.

### 16.  Request No. 2017-02623

On February 7, 2017, BOP received a letter from Pinson dated January 21, requesting all records relating to an October 19, 2016 letter from OIG.  *Id.* ¶ 99.  That same day, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months."  *Id.* ¶ 100 & Ex. BBB.  On February 14,

BOP advised Pinson that the BOP was unable to determine which records she was seeking and that further information was needed within thirty days. *Id.* ¶ 102. On March 28, the request was administratively closed. *Id.* ¶ 103. As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-02623. *Id.* ¶ 104.

### 17. Request No. 2017-03884

On April 6, 2017, BOP received a letter from Pinson dated March 25, requesting "all information related to an incident involving herself on March 24, 2017, at the USMCFP Springfield." *Id.* ¶ 105. On April 7, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months." *Id.* ¶ 106 & Ex. FFF. On September 21, BOP notified Pinson that no responsive records were found and advised Pinson of her right to appeal to OIP within ninety days. *Id.* ¶ 109. As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-03884. *Id.* ¶ 110.

### 18. Request No. 2017-04065

On April 13, 2017, BOP received a letter from Pinson dated April 6, requesting "all information including, but not limited to, post orders related to the issuance and retrieval of razors in the SHU at USP Allenwood." *Id.* ¶ 111. On April 14, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months." *Id.* ¶ 112 & Ex. KKK. On August 1, BOP released responsive records, with redactions under FOIA Exemption 7(E), and advised Pinson of her right to appeal to OIP within ninety days. *Id.* ¶ 113 & Ex. LLL. As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-04065. *Id.* ¶ 114.

### 19. Request No. 2017-04282

On April 24, 2017, BOP received a letter from Pinson dated April 10, requesting the production of "1) the official name of the cell [she] was kept in at the time of her request; 2) the

frequency of usage and average stay . . . ; 3) the reason for her placement and the name of the person who placed her in the SHU; and 4) any photographs of the interior and exterior of her cell." *Id.* ¶ 115. On April 25, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months." *Id.* ¶ 116 & Ex. NNN. On November 3, BOP released three pages of responsive records, informed Pinson that BOP was unable to determine which records she sought without specific dates for the records, and advised Pinson of her right to appeal to OIP within ninety days. *Id.* ¶ 118 & Ex. PPP. As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-04282. *Id.* ¶ 119.

### 20.  Request No. 2017-04296

On April 24, 2017, BOP received a letter from Pinson dated April 10, requesting all "[Discipline Hearing Officer ("DHO")] and psychology records relating to incident reports wherein [she] was found not competent or not responsible for [her] actions while in BOP custody" *Id.* ¶ 120. On April 25, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months." *Id.* ¶ 121 & Ex. RRR. On September 21, BOP released responsive records, with redactions under FOIA Exemptions 6, 7(C), and 7(F), and advised Pinson of her right to appeal to OIP within ninety days. *Id.* ¶ 122 & Ex. SSS. As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-04296. *Id.* ¶ 123.

### 21.  Request No. 2017-04297

On April 24, 2017, BOP received a letter from Pinson dated April 13, requesting all records relating to inmate suicides at USMCFP Springfield since 2000. *Id.* ¶ 124 & Ex. TTT. On April 25, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months." *Id.* ¶ 125. On September 18,

BOP notified Pinson that all responsive records were categorically denied from release on privacy grounds, pursuant to FOIA Exemption 7(C), and advised Pinson of her right to appeal to OIP within ninety days. *Id.* ¶ 126 & Ex. VVV. As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-04297. *Id.* ¶ 127.

### 22. Request No. 2017-04380

On April 25, 2017, BOP received a letter from Pinson dated April 12, requesting "copies of all information including, but not limited to, the DHO packet for incident report numbers 2902781 and 2932284." *Id.* ¶ 128. On April 28, BOP responded to Pinson's request, assigning it a request number and notifying Pinson that processing her request "may take up to nine months." *Id.* ¶ 129 & Ex. XXX. On August 30, BOP released responsive records, with redactions under FOIA Exemptions 6, 7(C), and 7(F), and advised Pinson of her right to appeal to OIP within ninety days. *Id.* ¶ 130 & Ex. YYY. As of May 28, 2019, BOP has no record of an administrative appeal for Request 2017-04380. *Id.* ¶ 131.

### 23. Request Nos. 2016-02371, 2011-07156, 2012-00039, 2013-01684

Four of Pinson's listed FOIA requests to BOP are the subject of pending litigation, namely Requests 2016-02371, 2011-07156, 2012-00039, and 2013-01684, *id.* ¶ 13; the facts underlying these requests have previously been addressed by this Court. *See Pinson v. U.S. Dep't of Justice*, 236 F. Supp. 3d 338 (D.D.C. 2017); *Pinson v. U.S. Dep't of Justice*, No. 12-1872 (RC), 2016 WL 29245 (D.D.C. Jan. 4, 2016).

### 24. Request No. 2017-04435

Pinson in her Amended Complaint lists a FOIA request to BOP with the reference number 2017-04435. Am. Compl. App. A. According to BOP records, "this request was not filed by inmate Pinson, not filed by another individual on behalf of inmate Pinson, nor was it

filed by inmate Pinson on behalf of another individual" and, accordingly, is misidentified. Christenson Decl. ¶ 16.

## C. OIP Requests

### 1. Request Nos. AG/16-1248 (F), DAG/16-1249 (F), and ASG/16-1250 (F)

On December 22, 2015, OIP received a letter from Pinson dated December 1, requesting all "official communication between [the Office of the Attorney General, Office of the Deputy Attorney General, and Offices of the Associate Attorney General] and the Office of the Director of the Federal Bureau of Prisons from Feb. 2011 until the present." Brinkmann Decl. ¶ 3 & Ex. A, ECF No. 49-5. On January 13, 2016, OIP replied to Pinson's request, assigning it three separate tracking numbers and asserting an additional ten-day response time due to unusual circumstances. *Id.* ¶ 4. On September 28, OIP sent an interim response to Pinson. *Id.* ¶ 5. On April 29, 2019, OIP informed Pinson that, due to outstanding fees to the BOP and FBI, her request was administratively closed. *Id.* ¶ 9.

### 2. Request Nos. DOJ-2017-1359 (AG), DOJ-2017-1764 (DAG), DOJ-2017-1765 (ASG)

On December 21, 2016, OIP received a letter from Pinson dated December 12, 2016, requesting all memoranda or emails "which mention [ADX Florence] and any circumstances with the BOP Director since installation of Loretta Lynch." *Id.* ¶ 6 & Ex. D. On January 26, 2017, OIP replied to Pinson's request, assigning it three separate tracking numbers and asserting an additional ten-day response time due to unusual circumstances. *Id.* ¶ 7. On April 29, 2019, OIP informed Pinson that, due to outstanding fees to the BOP and FBI, her request was administratively closed. *Id.* ¶ 9.

### D. OIG Requests

#### 1. Request No. 16-OIG-304

On August 17, 2016, the OIG received a FOIA request from Pinson dated May 19, 2016. Waller Decl. ¶ 6, ECF No. 49-3. Pinson requested all information pertaining to a May 11, 2016 letter from the OIG. *Id.* Ex. 6. On September 30, 2016, the OIG responded to Pinson's request, assigning it a control number and indicating that the OIG "will answer [Pinson's] request as quickly as possible." *Id.* Ex. 1. On September 30, 2017, OIG sent Pinson a letter containing responsive documents, redacted pursuant to FOIA Exemptions 5, 6, and 7(C). *Id.* ¶ 7. On August 15, 2019, the DOJ provided to Pinson a copy of the OIG's final response to this request. Field Decl. ¶ 4, ECF No. 69-2.

#### 2. Request No. 17-OIG-096

On January 1, 2017, the OIG received an undated FOIA request from Pinson and other inmates. *Id.* ¶ 8. Pinson and the other inmates requested all information relating to them created or received by the agency since July 2016. *Id.* Ex. 3. On January 26, 2017, the OIG responded to Pinson's request, assigning it a control number and indicating that the OIG "will answer [Pinson's] request as quickly as possible." *Id.* Ex. 3. On September 28, 2018, the OIG sent Pinson a letter containing responsive documents, redacted pursuant to FOIA Exemptions 6 and 7(C). *Id.* ¶ 8. The OIG denied Pinson's portion of the request seeking information about other inmates without their consent, pursuant to FOIA Exemption 7(C). *Id.* On August 15, 2019, the DOJ provided to Pinson a copy of the OIG's final response to this request. Field Decl. ¶ 4.

