**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JEREMY PINSON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 18-0486 (RC) |
| | : | |
| v. | : | Re Document No: 84 |
| | : | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**I.      INTRODUCTION**

*Pro se* Plaintiff Jeremy Pinson ("Pinson"), is currently an inmate at U.S. Penitentiary ("USP") Tucson, a federal prison located in Arizona. Pinson began this suit in 2016 by filing a Freedom of Information Act ("FOIA") complaint against several subagencies of the U.S. Department of Justice ("DOJ"), including the Federal Bureau of Prisons ("BOP").[1] In this action, Pinson claims that Defendants have failed to respond to FOIA requests. *See* Pl.'s First Am. Compl., ECF No. 16. Presently before the Court, Pinson has filed a renewed motion for a preliminary injunction. Pinson has previously filed numerous motions for preliminary injunctions. The Court has already denied six prior motions for preliminary injunction that raise similar issues. *See Pinson v. U.S. Dep't of Justice*, No. 18-486, 2018 WL 5464706, at *1 (D.D.C. Oct. 29, 2018); *Pinson v. U.S. Dep't of Justice*, No. 18-486, slip op. at 51 (D.D.C. Mar.

---

[1] The agencies Plaintiff submitted FOIA requests to were: Executive Office for U.S. Attorneys, Office of Information Policy, Federal Bureau of Investigation, Federal Bureau of Prisons, United States Marshals Service, Office of the Inspector General, and the Central Intelligence Agency. *See* Pl.'s Compl., ECF No. 1, at 2; Pl.'s First Am. Compl., ECF No. 16, at 12.

30, 2020). The Court denies the motion for preliminary injunction because Pinson has not shown that she[2] will be irreparably harmed in the absence of a preliminary injunction or is likely to succeed on the merits.

## II. FACTUAL BACKGROUND

The Court has already explained the factual background in this case in detail in its prior Memorandum Opinions. *See Pinson*, 2018 WL 5464706, at *1–2; *Pinson v. U.S. Dep't of Justice*, 396 F. Supp. 3d 66, 72–76 (D.D.C. 2019); *Pinson*, No. 18-486, slip op. at 2–29 (D.D.C. Mar. 30, 2020). The Court assumes familiarity with its prior opinions and confines discussion to the facts most relevant to the present motion.

On June 15, 2020, Pinson filed a renewed motion for preliminary injunction requesting that the Court 1) issue an order for the Federal Bureau of Prisons ("BOP") to release Pinson from USP's Special Housing Unit ("SHU"); 2) enjoin the BOP from transferring Pinson to another federal prison facility; and 3) compel the BOP to refer various allegations to the Office of the Inspector General ("OIG"). Pl.'s Mot. for Prelim. Inj. ("Mot.") 2, ECF No. 84. Pinson alleges that Defendant BOP has retaliated against her for filing FOIA complaints by 1) failing to remove her from segregated confinement, and 2) initiating a transfer to another facility. Mot. 1. In a declaration attached to the motion, Pinson represented that the BOP had submitted materially false statements and assertions in the "Request to Transfer" document. Jeremy Pinson Decl. ¶ 2. In particular, Pinson alleges that the BOP falsely claimed that Pinson threatened staff with bodily harm, that Pinson was involved in aggressive behavior, that "white non-sex offenders" posed a

---

[2] Pinson identifies using feminine pronouns, and the government and this Court follow suit. *See Pinson v. U.S. Dep't of Justice*, 246 F. Supp. 3d 211, 214 n.1 (D.D.C. 2017).

threat to Pinson, and that Pinson filed a "PREA Allegation"[3] against an inmate.  *Id.* ¶ 3–6.  Pinson also alleges that multiple inmates have received bribes from BOP staff in the form of stamps, a prison inmate currency, to make false statements in an effort to help the BOP transfer Pinson.  *Id.* ¶ 5.

Defendants oppose the renewed motion for preliminary injunction.  *See* Defs.' Opp. to Pl.'s Mot. for Prelim. Inj. ("Defs.' Opp."), ECF No. 87.  Defendants argue that Pinson "cannot demonstrate a likelihood of success on any claim that BOP placed Plaintiff in the SHU for retaliatory reasons," that "Plaintiff does not identify any reason why the Court cannot continue to adjudicate Plaintiff's claims after Plaintiff is transferred to a different BOP facility," and that the request to compel the BOP to refer various allegations to the OIG is "unrelated to the claims in Plaintiff's Complaint."  Defs.' Opp. 2–3.

