## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JEREMY PINSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-486 (RC) |
| | : | | |
| v. | : | Re Document No.: | 103, 112, 119, 124 |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, *et al*, | : | | |
| | : | | |
| Defendants. | : | | |

### <u>MEMORANDUM OPINION</u>

**DENYING PLAINTIFF'S RENEWED MOTION TO APPOINT COUNSEL, PLAINTIFF'S MOTION TO APPOINT COUNSEL, PLAINTIFF'S MOTION FOR DISCOVERY OR TO APPOINT COUNSEL, AND PLAINTIFF'S MOTION FOR AN ORDER LIMITING EXTENSIONS OF TIME AND FOR RECONSIDERATION REGARDING APPOINTMENT OF COUNSEL**

### I. INTRODUCTION

*Pro se* plaintiff Jeremy ("Grace") Pinson[1] is an inmate at U.S. Penitentiary ("USP")

Coleman II in Florida.  While in federal custody, Pinson filed multiple Freedom of Information

Act ("FOIA") requests, seeking records from several component agencies of the U.S.

Department of Justice ("DOJ") and the Central Intelligence Agency.  She filed suit after

allegedly receiving inadequate responses to these requests, asserting violations of the FOIA, 5

U.S.C. § 552, and the Privacy Act, *id.* § 552a.  Throughout the course of litigation, Pinson has

also raised First and Eighth Amendment claims against various former and current government

employees.  This Court has already addressed several of these claims.  *See Pinson v. Dep't of

Justice*, No. 18-cv-0486, 2020 WL 1509517 (D.D.C. Mar. 30, 2020).  Before it today are several

of Pinson's motions: four motions regarding appointment of counsel, a motion for limited

---

[1] Pinson self-identifies using feminine pronouns, so the Court follows suit.

discovery, and a motion for an order limiting extensions for filing deadlines.  For the reasons set forth below, the Court denies all motions.

## II.  BACKGROUND

The Court has already explained the factual background of this case in detail in its prior opinions.  *See, e.g.*, *Pinson v. DOJ*, No. 18-cv-486, 2018 WL 5464706, at *1–2 (D.D.C. Oct. 29, 2018); *Pinson*, 2020 WL 1509517, at *2–13.  It assumes familiarity with its prior opinions and confines discussion to the facts most relevant to resolving the present motions.

Currently, Pinson has several pending motions on the Court's docket.  In the first of these motions, Pinson renews her request that the Court appoint her counsel—a request the Court has repeatedly denied.  *See* Pl.'s Renewed Mot. to Appoint Counsel, ECF No. 103; *see also Pinson*, 2018 WL 5464706, at *8–9; *Pinson v. U.S. DOJ*, No. 18-cv-486, 2019 WL 1284595, at *4 (D.D.C. Mar. 20, 2019); Min. Order (May 28, 2019); *Pinson*, 2020 WL 1509517, at *26–27. [2] She asserts that, as a result of a COVID-19-related prison lockdown, she has no access to the prison's law library resources, which she needs to litigate this case and seek counsel on her own. *See* Pl.'s Renewed Mot. to Appoint Counsel at 1–2.  Since then, Pinson has been transferred from USP Tucson to USP Coleman II in Florida.  *See* Pl.'s Notice of Change of Address, ECF No. 111.  Shortly after her arrival at USP Coleman II, Pinson filed another motion to appoint counsel.  *See* Pl's Mot. to Appoint Counsel, ECF No. 112.  She now argues that she has limited access to the prison law library but has been unable to receive approval for additional time to use the library's resources.  *Id.* at 2.  Pinson also claims that "life-threatening" living conditions substantially limit her ability to use telecommunications devices to obtain an attorney.  *Id.* at 1.

---

[2] Pinson has previously sought appointment of counsel six times.  *See* ECF Nos. 13, 39, 53, 66, 67, 77.

The next matter to be decided by the Court involves Pinson's motion for an order permitting limited discovery under Rule 56(d) of the Federal Rules of Civil Procedure or, in the alternative, to appoint counsel. *See* Pl.'s Mot. for Limited Discovery or to Appoint Counsel, ECF No. 119. In this motion, Pinson does not offer additional support to justify appointment of counsel. As to her discovery request, Pinson seeks information to respond to assertions made by the Defendants in support of their pending motion to dismiss. Specifically, Pinson seeks discovery on: (1) the "issue of availability of administrative remedies" accessible to inmates to show that such remedies were unavailable to her; (2) evidence of Defendant Anderl's contacts with individuals in Washington, D.C., to defend against Defendants' personal jurisdiction challenge; and (3) the release of evidence received through discovery in a separate case. *Id.* at 9.