#### 3. Request No. 17-OIG-174

On March 21, 2017, the OIG received a FOIA request from Pinson dated January 20, 2017. *Id.* ¶ 9. Pinson requested all information pertaining to a December 29, 2016 letter from

the OIG. *Id.* Ex. 6. On March 29, 2017, the OIG responded to Pinson's request, assigning it a control number and indicating that the OIG "will answer [Pinson's] request as quickly as possible." *Id.* Ex. 7. On September 28, 2018, the OIG sent Pinson a letter containing responsive documents, redacted pursuant to FOIA Exemptions 6 and 7(C). *Id.* Ex. 8. On August 15, 2019, the DOJ provided to Pinson a copy of the OIG's final response to this request. Field Decl. ¶ 4.

### 4. Request No. 17-OIG-179

On March 24, 2017, the OIG received a FOIA request from Pinson dated January 9, 2017. *Id.* ¶ 10. Pinson requested agency records containing mentions of Pinson from October 24, 2016 to January 9, 2017 and information regarding any of Pinson's prior requests mailed to USP Allenwood or USP Terre Haute that may have been returned or not re-sent to her new address. *Id.* Ex. 5. On March 30, 2017, the OIG responded to Pinson's request, assigning it a control number and indicating that the OIG "will answer [Pinson's] request as quickly as possible." *Id.* On September 27, 2018, the OIG sent Pinson a letter containing responsive documents, some redacted pursuant to FOIA Exemptions 6 and 7(C). *Id.* ¶ 10. The OIG also informed Pinson that there were "no responsive documents" to her request for information regarding her prior requests. *Id.* Ex. 6. On August 15, 2019, the DOJ provided to Pinson a copy of the OIG's final response to this request. Field Decl. ¶ 4.

Despite DOJ's representation that copies of all four final OIG responses were sent, Pinson declares "under penalty of perjury" that "[a]t no time, did I receive a final response or production on [the] OIG requests." Pinson Decl., ECF No. 57-2.

### E. EOUSA Requests

#### 1. Request No. 2016-04056

On September 15, 2016, EOUSA received an undated letter from Pinson requesting

public records relating to "Speechnow.org v. Federal Election Committee, No. 08-5223 and 09-

5342." Wilkinson Decl. ¶ 5 & Ex. A, ECF No. 49-7. On October 7, 2016, EOUSA replied to

Pinson's request, assigning it a control number and asserting an additional ten-day response time

due to unusual circumstances. *Id.* ¶ 6. On October 31, EOUSA sent Pinson a letter notifying

Pinson that there were no records responsive to her request. *Id.* ¶ 9. On November 22,

EOUSA's final response letter was returned as undeliverable, and the final response was re-sent

on the same day. *Id.* ¶ 10. On December 16, EOUSA was notified of Pinson's administrative

appeal with OIP. *Id.* ¶ 11. On January 12, 2017, OIP affirmed EOUSA's determination. *Id.* ¶

12. On November 21, 2018, EOUSA re-sent Pinson a copy of its final response, in response to

the filing of Pinson's Amended Complaint. *Id.* ¶ 13.

#### 2. Request No. 2017-00412

On October 21, 2016, EOUSA received a letter from Pinson dated October 7, requesting

public records relating to "Drake v. United States, No. 14-cv-386 (S.D. Ind.)." *Id.* ¶ 17 & Ex. J.

On December 8, EOUSA replied to Pinson's request, assigning it a control number and asserting

an additional ten-day response time due to unusual circumstances. *Id.* ¶ 18. On May 30, 2017,

EOUSA's released records to Pinson. *Id.* ¶ 21. On November 21, 2018, EOUSA re-sent Pinson

a copy of its final response, in response to the filing of Pinson's Amended Complaint. *Id.* ¶ 22.

#### 3. Request No. 2017-00417

On November 1, 2016, EOUSA received an undated letter from Pinson requesting public

records relating to "Speechnow.org v. FEC, No. 08-5223, 09-5342 (D.C. Circuit)." *Id.* ¶ 23 &

Ex. M.  On December 13, 2016, EOUSA replied to Pinson's request, assigning it a control number and asserting an additional ten-day response time due to unusual circumstances.  *Id.* ¶ 24.  On June 20, 2017, EOUSA determined that FOIA Request 2017-00417 was a duplicate of Request No. 2016-04022, which had previously been filed by Pinson and a co-requester.  *Id.* ¶ 27.  (The Court observes that Request No. 2017-00417 is also identical in substance to Request No. 2016-04056, though one was handwritten while the latter was typed.  *Compare id.* Ex. A (No. 2016-04056), *with id.* Ex. M (No. 2017-00417).  The declaration provided by EOUSA concerning these Requests do not address this second similarity.)  Also on June 20, 2017, in a letter misdated August 23, 2016, EOUSA informed Pinson that Request No. 2017-00417 was a duplicate of FOIA Request "2016-04022."  *Id.* ¶ 27.  EOUSA later released 543 pages of responsive documents, without any withholdings, in response to Request No. 2016-4022.  *Id.*  On November 21, 2018, EOUSA re-sent Pinson a copy of its final response, in response to the filing of Pinson's Amended Complaint.  *Id.* ¶ 28.

### 4.  Request No. 2017-00357

On November 16, 2016, EOUSA received a letter from Pinson dated November 3, making a broad request for "production of any information in any format it exists in the Southern District of Indiana U.S. Attorney's Office received or generated since 9-25-16."  *Id.* ¶ 14 & Ex. H.  On November 30, EOUSA sent Pinson a letter requesting verification of her identity.  *Id.* ¶ 15.  EOUSA has no record of Pinson responding with the required documentation.  *Id.*

### 5.  Request No. 2017-00934

On December 28, 2016, EOUSA received a FOIA request from Pinson dated both December 3 and December 11, requesting all public records relating to "Turner v. Alberto Gonzalez, EEOC No's. [sic] 320-2005-0046X."  *Id.* ¶ 29 & Ex. R.  On February 8, 2017, EOUSA

sent Pinson a letter asking her to identify the specific U.S. Attorney's Office where she believes the records may be located. *Id.* ¶ 30. On April 25, EOUSA's final response letter was returned as undeliverable. *Id.* ¶ 31. On July 21, EOUSA was notified of Pinson's administrative appeal to OIP for this request, which indicated that Pinson believed the records were located in the District of Colorado. *Id.* ¶ 32. On August 14, OIP remanded Pinson's request to EOUSA for further processing, which EOUSA re-opened under reference number 2017-002702. *Id.* ¶ 33–34. On August 21, EOUSA sent Pinson a letter acknowledging her new request. *Id.* ¶ 35. On August 29, EOUSA advised Pinson that no responsive records were located in the District of Colorado. *Id.* ¶ 38 & Ex. X.

### 6. Request No. 2017-00359

Pinson in her Amended Complaint lists a FOIA request to EOUSA with the reference number 2017-00359. Am. Compl. App. A. According to their records, the EOUSA "has never received a request from [Pinson] that was assigned the reference number FOIA-2017-00359 or any formatting permutation thereof." Wilkinson Decl. ¶ 16.

### F. USMS Request

On December 23, 2016, the USMS received a letter from Pinson, along with other inmates, requesting information about themselves since November 1, 2014. Kil Decl. ¶ 2, ECF No. 49-6. On January 6, 2017, the USMS requested a verification of Pinson's identity, noting that the USMS "will acknowledge your request upon receipt in this office and correspond with you again, accordingly." *Id.* Ex. B. On February 7, the USMS received Pinson's verification of identity. *Id.* ¶ 4. On June 27, the USMS notified Pinson that the agency had commenced a search for responsive records. *Id.* ¶ 5. On August 23, 2018, after the start of this litigation, the

USMS released responsive documents to Pinson with redactions pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions 7(C) and 7(F).  *Id.* ¶ 7.

## G. CIA Requests

Pinson, in her Amended Complaint, describes two FOIA requests submitted to the CIA and explains that they "were neither answered, nor [was] a file number of the request provided other than acknowledging the requests."  Am. Compl. App. A.  The DOJ has provided no records of such requests.