### III.  LEGAL STANDARD

"[A] preliminary injunction is an injunction to protect [the] plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits."  *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 954 (D.C. Cir. 2005) (Henderson, J., dissenting) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2947 (2d ed. 1992)).  "[T]he decision to grant injunctive relief is a discretionary exercise of the district court's equitable powers."  *John Doe Co. v. Consumer Fin. Prot. Bureau*, 235 F. Supp. 3d 194, 201 (D.D.C. 2017) (alteration in original) (quoting *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1209 (D.C. Cir. 1989)).  A preliminary injunction is

---

[3] A "PREA allegation" refers to a complaint filed through the Prisoner Rape Elimination Act of 2003 ("PREA") Grievance Process.  PREA was passed by Congress to address the problem of sexual abuse of prisoners.  The PREA grievance process is a two-step process for addressing sexual abuse grievances.

an "extraordinary remedy," and one is "never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

To warrant preliminary injunctive relief, the moving party "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 20; *see also Howard v. Evans,* 193 F. Supp. 2d 221, 226–27 (D.D.C. 2002). Of these factors, likelihood of success on the merits and irreparable harm are particularly crucial. *See Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (reading *Winter* "to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction'" (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring))); *see also Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("[A] movant must demonstrate at least some injury for a preliminary injunction to issue, for the basis of injunctive relief in the federal courts has always been irreparable harm." (citations and internal quotation marks omitted)). Without a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)).

## IV.   ANALYSIS

In reviewing Pinson's preliminary injunction motion, the Court evaluates whether Pinson has demonstrated that she is likely to succeed on the merits and that she will suffer an irreparable harm absent issuance of a preliminary injunction. Pinson fails to demonstrate that she is likely to succeed on the merits or that she will suffer irreparable harm absent a preliminary injunction.

Because these requirements are mandatory, the Court need not consider the remaining factors. *See Howard*, 193 F. Supp. 2d at 228 ("[T]he court need not determine the viability of the plaintiff's arguments respecting the remaining . . . prongs of the preliminary injunction standard in light of the rule that a preliminary injunction may only issue when the movant demonstrates a showing that supports *all* four of the preliminary injunction factors."). The Court therefore denies the request for preliminary injunction.

      1.   <u>Failing to Remove Pinson from the SHU</u>

Pinson first requests that this Court enjoin Defendants from keeping her housed in the "segregated confinement" of the SHU. Pinson argues that the BOP is retaliating against her for filing the present lawsuit by keeping her in the SHU. *See* Mot. 1. Specifically, Pinson contends that she will suffer irreparable harm from the BOP's continued violation of her First Amendment rights and BOP employees' "unlawful behavior" if she remains in the SHU. Mot. 1–2. Pinson also states without further elaboration that she "is likely to succeed on the merits of her retaliation claims." Mot. 1. Defendants argue that removing Pinson from the SHU would not satisfy the "limited purpose" of a preliminary injunction—to "preserve[] the trial court's power to adjudicate the underlying dispute by maintaining the status quo ante." *See* Defs.' Opp. 2 (quoting *Select Milk Producers*, 400 F.3d at 954 (Henderson, J., dissenting)). Moreover, Defendants argue that since Pinson was placed into the SHU after being assaulted several times by other prisoners, Pinson cannot demonstrate a likelihood of success with respect to the claim that the BOP placed Pinson in the SHU for retaliatory reasons. Defs.' Opp. 2.

It is particularly important for a movant to show a substantial likelihood of success on the merits of their claim at the preliminary injunction stage. *Howard*, 193 F. Supp. 2d at 226. To succeed on the merits of a constitutional claim, Pinson must show more than "bare allegations of

5

malice." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). Pinson bears the burden of establishing "by a clear showing" that she enjoyed a constitutionally protected interest and was denied a constitutional right. *Tanner v. Fed. Bureau of Prisons*, 433 F. Supp. 2d 117, 122 (D.D.C. 2006) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). But Pinson's claims of retaliation and reference to "1st Amendment rights," Mot. 1, are no more than "bare allegations of malice," *Crawford-El*, 523 U.S. at 588. She does not make the clear showing required to demonstrate probability of success on the merits.