Lastly, Pinson requests an order imposing limits on Defendants' ability to obtain extensions of time to answer Pinson's filings. *See* Pl.'s Mot. for Order Limiting Extension of Time Mots., ECF No. 124. She asks the Court to prohibit Defendants from requesting additional time to respond to Pinson's amended complaint except in "extraordinary circumstances." *Id.* at 5. In this same motion, Pinson also seeks reconsideration on the previous denials of appointment of counsel. *Id.* at 1. In doing so, Pinson does not present any arguments in favor of reconsideration. The Court will now address Pinson's motions concerning appointment of counsel together before discussing her remaining requests.

## III.  ANALYSIS

### A.  Motions for Appointment of Counsel

While FOIA does not contain a provision authorizing appointment of counsel, federal courts are permitted by statute "to request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1); *see also Willis v. FBI*, 274 F.3d 531, 532 (D.C. Cir. 2001).

However, a civil litigant is not guaranteed counsel. *Gaviria v. Reynolds*, 476 F.3d 940, 943 (D.C. Cir. 2007). "Instead, the district court judge controls the 'discretionary' decision of whether to appoint counsel, and that decision 'will be set aside only for abuse.'" *Pinson v. DOJ*, 273 F. Supp. 3d 1, 4 (D.D.C. 2017) (quoting *Willis*, 274 F.3d at 532). Local Civil Rule 83.11 outlines four factors courts should balance when deciding motions for appointment of counsel: (i) the nature and complexity of the action; (ii) the potential merit of the *pro se* party's claims; (iii) the demonstrated inability of the *pro se* party to retain counsel by other means; and (iv) the degree to which the interests of justice will be served by appointment of counsel, including the benefit the court may derive from the assistance of the appointed counsel. D.D.C. Civ. R. 83.11(b)(3); *see also Williams v. Court Servs. & Offender Supervision Agency for D.C.*, 878 F. Supp. 2d 263, 266–68 (D.D.C. 2012) (applying factors). Any one factor may be controlling. *See Willis*, 274 F.3d at 532; *Pinson*, 273 F. Supp. 3d at 5.

As previously noted, this Court has already considered and denied Pinson's requests for assigned counsel. The Court remains unpersuaded that any of the four factors delineated in the local rule justify appointment of counsel in this case.

As to the first factor, while this Court has recognized that this action is "reasonably complex," Pinson has proven substantially capable in prosecuting this action. *See Pinson*, 2020 WL 1509517, at *26.

Per the second factor, the potential merit of Pinson's claims cannot yet be determined. Due to a myriad of external circumstances, including the burdens of the COVID-19 pandemic, this action still remains in the preliminary phases of litigation. Indeed, in a separate motion not to be decided in this opinion, Pinson seeks to amend her complaint for a second time. *See* Pl.'s

4

Mot. for Leave to File a Second Am. Compl., ECF No. 118.[3]   Therefore, this factor does not weigh towards Pinson's request at this time.

As to the third factor, Pinson has not demonstrated that she is unable to obtain counsel on her own.   In one of her motions, Pinson states that her "life threatening" living conditions have impeded her efforts to obtain legal representation.   *See* Pl.'s Mot. to Appoint Counsel at 1. However, none of Pinson's communications with the Court have indicated concrete efforts to obtain counsel, nor has she presented evidence of those efforts being unsuccessful.

Finally, the Court believes that appointing Pinson counsel from the Civil Pro Bono Panel would not serve the interests of justice.   Pinson has a long history of navigating the federal judicial system and engaging in litigation against the government.   She argues in one motion that she lacks access to resources, such as the prison law library, to pursue her suit.   *See id.* at 1–2. But since making that assertion five months ago, Pinson has successfully filed three motions and one response.   Her actions indicate that Pinson does in fact have access to legal resources and further demonstrates her keen ability to handle legal proceedings without the assistance of counsel.   As a result, the Court finds that providing Pinson use of the Civil Pro Bono Panel's limited resources would not significantly supplement Pinson's ability to litigate her case.