## III. ANALYSIS OF THE MERITS

As mentioned above, the DOJ requests the dismissal of some of Pinson's claims and requests entry of summary judgment on others.  Mem. Supp. Defs.' Partial Mot. to Dismiss & Summ. J. ("DOJ Mot."), ECF No. 49-1; Mem. Supp. Defs.' Partial Mot. to Dismiss & Summ. J. Regarding Pl.'s BOP Claims ("BOP Mot."), ECF No. 54-1; Defs.' Reply, ECF No. 69. Although FOIA cases "typically and appropriately are decided on motions for summary judgment," *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009), questions of exhaustion of administrative remedies in FOIA cases are generally analyzed as a motion to dismiss under Rule 12(b)(6), *see, e.g.*, *Hidalgo v. FBI*, 344 F.3d 1256, 1260 (D.C. Cir. 2003); *Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 100 n.4 (D.D.C. 2012).  If, however, the defendant's motion references "matters outside the pleadings," a court must treat the motion as one for summary judgment.  Fed. R. Civ. P. 12(d); *see also Calhoun v. U.S. Dep't of Justice*, 693 F. Supp. 2d 89, 90–91 (D.D.C. 2010).  This Court has done so on several previous occasions in prior FOIA actions brought by Pinson against components of the DOJ.  *See, e.g., Pinson v. U.S. Dep't of Justice*, 61 F. Supp. 3d 164, 173 (D.D.C. 2015); *Pinson v. U.S. Dep't of Justice*, 79 F. Supp. 3d 250, 253–54 (D.D.C. 2015); *Pinson v. U.S. Dep't of Justice*, 69 F. Supp.

3d 125, 129–30 (D.D.C. 2014); *Pinson v. U.S. Dep't of Justice*, 69 F. Supp. 3d 108, 111–12 (D.D.C. 2014); *Pinson v. U.S. Dep't of Justice*, 70 F. Supp. 3d 199, 202–03 (D.D.C. 2014); *Pinson v. U.S. Dep't of Justice*, 70 F. Supp. 3d 111, 115 (D.D.C. 2014).

Here, both the DOJ and Pinson rely on materials not part of the pleadings, including, *inter alia*, several declarations by government employees of the various components of the DOJ who handle FOIA requests. *See, e.g.*, Waller Decl.; Hardy Decl.; Brinkmann Decl.; Kil Decl.; Wilkinson Decl.; Christenson Decl.; 2d Hardy Decl.; Suppl. Christenson Decl. Pinson, in her Oppositions, Pl.'s DOJ Opp'n; Pl.'s BOP Opp'n, also provides declarations upon which she relies, Pinson Decl., ECF No. 57-2; 2d Pinson Decl., ECF No. 60-2. Under these circumstances, the Court will evaluate most of the DOJ's motion under the summary judgment standard (except for DOJ's motion to dismiss Pinson's claims arising from her FOIA requests to the CIA and her APA claims, as discussed below). *See Pinson*, 61 F. Supp. 3d at 173 n.6 ("It is possible that construing the DOJ's motion under Rule 12(b)(6) would make no difference in the end. That being said, analyzing the motion under Rule 12(b)(6) would preclude the Court from considering materials outside the pleading . . . which would not be appropriate in a situation like this when both parties reference such materials." (citations omitted)).

## A. Claims Subject to Summary Judgment

### 1. Legal Standards

#### a. Summary Judgment

Summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002). A "material" fact is one capable of

affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255.

Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Indeed, "[s]ummary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving, conclusory statements." *Bonieskie v. Mukasey*, 540 F. Supp. 2d 190, 195 (D.D.C. 2008) (citations omitted). That is because "conclusory allegations" and "unsubstantiated speculation," whether in the form of a plaintiff's own testimony or other evidence submitted by a plaintiff to oppose a summary judgment motion, "do not create genuine issues of material fact." *Id.* at 200 n.12 (internal citation and quotation marks omitted); *see also Sage v. Broad. Publ'ns, Inc.*, 997 F. Supp. 49, 53 (D.D.C. 1998) ("Conclusory allegations made in affidavits opposing a motion for summary judgment are insufficient to create a genuine issue

of material fact."). The nonmoving party, moreover, must do more than merely establish some "metaphysical doubt;" rather, the nonmovant must come forward with "specific facts" demonstrating a genuine issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "In addition, the non-moving party cannot rely upon inadmissible evidence to survive summary judgment; rather, the nonmoving party must rely on evidence that would arguably be admissible at trial." *Manuel v. Potter*, 685 F. Supp. 2d 46, 58 (D.D.C. 2010) (citing *Greer v. Paulson*, 505 F.3d 1306,1315 (D.C. Cir. 2007)).

Further, in this Circuit, "a motion for summary judgment cannot be 'conceded' for want of opposition." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). "The burden is always on the movant to demonstrate why summary judgment is warranted," and "[t]he nonmoving party's failure to oppose summary judgment does not shift that burden." *Id.* (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring)). The Court "'must always determine for itself whether the record and any undisputed material facts justify granting summary judgment.'" *Id.* (quoting *Grimes*, 794 F.3d at 97 (Griffith, J., concurring) (citing Fed. R. Civ. P. 56(e)(3))).

### b. Exhaustion of Remedies

The DOJ's primary grounds for disposing of most of Pinson's claims is Pinson's alleged failure to exhaust her administrative remedies. Generally, a FOIA requester must exhaust his or her administrative remedies before filing suit. *See Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004). If a requester fails to do so, a court may grant summary judgment for the agency. *See Hidalgo v. FBI*, 344 F.3d 1256, 1260 (D.C. Cir. 2003).

Generally, there are "two ways for a requester to exhaust administrative remedies: actual exhaustion and constructive exhaustion." *Nat'l Sec. Counselors v. CIA,* 931 F.Supp.2d 77, 95

(D.D.C. 2013). Actual exhaustion, which entails an administrative appeal to the head of the agency, applies when an agency has actually responded to a request. *See Hull v. United States Attorney*, 279 F. Supp. 3d 10, 12 (D.D.C. 2017) (citing 5 U.S.C. § 552(a)(6)(A)). Constructive exhaustion, by contrast, comes into play when the agency has failed to respond to a FOIA request within the statutorily-required time period. *See id.*; *see also Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 184 (D.C. Cir. 2013) ("[I]f an agency fails to make and communicate its 'determination' whether to comply with a FOIA request within certain statutory timelines, the requester 'shall be deemed to have exhausted his administrative remedies.'" (quoting 5 U.S.C. § 552(a)(6)(C)(i))). However, the agency's failure to meet a deadline is not permanently fatal: "if the agency cures its failure to respond within the statutory period by responding to the FOIA request before suit is filed," then an administrative appeal is again "mandatory." *See Oglesby v. Dep't of Army*, 920 F.2d 57, 63 (D.C. Cir. 1990); *see also Hull v. United States*, 279 F. Supp. 3d 10, 12–13 (D.D.C. 2017). In any case, if there is a genuine dispute of material fact on the exhaustion issue, a court may refuse to grant summary judgment. *See Jones v. U.S. Dep't of Justice*, 576 F. Supp. 2d 64, 67 (D.D.C. 2008).

A requester also fails to exhaust administrative remedies when he or she does not pay required fees. *See Oglesby,* 920 F.2d at 66 ("Exhaustion [of administrative remedies] does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees."); *Crooker v. United States Secret Service*, 577 F. Supp. 1218, 1219 (D.D.C. 1983) (absent a waiver of fee requirements, failure to comply with fee regulations constitutes a failure to exhaust administrative remedies under FOIA). Under DOJ regulations, "[a] component ordinarily shall collect all applicable fees before sending copies of requested records to a requester." 28 C.F.R. § 16.10(a). If a component determines a request will cost more than twenty-five dollars, the

agency must notify the requester, and "the request shall not be considered received and further work will not be completed until the requester commits in writing to pay the actual or estimated total fee, or designates some amount of fees the requester is willing to pay." 28 C.F.R. § 16.10(e)(2). At that point, the requester may elect to receive her "statutory entitlements of 100 pages of duplication at no charge and, if the requester is charged search fees, two hours of search time at no charge." 28 C.F.R. § 16.10(e)(2)–(3); *see also* 5 U.S.C. § 552(a)(4)(A)(iv)(II). A requester is only required to pay full fees in advance if "the requester has previously failed to pay fees, or the agency has determined that the fee will exceed $250." 5 U.S.C. § 552(a)(4)(A)(v); *see also* 28 C.F.R. § 16.10(i).