In order to establish that she will suffer irreparable harm absent an injunction, Pinson must point to an injury that is "both certain and great, . . . actual and not theoretical[,]" and so imminent "that there is a clear and present need for equitable relief." *John Doe Co.*, 235 F. Supp. 3d at 202–03 (internal quotation marks omitted) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297). The moving party must also show that the imminent injury is "beyond remediation" with other forms of relief. *Id.* at 203 (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297). Pinson has not shown why failing to remove her from the SHU will cause her any imminent injury. In fact, BOP employees likely put Pinson in the SHU to avoid her suffering any further physical assaults by other inmates, as Defendants contend. *See* Defs.' Opp. 2; Segal Decl. ¶ 3. Pinson does not point to any actual injury likely to cause the irreparable harm needed to obtain a preliminary injunction against the BOP keeping Pinson in the SHU. *See Winter*, 555 U.S. at 24. Because she has not shown an irreparable harm that would result from keeping her in the SHU and because she is not likely to succeed on the merits, Pinson's motion to enjoin Defendants from keeping her in the SHU is denied.

6

### 2. Initiating a Transfer to Another Facility

Pinson next requests that this Court enjoin Defendants from initiating a "retaliatory transfer" to another BOP facility. Mot. 1. In the declaration attached to her motion for a preliminary injunction, Pinson argues that the BOP submitted materially false statements and assertions in the "Request to Transfer" document. Jeremy Pinson Decl. ¶ 2. Pinson alleges that the BOP falsely claimed that she threatened staff with bodily harm, that she was involved in aggressive behavior, that "white non-sex offenders" posed a threat to her, and that she filed a "PREA Allegation" against an inmate. *Id.* ¶ 3–6. Moreover, Pinson claims that multiple inmates received bribes from BOP staff in the form of stamps, a prison inmate currency, to make false statements in an effort to help the BOP transfer Pinson. *Id.* ¶ 5.

Defendants again argue that Pinson's request for an injunction will not "maintain[] the status quo ante" with respect to the present action. Defs.' Opp. 2 (quoting *Select Milk Producers*, 400 F.3d at 954 (Henderson, J., dissenting)). They contend that Pinson provides no reason why the Court would have trouble adjudicating Pinson's claims after she is transferred to a different BOP facility. Defs.' Opp. 2. In fact, Defendants argue that the BOP is seeking to transfer Pinson to a facility with programs more appropriate for her. Defs.' Opp. 2; *see* Segal Decl. ¶ 4.

Courts give an "unusually high level of deference" with respect to penological decisions to transfer inmates. *Pinson v. U.S. Dep't of Justice*, 273 F. Supp. 3d 1, 12 (D.D.C. 2017); *see also Lewis v. Casey*, 518 U.S. 343, 361 (1996) ("[A] prison regulation impinging on inmates' constitutional rights 'is valid if it is reasonably related to legitimate penological interests.'" (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987))); *Tanner*, 433 F. Supp. 2d at 124 ("Moreover, the defendant has authority to, at any time, 'direct the transfer of a prisoner from one penal or

correctional facility to another,' and courts give deference to prison officials' exercise of this authority.  The court is mindful that the defendant is entitled to deference when it acts within its prison management authority." (quoting 18 U.S.C. § 3621(b), and then citing *Women Prisoners of the D.C. Dep't. of Corr. v. District of Columbia*, 93 F.3d 910, 931–32 (D.C. Cir. 1996))).  In fact, prisoners have no right to be housed at a particular institution.  *Tanner*, 433 F. Supp. 2d at 122 (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)).

The deference given to prisoner transfer decisions by prison officials leads the Court to conclude that Pinson is not likely to succeed on the merits.  Additionally, Pinson has not made a clear showing that a transfer would cause her irreparable harm.  *See Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) ("Proving 'irreparable' injury is a considerable burden, requiring proof that the movant's injury is '*certain, great and actual*—not theoretical—and *imminent*, creating a clear and present need for extraordinary equitable relief to prevent harm.'" (citations omitted)).  The Court denies Pinson's request for a preliminary injunction against the BOP initiating her transfer to another facility.

Thus, because she has not pointed to an irreparable harm that would result from failing to grant the injunctions requested and because she is not likely to succeed on the merits, Pinson's motion for preliminary injunctive relief is denied.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for preliminary injunction (ECF No. 84) is **DENIED.**  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

DATED: September 17, 2020                                                                     RUDOLPH CONTRERAS
                                                                                                                        United States District Judge