Bearing these considerations in mind, the Court finds that Pinson has not presented sufficient (or any new) justification to warrant appointment of counsel.   All her motions for the appointment of counsel are denied.

---

[3] The Court currently awaits Pinson's reply to Defendants' response.   *See* Defs.' Opp'n to Pl.'s Mot. for Leave to Amend Compl., ECF No. 126.

### B.  Limited Discovery Pursuant to Rule 56(d)

Pinson seeks limited discovery pursuant to Federal Rule of Civil Procedure 56(d).  *See*

Pl.'s Mot. for Limited Discovery or to Appoint Counsel.  The purpose of a Rule 56(d) motion is

to allow a movant to avoid summary judgment if she can show, by affidavit or declaration, that

she "cannot present facts essential to justify" her opposition to summary judgment.  *See* Fed. R.

Civ. P. 56(d); *see also Seed Co. v. Westerman*, 840 F. Supp. 2d 116, 121 (D.D.C. 2012).  To

obtain Rule 56(d) relief, the movant must submit an affidavit that "state[s] with sufficient

particularity" the reason why discovery is necessary.  *Ikossi v. Dep't. of Navy*, 516 F.3d 1037,

1045 (D.C. Cir. 2008) (internal citation marks omitted) (quoting *Strang v. U.S. Arms Control &

Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989)).

Pinson intends to use the information requested to respond to Defendants' attempts to

dismiss her complaint.  *See* Pl.'s Mot. for Limited Discovery or to Appoint Counsel at 1.

Specifically, Pinson seeks to discover information related to: (1) the "issue of availability of

administrative remedies" accessible to inmates to show that such remedies were unavailable to

her; (2) Defendant Anderl's contacts with individuals in Washington, D.C., to defend against

Defendants' personal jurisdiction challenge; and (3) evidence "relevant to (1) and (2)" that was

provided in the discovery phase of a separate case.  *See id.*  at 9.  But she misunderstands the

purpose of a Rule 56(d) motion, which is to let a party stave off summary judgment before it has

had the opportunity to make full discovery.  *See Seed Co.*, 840 F. Supp. 2d at 121.  Currently,

there is no pending motion for summary judgment, nor have the parties reached that stage of

litigation.[4]  Defendants' motion to dismiss remains undecided, and discovery typically begins

---

[4] Defendants attach records of Pinson's administrative grievances to their motion to dismiss.  *See* Individual Defs.' Mot. to Dismiss, Locke Decl., ECF No. 116-2.  But "[w]hile a court may not consider 'matters outside the pleadings' in evaluating a motion to dismiss under

only upon the resolution of any motions to dismiss. *See Bank of Am., N.A. v. FDIC*, 908 F. Supp. 2d 60, 83–84 (D.D.C. 2012) ("[A] motion to dismiss is brought during the initial stages of a case, before discovery has commenced . . . ."). Because Defendants have not moved for summary judgment, it would be premature to permit Pinson discovery under Rule 56(d).

While discovery preceding a motion to dismiss is generally inappropriate, courts have granted motions for expedited or jurisdictional discovery in limited circumstances. Given that Pinson seeks the requested information in order to respond to Defendants' motion to dismiss, the Court will construe Pinson's requests as a motion for expedited discovery. *See Castro v. United States*, 540 U.S. 375, 381–82 (2003) (discussing federal judicial practice of recharacterizing the legal label that a *pro se* litigant attaches to a motion for the litigant's benefit). Each request will be addressed individually in light of differing legal standards.

1. Pinson's Request for Discovery Regarding Administrative Remedies

In her first request, Pinson seeks to discover information "on the issue of the availability of administrative remedies as to evidence showing that retaliation, misconduct, or intimidation rendered the remedy unavailable." *See* Pl.'s Mot. for Limited Discovery or to Appoint Counsel at 9. She argues that this information is necessary to defend against Defendants' assertion that Pinson's claims should be dismissed because she has not exhausted administrative remedies through the prison as required by statute. *See id.* at 5.