## 2. Contested Requests

In her Oppositions, Pinson contests the DOJ's exhaustion arguments, but only in relation to some of her FOIA requests. As discussed in more detail below, she primarily argues summary judgment is inappropriate as to these requests for two reasons: (1) that she did not receive final responses, record releases, or fee assessments and (2) that some of her requests were constructively exhausted due to an agency's failure to respond to her request within the statutory period. Pl.'s DOJ Opp'n 2; Pinson Decl. ¶¶ 3–4; Pinson Decl. Attach. A; Pl.'s BOP Opp'n 3; Second Pinson Decl. ¶ 2.

### a. FBI Request Nos. 1358548 & 1372119

For FOIA Request 1358548, the DOJ argues that, because Pinson failed to pay the agreed upon fees ($65.40), she has failed to exhaust administrative remedies. DOJ Mot. 5–6; Defs.' Reply 7. Pinson first argues that the request was constructively exhausted (due the FBI's alleged failure to respond within the statutory period) *before* the FBI claimed non-payment, and thus her failure to pay was of no moment. Pl.'s DOJ Opp'n 3. But even if the FBI's response to Pinson's

request was not received within the statutory period, the FBI cured this deficiency by responding to this request well before the suit was filed. Hardy Decl. ¶¶ 55–56. As a result, "[a]n administrative appeal is mandatory," *Oglesby*, 920 F.2d at 63, and, unfortunately for Pinson, there is no record of any such appeal, Hardy Decl. ¶ 72.

Pinson also argues that she did not receive the "fee assessment." Pl.'s DOJ Opp'n 2. And there is evidence in the records suggesting why that might be the case: the notices of non-payment and of the closing of the request were sent to USMCFP Springfield (on May 2, 2017 and June 13, 2017, respectively), Hardy Decl. Exs. TT & UU, during which time Pinson herself was transferred from USMCFP Springfield to FMC Rochester (on May 14, 2017), Christenson Decl. ¶ 3. As Defendant points out, the presumption of receipt of properly addressed and posted mail is recognized in this Circuit, *see Legille v. Dann*, 544 F.2d 1, 4–5 (D.C. Cir. 1976), and has been applied in FOIA cases, *see, e.g.*, *Jean-Pierre*, 880 F. Supp. 2d at 99 n.3; *Citizens for Responsibility & Ethics in Wash. v. Dep't of the Interior*, 503 F. Supp. 2d 88, 103 (D.D.C. 2007). However, courts in this Circuit, including this Court in a separate FOIA action brought by Pinson, have also denied summary judgment for an agency in cases where an inmate declares, under penalty of perjury, not to have received responses to FOIA requests, thereby creating a genuine issue of material fact. *See, e.g.*, *Pinson v. U.S. Dep't of Justice*, 177 F. Supp. 3d 56, 78 (D.D.C. 2016) ("A court may, for example, deny summary judgment to an agency that claims to have notified a plaintiff of its response to a FOIA request if the plaintiff attests that he never received the agency's response and if the agency fails to offer evidence to the contrary.") (citation omitted); *Bloomgarden v. U.S. Dep't of Justice*, 10 F. Supp. 3d 146, 152 (D.D.C. 2014) (declining to grant summary judgment for defendant on exhaustion grounds when plaintiff filed a declaration stating he had never received a response from defendant). In that vein, Pinson states

here that she "never received the release of fee assessment." Pl.'s DOJ Opp'n 2 (citing Pinson Decl. ¶ 5). And so, considering Pinson's statements, plus the fact that she was transferred to another prison around the time the key letters were mailed, there is a disputed issue of material fact as to whether Pinson received the correspondence. Accordingly, there is a disputed issue of fact as to whether Pinson exhausted her administrative remedies. The Government is therefore not entitled to summary judgment on Pinson's claims relating to Request 1358548 (or those relating to Request 1372119, which was administratively closed along with Request 1358548 as a result of Pinson's non-payment of fees).

To win summary judgment based on failure to exhaust the Government would have to prove that Pinson either reached the end of the road for her administrative remedies or had an opportunity to pursue further administrative remedies and did not do so. For Pinson's part, if she wants to move these claims forward, she will have to pay the assessment, if she has not already done so. *See* 28 C.F.R. § 16.10(i)(3) ("Where the requester has previously failed to pay a properly charged FOIA fee . . . the [agency] component may require that the requester make an advance payment before the component begins to process a new request or continues to process a pending request or any pending appeal.").

### b. BOP Requests

### i. Request No. 2015-06335 & Related Requests

For FOIA Request 2015-06335, the DOJ argues that, while Pinson did eventually pay the agreed upon fees for Request 2015-06335 (leading to the release of responsive records), Christenson Decl. ¶ 21, she did not follow the DOJ's instructions at the time of payment with regard to the fourteen other FOIA requests that were administratively closed along with Request 2015-06335 for non-payment of fees. *Id.* BOP had advised Pinson that she "must advise [BOP] in writing" regarding how she wanted to proceed with these requests. *Id.*; *id.* Ex. H (letter from

BOP to Pinson).  Pinson claims that, once she became aware of her failure to pay fees,[5] she paid

the fees and came to a verbal agreement with named BOP personnel to reopen the fourteen (out

of twenty-four total) related FOIA requests.  Pl.'s BOP Opp'n 3; Pl.'s Statement of Facts ¶ 4.

Even granting that Pinson did indeed make such an arrangement, this would be inconsistent with

BOP's instruction to communicate in writing how she wanted to proceed.  Pinson has not argued

that she did not receive the letter requiring her to communicate in writing, *see* Pl.'s BOP Opp'n 3

(discussing these requests); Pl.'s Statement of Facts ¶ 4 (same), so BOP's declaration and

attached correspondence are uncontroverted evidence in the Government's favor on this issue.

Accordingly, the Court finds that Pinson exhausted her administrative remedies by failing to

proceed as instructed by BOP, and will grant summary judgment to the DOJ for Pinson's claims

relating to Request 2015-06335 and the fourteen requests administratively closed therewith.

### ii. Request No. 2017-01605 & Related Requests

For FOIA Request 2017-01605, the DOJ argues that, because Pinson has failed to pay the

agreed upon fees for Request 2017-01605, she has not exhausted her administrative remedies for

Request 2017-01605 or the related requests that were simultaneously closed for non-payment of

fees.  Defs.' Reply 9.  In turn, Pinson argues that the request was constructively exhausted and

that she has attempted twice to pay the fees without success. Pl.'s BOP Opp'n 3.  However, even

if BOP's response to Pinson's request was not received within the statutory period, the FBI cured

this deficiency by responding to this request (and in fact, engaged in continuous correspondence

with Pinson over the course of two months to secure her agreement to pay fees to which she

responded) before suit was filed.  Christenson Decl. ¶¶ 26–35.  As a result, "[a]n administrative

---

[5] A letter written by Pinson suggests that, due to her transfer to another Federal prison
facility, she did not receive the notice that BOP was administratively closing Request 2015-
06335 and the fourteen other FOIA requests for non-payment of fees.  Christenson Decl. Ex. I.

appeal is mandatory, if the agency cures its failure to respond within the statutory period by responding to the FOIA request before suit is filed," *Oglesby*, 920 F.2d at 63, of which there is no record, Hardy Decl. ¶ 72.

Moreover, while Pinson has twice attempted to pay the fees, the DOJ argues that she has failed to follow the instructed method for doing so. Supp. Christenson Decl. ¶¶ 4–7. Moreover, even if Pinson were successful in paying her fees in the future, she must comply with BOP's fee regulations *before* filing suit. *See Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives,* 555 F. Supp. 2d 16, 23 (D.D.C. 2008). Accordingly, the Court grants summary judgment for the DOJ for Pinson's claims relating to Request 2017-1605 and the seven other related requests administratively closed therewith.