---

Rule 12(b)(6) without converting the motion to one for summary judgment under Rule 56, documents that are referenced in, or are an integral part of, the complaint are deemed not 'outside the pleadings.'" *Nat'l Sec. Couns. v. CIA*, 931 F. Supp. 2d 77, 102 n.14 (D.D.C. 2013) (citation omitted); *see also, e.g.*, Pl.'s First Am. Compl. at 2, ECF No. 16 (alleging that Individual Defendants "refused to investigate plaintiff's complaints" about "illegal acts by" Bureau of Prisons staff); Pl.'s Proposed Second Am. Compl. at 9–10, ECF No. 118-1 (listing grievances Pinson filed).

Courts enjoy broad authority to permit early discovery if the request is reasonable. *See Addala v. Renaud*, No. 20-cv-2460, 2021 WL 244951, at *3 (D.D.C. Jan. 25, 2021) (citing *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014)).[5]  To determine whether a request is reasonable, courts consider five factors: (1) whether a motion for preliminary injunction is pending, (2) the discovery request's breadth, (3) the purpose for requesting expedited discovery, (4) the burden on the defendant to comply with the requested discovery, and (5) how far in advance of the typical discovery process the request is made. *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015).  Courts are not limited to these factors but instead are empowered to employ them as "guidelines for the exercise of the Court's discretion." *Id.* (quoting *Guttenberg*, 26 F. Supp. 3d at 98).

In this case, the Court does not find Pinson's request reasonable.  There is no motion for a preliminary injunction pending on the docket.  And it is unclear to the Court what the purpose of Pinson's request is.  Pinson indicates that she seeks to counter Defendants' argument that her claims should be dismissed because she has not pursued any administrative remedies with the Bureau of Prisons before pursuing a lawsuit. *See* Pl.'s Mot. for Limited Discovery or to Appoint Counsel at 5–6.  But in support of her request and to refute Defendants' claim, Pinson has attached copies of complaints she has filed through administrative avenues.  The Court is therefore unable to discern what additional information Pinson seeks.  She does not specify, broadly requesting discovery "on th[e] issue of 'availability' of administrative remedies. *See id.*

---

[5] Although some courts have used the stricter *Notaro* test instead of the reasonableness test, this Court "agrees with those courts that have rejected the *Notaro* standard in favor of the reasonableness approach" because the latter approach is "more suited to the application of the Court's broad discretion in handling discovery." *Guttenberg*, 26 F. Supp. 3d at 98.  Seeing as Pinson fails the "more liberal" reasonableness approach, the choice of standard does not make a difference here. *See id.*

at 9.  Given the ambiguity of the request, it is reasonable for the Court to infer that compliance

with such request will likely be burdensome on Defendants.  *See Landwehr v. FDIC*, 282 F.R.D.

1, 4 (D.D.C. 2010) (denying motion for expedited discovery where plaintiffs' requests were

broad and vague).  *Id.*  Most concerning is the existence of Defendants' outstanding motion to

dismiss.  Pinson's request for expedited discovery comes "well in advance of typical discovery."

*See Guttenberg*, 26 F. Supp. 3d at 99 (citation omitted) (finding motion for expedited discovery

filed after motion to dismiss to be premature); *Landwehr*, 282 F.R.D. at 4 (same).  Ultimately, if

Pinson's argument is that administrative remedies were unavailable to her, it is unclear to the

Court why she cannot provide evidence of that claim herself, rather than having to seek that

information through early discovery. Thus, the applicable factors do not support granting

Pinson's request for discovery at this time.

### 2.  Pinson's Request for Discovery Regarding Personal Jurisdiction

Pinson's second request seeks information to counter Defendants' argument that her

claims against Defendant Anderl (née Lundy) should be dismissed for lack of personal

jurisdiction.  Specifically, she asks for discovery on Anderl's contacts with individuals in

Washington, D.C..

The standard for jurisdictional discovery is liberal.  *See Call of the Wild Movie, LLC v.*

*Does 1-1,062*, 770 F. Supp. 2d 332, 346 (D.D.C. 2011).  Courts can authorize jurisdictional

discovery when a plaintiff demonstrates "a good faith belief that such discovery will enable it to

show that the court has personal jurisdiction over the defendant."  *Caribbean Broad. Sys., Ltd. v.*

*Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998).  Under this standard, a plaintiff is

required to make a "detailed showing" of: (1) what discovery she wishes to conduct; or (2) what

results she thinks discovery would produce.  *NBC-USA Hous., Inc., Twenty-Six v. Donovan*, 741

F. Supp. 2d 55, 60 (D.D.C. 2010).  "Where there is no showing of how jurisdictional discovery would help plaintiff discover anything new, it is inappropriate to subject defendants to the burden and expense of discovery."  *Id.* (cleaned up) (quoting *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003)).