### iii. Request Nos. 2014-05515, 2016-05391, 2016-07466, 2017-0070, 2017-01575, 2017-01680, 2017-02203, 2017-02309, 2017-02623, 2017-04282, 2017-04296, & 2017-04297

In her Second Opposition, Pinson identifies twelve specific FOIA requests to the BOP for which she allegedly never received final responses, Pl.'s BOP Opp'n 3, and declares, under penalty of perjury, that responses to these requests were never received, 2d Pinson Decl. ¶ 2. The DOJ argues that, because Pinson never administratively appealed the BOP's final determination of these requests, she has not exhausted her administrative remedies. BOP Mot. 3–5. According to DOJ, final responses (or other notifications requiring responses that Pinson did not respond to) for all twelve of these requests were sent between September 11, 2016 (No. 2014-5115) and November 3, 2017 (No. 2017-4282). Pinson does not appear to have any documentation supporting her declaration that she never received these. For these requests there is no equivalent to the October 2016 letter she sent regarding Request No. 2015-06335 indicating she was having difficulty receiving mail. *See supra* n.5 (citing Christenson Decl. Ex. I). Arguably, though, that letter provides at least some support for the idea that Pinson was having

difficulty receiving mail in late 2016. DOJ points to a supporting declaration stating that responses were sent to Pinson advising her of her right to appeal, and providing copies of these responses. *See id.* (citing Christenson Decl.). But DOJ points to nothing confirming that Pinson received any of these.

Without any meaningful supporting evidence from either side, the dispute boils down to DOJ's word against Pinson's. Because at summary judgment the Court must view facts in the light most favorable to the non–movant, *see Scott*, 550 U.S. at 380, 127 S.Ct. 1769 (citing Fed. R. Civ. P. 56(c)), and cannot make credibility determinations, *see Fed. Ins. Co. v. Olawuni*, 539 F. Supp. 2d 63, 66 (D.D.C. 2008) ("On a motion for summary judgment, the Court must 'eschew making credibility determinations or weighing the evidence.'" (quoting *Czekalski*, 475 F.3d at 363)), the Court must accept as true Pinson's declaration that she did not receive any responses. *See Pinson*, 177 F. Supp. 3d at 78; *Bloomgarden*, 10 F. Supp. 3d at 152; *Jones*, 576 F. Supp. 2d at 66–67. Accordingly, the Court denies summary judgment for the DOJ for Pinson's claims relating to Requests 2014-05515, 2016-05391, 2016-07466, 2017-0070, 2017-01575, 2017-01680, 2017-02203, 2017-02309, 2017-02623, 2017-04282, 2017-04296, and 2017-04297.

### iv.  Request No. 2017-01288

For FOIA Request 2017-01288, the DOJ has, as a result of the present litigation, sent the completely unredacted responsive record to Pinson which BOP had originally withheld. BOP Mot. 5–6; Christenson Decl. ¶ 76. In her response, Pinson does not specifically contest this representation or suggest the record was not received; she argues only that BOP "improperly withheld" the record and "offers no arguments supporting its decision to withhold it in the first place." Pl.'s BOP Opp'n 4. Given the uncontested evidence that specific requested record was released in full, the Court grants summary judgment for this request.

### c. OIG Requests

For Pinson's four FOIA requests to OIG, Pinson had declared under penalty of perjury

that she did not receive the final responses. Pinson Decl., ECF No. 57-2. The DOJ says that OIG

records show that responses were sent in late 2016 and early 2017—around the same time that at

least some evidence suggests Pinson had difficulty receiving mail. Def.'s Reply at 4–5 (citing

Waller Decl. ¶¶ 7–10); *see also supra* n.5 (discussing Pinson's transfer and mail difficulties).

Again it is Pinson's word against the Government's, and the Court cannot make a credibility

determination at this stage. *See Fed. Ins. Co.*, 539 F. Supp. 2d at 66. DOJ sent Pinson

(additional) copies of OIG's final determinations for all four requests last August when it served

her with a copy of its Reply brief. Field Decl. ¶¶ 3–4. Pinson has not filed anything suggesting

that she did not receive the materials at that time, but neither has DOJ filed anything suggesting

that Pinson either exhausted her appeal or received notice and gave up on it. The Court does not

see how the late service of the responses along with the Reply brief, absent something more, can

provide any basis for a grant of summary judgment that would otherwise be improper. The

Court therefore denies summary judgment regarding the OIG requests.

### 3. Uncontested Requests

In her Oppositions, Pinson did not respond to DOJ's arguments in relation to her other FOIA

requests. In these cases, the Court "must determine for itself whether the record and any

undisputed material facts justify granting summary judgment." *Grimes*, 794 F.3d at 97 (Griffith,

J., concurring) (citing Fed. R. Civ. P. 56(e)(3)).

### a. FBI Requests

Regarding Pinson's other FOIA requests to the FBI, the DOJ argues that Pinson failed to exhaust administrative remedies on one of two grounds: (1) failure to provide third party authorization or (2) failure to appeal the FBI's determinations to OIP. Defs.' Reply 6.

### i. Request Nos. 1353986, 1364610, 1365503, & 1366537

The DOJ identifies Requests 1353986, 1364610, 1365503, and 1366537 as requests for which Pinson failed to provide third party authorizations, thereby leading to a failure to exhaust administrative remedies. *Id.* However, as to each request Pinson appealed the determination of the FBI to OIP on grounds that such authorization was not needed due to overriding public interest. Hardy Decl. Exs. C, R, W, & BB. While Pinson was ultimately not successful in her administrative appeals, she did use and exhaust the administrative remedy available to her, leaving her the right to file suit in federal court. *Id.* ¶¶ 9, 25, 33, 39. Accordingly, the Court denies summary judgment for DOJ for Pinson's claims relating to Requests 1353986, 1364610, 1365503, and 1366537 for failure to exhaust administrative remedies.

### ii. Request Nos. 1365683 & 1371871

For Requests 1365683 and 1371871, Pinson received *Glomar* responses from the FBI, which Pinson appealed. *Id.* ¶ 105. While Pinson was ultimately not successful in her appeal, she did use and exhaust the administrative remedy available to her, leaving her the right to file suit in federal court. *Id.* ¶ 107. Accordingly, the Court denies granting summary judgment for DOJ for Pinson's claims relating to Requests 1365683 and 1371871 for failure to exhaust administrative remedies.

### iii. Request Nos. 1354738, 1360576, & 1365468

DOJ identifies Requests 1354738, 1360576, and 1365468 as requests for which Pinson failed to make an administrative appeal before seeking judicial review. Defs.' Reply 6. Because

the record does not provide any evidence to show that Pinson appealed the final determinations for these requests or failed to receive final responses for these requests, the Court finds no genuine issue of material fact that would warrant the denial of summary judgment. Accordingly, the Court grants summary judgment for DOJ for Pinson's claims relating to Requests 1354738, 1360576, and 1365468.

### iv. Request Nos. 13610160 & 13654504

For Requests 13610160 and 13654504, the FBI withheld responsive records as part of a pending investigation of Pinson herself. Hardy Decl. ¶¶ 76, 85. Pinson appealed both requests but was ultimately unsuccessful in her appeals, which OIP concluded in February and March 2017. *Id.* ¶¶ 83, 89. As of February 17, 2018, the FBI has ended the investigations, but the FBI has discontinued any further processing of Pinson's requests due to outstanding fees. *Id.* ¶¶ 84, 90. However, both of Pinson's appeals predate the FBI's decision on June 13, 2017 to administratively close Pinson's requests for failure to pay fees, and Pinson did use and exhaust the administrative remedy available to her, leaving her the right to file suit in federal court for these two requests. *Id.* ¶¶ 83, 89. Accordingly, the Court denies summary judgment for DOJ for Pinson's claims relating to Requests 13610160 and 13654504 on grounds of failure to exhaust administrative remedies. Again, though, the fact that DOJ is not entitled to summary judgment does not mean that it must move these claims forward. Pinson must pay any outstanding fees first. *See* 28 C.F.R. § 16.10(i)(3).

### v. Request Nos. 1360562 & 1372813

For Requests 1360562 and 1372813, the FBI withheld responsive records as part of pending investigations. Hardy Decl. ¶¶ 95, 116. Pinson appealed both requests but was ultimately unsuccessful in her appeals, which OIP concluded in June and November 2017. *Id.* ¶¶ 100, 120. Though the FBI has since made certain records publicly available for Request

1360562, the FBI has discontinued any further processing of Pinson's requests due to outstanding fees. *Id.* ¶ 101. While Pinson was ultimately not successful in her appeal, she did use and exhaust the administrative remedy available to her, leaving her the right to file suit in federal court. *Id.* ¶¶ 100, 120. Accordingly, the Court denies granting summary judgment for DOJ for Pinson's claims relating to Requests 1360562 and 1372813 for failure to exhaust administrative remedies. Again, Pinson must pay any outstanding fees to proceed on these requests. *See* 28 C.F.R. § 16.10(i)(3).

### b. BOP Requests

For most of Pinson's remaining FOIA requests to the BOP, the DOJ argues that Pinson failed to make an administrative appeal before seeking judicial review.