       Here, Pinson seeks discovery to show that Anderl has traveled to Washington, D.C. as part of her work in another of Pinson's cases and thus is subject to the Court's jurisdiction.  *See* Pl.'s Mot. for Limited Discovery or to Appoint Counsel at 8–9.  But significantly, Pinson has not explained why the current record is insufficient for the Court to evaluate personal jurisdiction. Pinson submitted a declaration stating that she has "seen portions of documents and depositions showing that . . . Anderl travelled, and communicated with AUSA[s] in Washington, D.C. as part of [the Bureau of Prison's] discovery and efforts to dismiss" her other case.  Pinson Decl. ¶ 7, ECF No. 119-1.  When determining whether a plaintiff has met her burden to show personal jurisdiction, a court may look beyond the pleadings to weigh "affidavits and other relevant matter."  *See Robinson v. Ashcroft*, 357 F. Supp. 2d 146, 148 (D.D.C. 2004).  And although "[c]onclusory statements" cannot sustain jurisdiction, a court "must resolve factual disputes in favor of the plaintiff."  *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (citations omitted).  So without prejudging the jurisdiction question, the Court is unpersuaded that discovery on Anderl's contacts would supply new and useful information for deciding Defendants' motion to dismiss.  *See generally Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 48–49 (D.D.C. 2010) (denying jurisdictional discovery when plaintiff failed to show that declarations were "insufficient to conduct the personal jurisdiction analysis" or how the requested information "would in any way impact the Court's analysis of the jurisdictional issues").  Moreover, Pinson has not yet opposed Defendants' motion to dismiss.  Perhaps after

she files her opposition and presents the evidence she possesses supporting her claim concerning

this Court's personal jurisdiction over Defendant Anderl, the Court may reconsider whether

jurisdictional discovery is appropriate.  At this time, however, it is premature.

      3.  Pinson's Request for Discovery from Willkie, Farr & Gallagher

Pinson's last request seeks the release of "any evidence" related to the first two requests

that the law firm Willkie, Farr & Gallagher received in discovery in her other case.  For the same

reasons the Court denied those requests, it declines to permit discovery on this one.

### C.  Request to Limit Extensions of Time

Under Rule 6 of the Federal Rules of Civil Procedure, a court has discretion to extend

filing deadlines that it or the Federal Rules set out.  *See Sherrod v. Breitbart*, 720 F.3d 932, 938

(D.C. Cir. 2013) ("Rule 6(b) gives district courts wide discretion to modify the time limits set

forth in the rules."); *see also Smith v. District of Columbia*, 430 F.3d 450, 456 (D.C. Cir. 2005)

(stating that the D.C. Circuit reviews "the district court's decisions under Rule 6(b) for abuse of

discretion" and has been "quite deferential" in so doing).  If a party makes a request for

additional time "before the original time or its extension expires," then the court may extend the

deadline "for good cause."  *See* Fed. R. Civ. P. 6(b)(1)(A).  When a party misses a deadline and

seeks an extension afterward, the court may extend the deadline if there is "good cause" and the

party shows that his or her tardiness is due to "excusable neglect."  *See* Fed. R. Civ. P.

6(b)(1)(B). Pinson requests an order prohibiting Defendants from seeking future extensions of

time absent "extraordinary circumstances."  *See* Pl.'s Mot. for Order Limiting Extension of Time

Mots.  As far as the Court is aware, there is no precedent granting such a request.  In the present

case, this Court has ensured that "good cause" to extend deadlines has existed at all relevant

times.  To illustrate, although not required, the Court will briefly discuss its rationale behind affording both parties substantial time to respond to filings.