### i. Request Nos. 2015-03237, 2016-05251, 2017-01578, 2017-01817, 2017-03884, 2017-04065, & 2017-04380

For Requests 2015-03237, 2016-05251, 2017-01578, 2017-01817, 2017-03884, 2017-04065, and 2017-04380, the DOJ argues that, because Pinson never administratively appealed the BOP's final determination of these requests, she has not exhausted her administrative remedies. BOP Mot. 3–5. Because the record does not provide any evidence to show that Pinson appealed the final determinations for these requests or failed to receive responses for these requests, the Court finds no genuine issue of material fact that would warrant the denial of summary judgment. Accordingly, the Court grants summary judgment for Request 2015-03237, 2016-05251, 2017-01578, 2017-01817, 2017-03884, 2017-04065, and 2017-04380.

### ii. Request Nos. 2011-07156, 2012-00039, 2013-01684, 2016-02371, & 2017-004435

DOJ argues that the remaining FOIA requests to BOP listed in Pinson's Amended Complaint, namely Requests 2011-07156, 2012-00039, 2013-01684, 2016-02371, and 2017-004435, are either subject to other litigation or misidentified, Christenson Decl. ¶¶ 13, 132. In

her opposition, Pinson "stipulates to dismissal of claims relating to" these five requests. Pl.'s BOP Opp'n 4. Accordingly, this Court grants summary judgment for the DOJ for Pinson's claims relating to Requests 2011-07156, 2012-00039, 2013-01684, 2016-02371, and 2017-004435.

### c. OIP Requests

DOJ argues that OIP legitimately discontinued processing Pinson's FOIA requests due to Pinson's failure to pay outstanding fees to the FBI and BOP. Defs.' Reply 2. Pinson has not challenged this decision or alleged she was unaware of the decision to discontinue processing because of the unpaid fees. Accordingly, the Court grants summary judgment for the DOJ for Pinson's claims relating to her two FOIA requests to the OIP.

### d. EOUSA Requests

#### i. Request No. 2017-00357

For FOIA Request 2017-00357, the DOJ closed the case (because Pinson failed to provide the requisite notarization of her signature) and notified Pinson of her right to appeal the closure. *See* Wilkinson Decl. Ex. I. Because the record does not provide any evidence to show that Pinson provided the authorization, appealed the closure of the case, or failed to receive communications regarding this request, the Court finds no genuine issue of material fact that would warrant the denial of summary judgment. Accordingly, the Court grants summary judgment for the DOJ for Pinson's claims relating to Request 2017-00357.

#### ii. Request No. 2017-00359

DOJ argues that Request 2017-00359 is misidentified. *Id.* ¶ 16. Because Pinson does not challenge this representation and because the record does not provide any evidence that this not the case, the Court finds no genuine issue of material fact that would warrant the denial of

summary judgment.  Accordingly, this Court grants summary judgment for the DOJ for Pinson's claims relating to Requests 2017-00359.

### iii.  Request Nos. 2017-00934, 2016-04056, 2017-00412, & 2017-00417

For the remainder of Pinson's FOIA requests to EOUSA, namely Requests 2017-00934, 2016-04056, 2017-00412, and 2017-00417, the EOUSA avers that it directed each request to the relevant United States Attorney's office.

In two of the requests (Nos. 2016-04056, 2017-00417), Pinson sought public record information about "*Speechnow.org v. Federal Election Commission,* No. 08-5223 and 09-5342." *Id.* ¶¶ 5, 23.  Although the EOUSA reported it has no responsive documents in relation to the 2016 request (on the grounds that the U.S. Attorney's Office for the District of Columbia was not a party to either case, *see id.* ¶ 8), in response to the identical 2017 request, the office took the additional step of searching the public electronic docket for both cases and released 543 pages to Pinson in full.  Nails Decl. ¶ 13, ECF No. 49-8.

Request No. 2017-00934, which sought certain public records relating to a particular case, was forwarded to the U.S. Attorney's Office for the District of Colorado, but a search of the relevant case management system revealed no responsive records.  T. Robinson Decl. ¶ 3, ECF No. 49-10.  Finally, as to Request No. 2017-00412, a similar request for public case-related documents was sent to the U.S. Attorney's Office for the Southern District of Indiana, which identified 193 pages of responsive documents and released them in full.  Wilkinson Decl. ¶ 21.

Because all four of these requests sought public documents and did not involve the application of any exemptions, the only issue for this Court to consider is whether the searches were adequate.  *See Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (noting that an "agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents") (internal citation and punctuation omitted).  In light of the fact that the

requests were highly specific (seeking public records relating to certain cases), that the EOUSA adequately explained the steps the individual offices took to locate relevant documents, and the presumption of good faith afforded to agency declarations, *SafeCard Servs. Inc.*, 926 F.2d at 1200, the Court agrees with DOJ that the searches were adequate. Accordingly, the Court grants summary judgment for the DOJ for Pinson's claims relating to Nos. 2017-00934, 2016-04056, 2017-00412, & 2017-00417

### e. USMS Request

As relevant here, the request to USMS sought records concerning Pinson and others who joined her in making the request. Kil Decl. ¶ 2, ECF No. 49-6. As Ms. Kil explains in her declaration, the USMS searched its centralized Justice Detainee Information System (JDIS) using Pinson's name and other identifying information. *Id.* ¶ 14. Based on that search, the agency concluded that two district offices were likely to have responsive information, and each office subsequently conducted its own search of records. *Id.* ¶ 15–18. One office—the USMS office in the Western District of Oklahoma—found 38 pages of potentially responsive documents. *Id.* ¶ 18. It ultimately released 32 pages in full and 6 pages in part, with the information withheld under FOIA Exemptions (b)(7)(C) and (b)(7)(F). *Id.* Ex. F, *Vaughn* Index, ECF No. 49-6 at 24–25; 5 U.S.C. § 552(b)(7). The partially withheld pages were part of two documents compiled by the agency "in the course of arrest and custody of" Pinson. Kil Decl. ¶ 26. Under Exemption 7(C), the agency withheld the name and personal information of a law enforcement officer "associated with a criminal matter involving [Pinson]," *id.* ¶ 28, as well the name of a third-party mentioned in a report, *id.* ¶ 30. Under Exemption 7(F), the agency withheld the names of individuals involved in a threat investigation relating to Pinson. *Id.* ¶ 33.

Beyond these "extremely limited" withholdings, "no reasonably segregable non-exempt portions of the pages" were withheld. *Id.* ¶ 34.

As to the adequacy of the search, the Court finds that Ms. Kil's detailed explanation of the search process establishes that the agency undertook a search reasonably calculated to uncover all relevant documents. *See Steinberg*, 23 F.3d at 551. As to the exemption themselves, the documents meet Exemption 7's threshold requirement: being compiled for law enforcement purposes. 5 U.S.C. § 552(b)(7). As Ms. Kil explains, the documents were generated by the agency in the course of the arrest and detention of Pinson and thus "quite obviously related to the [USMS's] law enforcement duties." *Blackwell v. F.B.I.*, 646 F.3d 37, 40 (D.C. Cir. 2011). Kil Decl. ¶ 29–31. Under Exemption 7(C), Ms. Kil also reasonably stated why the privacy interest of the law enforcement officer and the third-party mentioned in the report outweighed any conceivable public interest in the information. *Id.*; *see also Am. Civil Liberties Union v. Dep't of Justice*, 655 F.2d 1, 6–7 (D.C. Cir. 2011); *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992). Similarly, she justified the use of Exemption 7(F), which allows the withholding of information that could "could reasonably be expected to endanger the life or physical safety of any individual," 5 U.S.C. § 552(b)(7)(F), to protect the names of individuals involved in a threat investigation. While the details here are somewhat elusive, in light of the presumption of good faith afforded to agency declarations, *SafeCard Servs. Inc.*, 926 F.2d at 1200, and the "broadly stated" scope of the exemption, *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 523 (D.C. Cir. 2015), the Court credits Ms. Kil's affidavit and finds the exemption applicable.

Lastly, Ms. Kil's explanation of the agency's careful efforts to release all segregable information is satisfactory, particularly in light of the minimal, highly-specific withholdings. *See*

*Milton v. U.S. Dep't of Justice*, 842 F. Supp. 2d 257, 260 (D.D.C. 2012) ("An affidavit stating that an agency official conducted a review of each document and how she determined that no document contains segregable information fulfills the agency's obligation.").