On April 4, 2018, Defendants filed the first motion for extension of time in the case.  *See* Defs.' Mot. for Extension of Time, ECF No. 7.  Defendants informed the Court of their administrative challenge in coordinating a response amongst the seven government agencies Pinson identifies in her original complaint.  *See id.* at 1.  In consideration of this showing, the Court granted Defendants' motion, extending the filing deadline time until May 11, 2018.  *See* Min. Order (Apr. 4, 2018).  On that date, Defendants filed a pre-answer motion to dismiss.  *See* Defs.' Mot. to Dismiss, ECF No. 9.  Under Federal Rule of Civil Procedure 12(b), a defendant may file a pre-answer motion, in lieu of an answer, which temporarily relieves a defendant from the obligation to respond to a complaint.  *See Jurdi v. United States*, 485 F. Supp. 3d 83, 99 (D.D.C. 2020).  In light of Defendants' dispositive motion, the Court advised Pinson to respond by June 20, 2018.  *See Fox*/*Neal* Order, ECF No. 10.  Pinson responded by indicating that she filed an amended complaint that would cure the deficiencies Defendants identified in their motion.  *See* Pl.'s Resp. to Defs.' Mot. to Dismiss, ECF No. 15; *see also* Pl.'s First Am. Compl., ECF No. 16.

Since then, it has taken over two years for Pinson to properly serve the amended complaint on the Individual Defendants and thus trigger their obligation to respond.  *See* Defs.' Status Report, ECF No. 94; *see also Cap. City Pub. Charter Sch. v. Hillman*, No. 17-cv-00412, 2018 WL 696079, at *3 (D.D.C. Jan. 11, 2018) ("The obligation to respond is triggered by proper service of process.").  Throughout this period, the Court granted several filing extensions favoring both parties and taking into consideration the procedural burdens of COVID-19, the institutional nature of the defendants in this case, and Pinson's status as a *pro se* plaintiff and

prison inmate.  *See, e.g.*, Min. Order (May 28, 2019) (granting Pinson an extension after she said that she was temporarily unable to use her prison's law library, *see* Pl.'s Mot. for Extension and Appointed Counsel, Pinson Decl., ECF No. 53-1); Min. Order (Apr. 28, 2020) (granting Defendants an extension after they stated that the COVID-19 pandemic forced several agencies to operate with reduced staff, *see* Defs.' Mot. for Extension of Time, ECF No. 81).

Finally, by November 2020, all Defendants were properly served, and the Court ordered their response to Pinson's amended complaint.  *See* Min. Order (Nov. 30, 2020).  On December 28, 2020, the Court granted Defendants another filing extension so that defense counsel could obtain approval to represent the Individual Defendants.  *See* Min. Order (Dec. 28, 2020); Defs.' Mot. for Extension of Time, ECF No. 105.  Defendants subsequently requested two additional extensions to respond to Pinson's amended complaint.  *See* Defs.' Mot. for Extension of Time, ECF No. 109; Defs.' Mot. for Extension of Time, ECF No. 113.  The Court granted additional time until March 30, 2021.  *See* Minute Order (Mar. 16, 2021).  The Individual Defendants finally filed a renewed motion to dismiss.  *See* Individual Defs.' Mot. to Dismiss, ECF No. 116. Pinson was given until April 29, 2021, to respond to the renewed motion to dismiss.  In response, Pinson filed a motion for leave to file a second amended complaint, which is not yet ready for resolution.  *See* Pl.'s Mot. for Leave to File a Second Am. Compl.

This is where the case currently stands.  Given that the parties remain in the initial phases of the litigation, it would be inappropriate for the Court to restrict itself to only affording parties additional time to file necessary documents in "extraordinary circumstances," as Pinson suggests.  In managing the adversarial process in this case, the Court has generously allotted both parties additional time to file responses to the ongoing motions and pleadings in light of the circumstances.  The Court has not granted additional time without "good cause."  It recognizes

that Pinson faces challenges in litigating this case from a correctional institution; however, it acknowledges that the Bureau of Prisons is facing its own set of challenges.  For these reasons, the Court denies Pinson's request that it grant filing extensions only in "extraordinary circumstances."

## IV.  CONCLUSION

For the foregoing reasons, Pinson's motions for appointment of counsel (ECF Nos. 103, 112, 119, 124) are **DENIED**, Pinson's motion for limited discovery (ECF No. 119) is **DENIED**, and Pinson's motion for an order limiting extensions of time (ECF No. 124) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: August 5, 2021                                          RUDOLPH CONTRERAS
                                                              United States District Judge