Because the Court finds the agency has carried its burden, and because Pinson has not argued otherwise, the Court grants summary judgment to the DOJ as to the claims relating to USMS. [6]

### B. Claims Subject to Dismissal

### 1. Legal Standard

Because the DOJ moves to dismiss Pinson's FOIA claims against the CIA and her APA claim based solely on the pleadings, the remainder of the DOJ's motion is appropriately evaluated under a motion to dismiss standard pursuant to Rule 12(b)(6). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

---

[6] The Amended Complaint also asserts a violation of the Privacy Act, 5 U.S.C. § 552a. Am. Compl. 1. The Court understands this to refer to Pinson's challenge to the Privacy Act Exemption applied to certain pages of the documents that were released in response to her USMS request. *See* Kil Decl. ¶ 7. The USMS stated that portions of certain pages were withheld pursuant to Privacy Act Exemption (j)(2), but also stated that "Plaintiff's records were processed for disclosure pursuant to the FOIA." *Id.* ¶ 24. No party has made any mention of the Privacy Act in its briefing, and Pinson does not appear to have advanced any separate argument based on the Privacy Act in opposition to summary judgment concerning the USMS materials. Accordingly, to the extent Pinson advanced any claim under the Privacy Act, the Court understands the Government to have moved for summary judgment on that claim in connection with the USMS materials. And to the extent such a motion was made, it is granted for the same reasons that summary judgment was granted under FOIA for the USMS materials.

When ruling on a motion to dismiss, the Court will ordinarily "accept as true all of the factual allegations contained in the complaint," *Atherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), and liberally construe it in plaintiff's favor. *Porter v. CIA*, 778 F.Supp.2d 60, 65 (D.D.C. 2011). However, "[t]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citing *Twombly*, 550 U.S. at 555).

A *pro se* plaintiff's complaint will be "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see Koch v. Schapiro*, 699 F. Supp. 2d 3, 7 (D.D.C. 2010). However, the Supreme Court has made clear that "while . . . some procedural rules must give way because of the unique circumstance of incarceration," there is no requirement "that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993).

## 2. CIA Requests

In her Amended Complaint, Pinson states that she submitted two FOIA requests to the CIA, "which were neither answered, nor a file number of the request provided other than a letter acknowledging the requests." Amend. Compl. App. A. However, Pinson does not elaborate further any factual allegations regarding these requests, such as the date the request was made, the subject matter of the requests, or the date the letter acknowledging the requests was received. Accordingly, the DOJ moved to dismiss Pinson's FOIA claims against the CIA for failure to state a claim, DOJ Mot. 30–32; Defs.' Reply 3–4, which Pinson does not address in her Oppositions. Because Pinson failed to address these arguments in her response to the DOJ's

motions to dismiss, the Court will dismiss Pinson's FOIA claims against the CIA as conceded.
*See Competitive Enter. Inst. v. U.S. Envntl. Prot. Agency*, 67 F. Supp. 3d 23, 35 (D.D.C. 2014)
(citing *CSX Transp., Inc. v. Commercial Union Ins., Co.*, 82 F.3d 478, 482–83 (D.C. Cir. 1996);
*Jones v. Air Line Pilots Ass'n*, 713 F.Supp.2d 29, 39 (D.D.C. 2010); *Hopkins v. Women's Div.,*
*Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002)).

### 3. APA Claims

Additionally, Pinson's Amended Complaint alleges violations under the APA.  Am.
Compl. 1.  However, Pinson goes no further than listing "[v]iolation of the Administrative
Procedures Act, " *id.*, without specifying which agency action she wishes to challenge or any
other factual allegations.  Accordingly, the DOJ moved to dismiss Pinson's APA claims for
failure to state a claim, DOJ Mot. 32–33; Defs.' Reply 4, which Pinson does not address in her
Oppositions.  Because Pinson failed to address these arguments in response to the DOJ's motions
to dismiss, the Court will dismiss Pinson's APA claims as conceded.  *See Competitive Enter.*
*Inst.*, 67 F. Supp. 3d at 35.

### IV.  OTHER PENDING MOTIONS

#### A.  Motion for Order to Disclose Addresses

Pinson's Amended Complaint raises claims against several BOP employees.  Am.
Compl. 1–2.  Neither party has addressed these claims, and the Assistant United States Attorneys
who have filed the two pre-trial motions do "not currently represent those individuals" listed in
Pinson's Amended Complaint.  DOJ Mot. 2.  Pinson has not served these individuals.  The Court
therefore has no reason to address the substance of these claims in this opinion.

Pinson filed two motions for service upon two individual defendants in this case, ECF
Nos. 24, 42, possibly intending to request service on the BOP employees against whom she

brought claims in her Amended Complaint. However, because Pinson was unable to identify the names and addresses of the individuals she wanted served, the Court denied these motions, as it was "not possible for court officers to effect service on her behalf." Order Denying Pl.'s Mots. for Services Upon Individual Defs., ECF No. 43. Pinson has indicated that the Government, in the absence of a court order authorizing disclosure, is "statutorily prohibited from supplying such information to plaintiff," and therefore moves for such an order. Pl.'s Mot. for Order to Disclose Addresses, ECF No. 47. The BOP has not opposed the motion. In light of the potential security and privacy concerns, the Court directs the BOP to file a brief indicating its position on the disclosure of the home addresses of the individual defendants in this case or, alternatively, suggesting whether there is some other appropriate means of effecting service on the individual defendants.

### B. Motions for Preliminary Injunctions

Pinson also filed three motions for preliminary injunctions, ECF Nos. 56, 58, and 67.[7] In this case, the Court has already denied three prior motions for preliminary injunction that raised similar issues. *See* Mem. Op. Denying Pl.'s Mot. for Preliminary Inj. & Mot. to Appoint Counsel, ECF No. 25.

Specifically, Pinson's fourth and fifth motions for preliminary injunctions assert that Defendant's employees have "banned legal phone calls, postage, or her legal files in their entirety." Fourth Preliminary Inj. Mot. at 1, ECF No. 56. Accordingly, Pinson asks the Court to

---

[7] Pinson also moved twice to "supplement" her fourth and fifth motions for preliminary injunctions, which the Court hereby grants. *See* Mot. to Supplement, ECF No. 62, and Second Mot. to Supplement, ECF No. 64. In her fifth motion, ECF No. 58, Pinson also moved for an extension of time to file her response to BOP's motion for summary judgment; the Court hereby denies that portion of the motion as moot, as Pinson has already filed her response.

"enjoin" interference with her "access to postage or legal calls," *id.* at 2, and seeks the "release of plaintiff's legal files," Fifth Preliminary Inj. Mot. at 2, ECF No. 58. Plaintiff's sixth motion also seeks to "enjoin[] defendants from limitations on access to paper, envelopes, [and] pens." Sixth Preliminary Inj. Mot. at 1, ECF No. 67.[8]

Defendants oppose all three motions. *See* Defs.' Opp. to Pl.'s Fourth and Fifth Mots. Preliminary Inj. ("Defs.' First PI Opp'n"), ECF No. 65, Defs.' Opp. to Pl.'s Sixth Mot. Preliminary Inj. ("Defs.' Second PI Opp'n"), ECF No. 72. Defendants argue that the motions exceed the proper scope of a preliminary injunction motion and that, in any case, Pinson's allegations "lack any factual basis." Defs.' First PI Opp'n at 2.

### 1. Legal Standards

"[A] preliminary injunction is an injunction to protect [the] plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits." *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 954 (D.C. Cir. 2005) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedures § 2947 (2d ed. 1992)). "[T]he decision to grant injunctive relief is a discretionary exercise of the district court's equitable powers*." John Doe Co. v. Consumer Fin. Prot. Bureau*, 235 F. Supp. 3d 194, 201 (D.D.C. 2017) (quoting *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1209 (D.C. Cir. 1989)). A preliminary injunction is an "extraordinary remedy," and one is "never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

---

[8] The Court hereby also denies Pinson's motion for hearing on her sixth motion for preliminary injunction. *See* Mot. for Hearing, ECF No. 68. Plaintiff proposes presenting the live testimony of various fellow inmates. *Id.* at 1. However, "[t]he practice in this jurisdiction is to decide preliminary injunction motions without live testimony where possible," D.D.C. Civ. R 65.1(d), and the Court concludes that such a hearing is unwarranted here.

To warrant preliminary injunctive relief, the moving party "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 20. Of these factors, likelihood of success on the merits and irreparable harm are particularly crucial. *See Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (reading *Winter* "to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction'") (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (2009) (Kavanaugh, J., concurring)); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (internal citations and quotation marks omitted) ("[A] movant must demonstrate at least some injury for a preliminary injunction to issue, for the basis of injunctive relief in federal courts has always been irreparable harm.").

### 2. Analysis

Pinson fails to demonstrate that she is likely to succeed on the merits or that she will suffer irreparable harm absent a preliminary injunction.

Pinson's alleged denial of access to records, phone calls, and research can essentially be characterized as a denial of Pinson's constitutional right to access the courts. A claim based on the denial of such right requires a "very high bar of showing that [Pinson] had been injured by [her] lack of access. *Pinson v. DOJ*, 273 F. Supp. 3d 1, 10 (D.D.C. 2017); *see also Lopez v. District of Columbia*, 300 F. Supp. 3d 253, 256 (D.D.C. 2018) (internal citations and quotation marks omitted) (granting defendants' motion to dismiss because plaintiff's "path to the court [wa]s not completely foreclosed" and thus he was not "presently denied an opportunity to litigate" as required "to make out a forward-looking constitutional-right-of-access [to the courts]

claim"); *Isaac v. Samuels*, 132 F. Supp. 3d 56, 59–60 (D.D.C. 2015) (citations omitted) (granting defendants' motion to dismiss because plaintiff could not show "actual prejudice or injury from BOP's failure to provide him with state law materials" to challenge his conviction during his incarceration). Here, Pinson does not identify any motion or complaint that she has been prevented from filing, and "is thus far from demonstrating 'that a nonfrivolous legal claim ha[s] been frustrated or . . . impeded.'" *Pinson*, 273 F. Supp. 3d at 10 (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996)). To the contrary, Pinson has responded to the government's motions and continued filing motions in this case. *See* Pl.'s DOJ Opp'n; Pl.'s BOP Opp'n. Accordingly, she has not demonstrated a likelihood of success on the merits on a claim for lack of access to the courts.

Similarly, Pinson has also not demonstrated that she will suffer irreparable harm absent an injunction. As mentioned, Pinson currently appears to have access to her documents and is able to effect filings in this case. *See, e.g., John Doe Co.*, 235 F. Supp. at 202 (noting that demonstrating irreparable harm requires pointing to an injury "both certain and great[,] . . . actual and not theoretical[,]" and so imminent "that there is a clear and present need for equitable relief" (internal quotation marks omitted) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297)).

Thus, because she has not pointed to an irreparable harm that would result from failing to grant any of the injunctions and because she is not likely to succeed on the merits, Pinson's motions for preliminary injunctive relief are denied.

### C. Motions for Sanctions

Pinson also moves for sanctions against Defendants for submitting "a materially false and perjurious declaration," which was included with Defendants' opposition to Pinson's sixth

motion for a preliminary injunction. Pl.'s Mot. for Sanctions at 1, ECF No. 73.[9]  The core

allegation is that a prison official misstated the number of sheets of paper prisoners are allocated

per week. J. Ulrich Decl., ECF 76-1.  However, it appears that the misstatement was minor

(involving a discrepancy of one page per week) and, thus, would not have been material to the

Court's consideration of the issues presented. *See* Defendants' Opp'n Mot. for Sanctions, ECF

No. 76.  And in any case, even crediting Pinson's account, there is no allegation that the

misstatement was made in bad faith, and thus the motion for sanctions must be denied. *United

States v. Wallace*, 964 F.2d 1214, 1219 (D.C. Cir. 1992) (citing *Roadway Exp., Inc. v. Piper*, 447

U.S. 752, 767 (1980)) ("[I]t is settled that a finding of bad faith is required for sanctions under

the court's inherent powers.").

### D. Motions to Appoint Counsel

Pinson has also moved twice for the Court to appoint him counsel.  The Court already

considered and denied appointing counsel in this case, *see* Mem. Op. Denying Pl.'s Mot. for

Preliminary Inj. & Mot. to Appoint Counsel, ECF No. 25,  Pinson argues now that she "lacks

access to a law library and papers accumulated in this case," Pl.'s Mot. to Appoint Counsel at 1,

ECF No. 66.  More recently, she states that "she was violently attacked in prison" and "her

prescription eyeglasses were broken [and] she cannot read."  Pl.'s Renewed Mot. to Appoint

Counsel at 1, ECF No. 77.

---

[9] One of Pinson's motions for preliminary injunction included a reference to a "motion for sanctions" in the title, but the body of motion did not raise any arguments relating to sanctions. *See* Fourth Preliminary Inj. Mot., ECF No. 56.  The Court therefore discusses sanctions only with respect to the free-standing sanction motion, ECF No. 73.

### 1. Legal standard

While a civil litigant is not guaranteed counsel, *see Gaviria v. Reynolds*, 476 F.3d 940, 943 (D.C. Cir. 2007), federal courts are authorized by statute to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *accord Willis v. FBI*, 74 F.3d 531, 532 (D.C. Cir. 2001). "The district court judge controls the 'discretionary' decision of whether to appoint counsel, and that decision 'will be set aside only for abuse.'" *Pinson v. DOJ*, 273 F. Supp. 3d at 4 (quoting *Willis*, 74 F.3d at 532). Local Civil Rule 83.11 applies in determining whether appointment of counsel is appropriate in FOIA cases. *Willis*, 74 F.3d at 533. The Court must balance several factors:

> (i) the nature and complexity of the action; (ii) the potential merit of the pro se party's claims; (iii) the demonstrated inability of the pro se party to retain counsel by other means; and (iv) the degree to which the interests of justice will be served by appointment of counsel, including the benefit the Court may derive from the assistance of the appointed counsel.

D.D.C. Civ. R. 83.11 (b)(3). Any one factor may be controlling. *Willis*, 74 F.3d at 532 ("Given the magistrate[] [judge's] conclusion that [the plaintiff] was capable of handling his relatively straightforward FOIA case unaided, the magistrate did not need to go any further.").

### 2. Analysis

None of the four factors in Local Civil Rule 83.11 persuade the Court that appointment of counsel is appropriate.

As to the first factor, this matter is reasonably complex. But mere fact that "many requests" are involved does not "increase the complexity [of her case] by very much." *Pinson*, 273 F. Supp. 3d at 5. And Pinson has proven very able in pursuing the case and advancing her arguments.

As to the second, the merits of Pinson's claims remains unclear. This litigation is still, in a sense, in an early stage, with Defendants continuing to rely on preliminary arguments relating to exhaustion. Of the claims that have proceeded to the merits, most of the FOIA claims have been resolved against Pinson. Some other claims have been dismissed for lack of specificity. Thus, this factor weighs weakly against the appointment of counsel.

As to the third, Pinson has also not demonstrated to the Court through any filings that she is unable to obtain counsel on her own. None of Pinson's communications with the Court have indicated her efforts or inability to obtain counsel. Thus, "[t]aking the unusual step of appointing civil counsel would be particularly inappropriate in light of [Pinson's] failure to show that [s]he has previously sought counsel . . . ." *Saunders*, 2016 WL 4921418 at *15.

Finally, as to the interests of justice: Pinson has a history of litigation in federal court, repeatedly engaging in litigation against the DOJ *pro se*—demonstrating her ability to engage in litigation without the assistance of counsel. The degree to which the interests of justice will be served by the assistance of appointed counsel thus does not seem to outweigh the burden placed on, and limited resources of, the Civil Pro Bono Panel.

Ultimately, Pinson's argument appears to be an alternative formulation of her complaints about access to materials and papers. And indeed, Pinson's more recent allegation that she has broken her glasses and cannot read strikes the Court as serious. But it alone does not justify the appointment of counsel. The Court trusts that BOP will make adequate provisions for her eyewear and orders Defendants to inform the Court of the status of Pinson's eyewear within 30 days.

## V.  CONCLUSION

For the foregoing reasons, the DOJ's partial motions to dismiss and for summary judgment are **GRANTED** in part and **DENIED** in part.  Plaintiff's motions for sanctions, preliminary injunctions, hearing, sanctions, and appointment of counsel are **DENIED**. Defendants are further ordered to file a status report (1) indicating their position on the release of individual defendants' addresses and (2) indicating whether Pinson has appropriate eyewear.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 30, 2020                                    RUDOLPH CONTRERAS
                                                          United States District Judge