## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JEREMY PINSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-486 (RC) |
| | : | | |
| v. | : | Re Document No.: | 158 |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

## I. INTRODUCTION

Plaintiff Jeremy ("Grace") Pinson ("Pinson" or "Plaintiff"), proceeding *pro se*, brought the instant suit to challenge her[1] transfer from Federal Medical Center Rochester in Minnesota to United States Penitentiary, Tucson, as well as other alleged mistreatment at the hands of prison officials during her incarceration. *See* Second Am. Compl. ("SAC"), ECF No. 138. In August 2022, Defendants—the United States, various federal officials, and several federal agencies, including the Federal Bureau of Prisons ("BOP") and Department of Justice ("DOJ")—moved to dismiss Pinson's SAC. *See* Defs.' Mot. to Dismiss, ECF No. 146. On March 30, 2023, the Court granted Defendants' motion to dismiss the SAC; denied Pinson leave to file a supplemental complaint; and denied the remainder of Pinson's motions seeking sanctions, a preliminary injunction, and the appointment of counsel. *See* Mem. Op., ECF No. 157.[2] Pinson

---

[1] Pinson identifies using feminine pronouns, so the Court follows suit. *See Pinson v. U.S. Dep't of Just.*, 246 F. Supp. 3d 211, 214 n.1 (D.D.C. 2017), *on recons.*, 514 F. Supp. 3d 232.

[2] The Court's opinion is also available at *Pinson v. U.S. Dep't of Just.*, No. 18-cv-486, 2023 WL 2708815, at *1 (D.D.C. Mar. 30, 2023).

has now filed a motion pursuant to Federal Rule of Civil Procedure 59(e) seeking reconsideration of the Court's opinion of March 30, 2023.  *See* Pl.'s Mot. for Recons. ("Pl.'s Mot."), ECF No. 158.  For the following reasons, the motion is denied.

## II.  BACKGROUND

The Court assumes familiarity with its earlier opinions in this matter, which recounted the factual background of this case.  *See, e.g.*, *Pinson v. Dep't of Just.*, No. 18-cv-486, 2018 WL 5464706, at *1–2 (D.D.C. Oct. 29, 2018); *Pinson v. Dep't of Just.*, No. 18-cv-486, 2020 WL 1509517, at *2–13 (D.D.C. Mar. 30, 2020).  It thus confines its discussion to the facts and procedural background necessary to resolve Pinson's motion for reconsideration.

Pinson filed her SAC on March 9, 2022.  *See generally* SAC.  Pinson's SAC purported to state claims against Defendants under the Privacy Act, 5 U.S.C. § 552a, the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961, *et seq.*, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 2671, *et seq. See* Mem. Op. at 2.  Unlike Pinson's First Amended Complaint, *see* First Am. Compl., ECF No. 16, the SAC did not include claims alleging that Defendants had violated Pinson's First Amendment rights.  *See* Mem. Op. at 2 (observing that Pinson's SAC "dropped the First Amendment claims included in [her] original Complaint").

On August 29, 2022, Defendants moved to dismiss the SAC.  *See generally* Defs.' Mot. to Dismiss.  Defendants argued (1) that the SAC failed to state a claim for relief under RICO, (2) that, to the extent Pinson sought relief pursuant to the FTCA, she had not exhausted her administrative remedies and thus the Court lacked jurisdiction to consider an FTCA claim, and (3) that, to the extent certain documents contained inaccuracies, those documents were not subject to the Privacy Act and therefore could not form the basis of any alleged violation of that statute.  *See* Mem. Op. at 3.

While Defendants' motion to dismiss was pending, Pinson filed a number of her own motions seeking various forms of relief.  Through those motions, she first sought leave to "file a supplemental complaint to her SAC to re-assert a First Amendment claim in light of alleged additional retaliation by Defendants and to remedy what she describe[d] as a 'clerical error.'" *See id.* at 3–4 (quoting Pl.'s Mot. for Prelim. Inj., Appt. of Counsel, and Leave to File Supp. Compl. at 3, 16, ECF No. 150).  Second, Pinson sought "a preliminary injunction to enjoin Defendants from taking certain disciplinary action against her."  *See id.* at 4.  Third, Pinson sought sanctions against both Defendants and defense counsel.  *See id.*  And finally, Pinson sought to have counsel appointed to represent her in this proceeding, despite the fact that the Court had denied Pinson's request for appointed counsel on multiple occasions.  *See id.*

On March 30, 2023, the Court issued a 34-page opinion granting Defendants' motion to dismiss the SAC and denying Pinson's motions for sanctions, the appointment of counsel, a preliminary injunction, and leave to file a supplemental complaint.  *See id.* at 34.  Pinson now moves for reconsideration of that opinion, *see* Pl.'s Mot., and Defendants have filed an opposition, *see* Defs.' Mem. P&A Opp'n Pl.'s Mot. Recons., ECF No. 159.

### III.  LEGAL STANDARD

Rule 59(e) permits a party to file a motion to "alter or amend a judgment" within 28 days of the entry of that judgment.[3]  Fed. R. Civ. P. 59(e).  Rule 59(e) motions are "disfavored and relief from judgment is granted only when the moving party establishes extraordinary

---

[3] "As a general matter, courts treat a motion for reconsideration as originating under Rule 59(e) if it is filed within 28 days of the entry of the order at issue and as originating under Rule 60(b) if filed thereafter."  *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 76 (D.D.C. 2013) (quoting *Owen–Williams v. BB & T Inv. Servs., Inc.*, 797 F. Supp. 2d 118, 121–22 (D.D.C. 2011)).  Because Pinson filed her motion for reconsideration less than 28 days after the Court issued its opinion, the Court will treat her motion as originating under Rule 59(e).

circumstances." *Niedermeier v. Off. of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001); *see also Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998).   A court must grant a motion to amend or alter a judgment only: "(1) if there is an 'intervening change of controlling law'; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to 'correct a clear error or prevent manifest injustice.'"  *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)); *see also Solomon v. Univ. of S. Cal.*, 255 F.R.D. 303, 305 (D.D.C. 2009).   Relief under Rule 59(e) is not appropriate when the moving party seeks to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Niedermeier*, 153 F. Supp. 2d at 28 (internal citation and quotation marks omitted); *see also Turner v. U.S. Capitol Police*, No. 12-cv-45, 2014 WL 169871, at *1 (D.D.C. Jan. 16, 2014). The party seeking reconsideration bears the burden of establishing that relief is warranted.  *See Zuza v. Off. of the High Representative*, No. 14-cv-01099, 2016 WL 447442, at *1 (D.D.C. Feb. 4, 2016).

## IV.  ANALYSIS

At a high level, Pinson's motion targets three different aspects of the Court's opinion. Specifically, she urges the Court to reconsider (1) its dismissal of her FTCA claims, *see* Pl.'s Mot. at 5–8, (2) its decision to deny her leave to file a supplemental complaint, *see id.* at 2–4, 7–8, and (3) conclusions the Court made regarding the strength of her allegations and the probative value of her evidence, *see id.* at 3–8.  The Court will address her arguments in turn.

### 1.  Dismissal of FTCA Claims

Pinson first argues that the Court improperly dismissed her FTCA claims on the ground that she had failed to show she exhausted her administrative remedies.  *See id.* at 8.  For context,

Pinson previously argued that "the Body of [her] amended complaint details more than 15 pages of factual details alleging actions by federal employees that constitute negligence, assault, battery, [and] intentional infliction of emotional distress."  Mem. Op. at 15–16 (quoting Pl.'s Reply Defs.' Opp'n Pl.'s Mot. for Leave to Amend at 8, ECF No. 131).  In its prior opinion, the Court did not determine whether the SAC had, in fact, stated a cognizable tort claim.  *See id.* at 16.  Instead, the Court held that, even if the SAC could be construed to contain such a claim, Pinson had failed to show "that she exhausted her administrative remedies" as required by the FTCA.  *See id.*; *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").  The Court explained that "[a] plaintiff seeking to bring a suit under the FTCA must first have 'presented the claim to the appropriate Federal agency and [her] claim shall have been finally denied by the agency in writing and sent by certified or registered mail.'"  Mem. Op. at 16 (quoting 28 U.S.C. § 2675(a)).  That is, "exhaustion occurs under the FTCA 'once a claimant has presented the appropriate federal agency with a claim describing the alleged injury with particularity and setting forth a sum certain of damages and the agency has (1) denied the claim in writing or (2) failed to provide a final disposition within six months of the claim's filing.'"  *Id.* (quoting *Chien v. United States*, No. 17-cv-2334, 2019 WL 4602119, at *7 (D.D.C. Sept. 23, 2019)).

In this case, the Court continued, Pinson's SAC alleged that she had filed "at least eight FTCA claims," but her complaint "name[d] only two purported tort claims—TRT-NCR-2018-0691 and TRT-NCR-2018-02200."  *Id.* at 17.  And though Pinson "provide[d] an alleged quotation from the former," she generally failed to "provide any evidence as to the submission of the claims."  *Id.*  Moreover, Pinson "d[id] not allege presentment of her claims with the requisite

particularity and a sum certain of damages to the BOP, or indicate which purported FTCA claims [BOP] allegedly denied." *Id.*; *see also Jackson v. United States*, 248 F. Supp. 3d 167, 171 (D.D.C. 2017) (explaining that "[t]o meet the exhaustion requirement, a plaintiff must have filed '(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim'" (quoting *GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C. Cir. 1987))).  And because Pinson also failed to allege that she "submit[ed] anything that would have allowed the agency to investigate her claim and determine whether to engage in settlement negotiations," the Court concluded that Pinson "failed to meet her burden of proving administrative exhaustion" and thus "dismisse[d] Pinson's FTCA claims for lack of subject matter jurisdiction."  Mem. Op. at 17 (quoting *Jackson*, 248 F. Supp. 3d at 171).

Now, Pinson argues that the Court was wrong to dismiss her FTCA claims for failure to exhaust because her SAC "*did* present significant factual detail" of the tort claims she allegedly filed with BOP.  Pl.'s Mot. at 8 (emphasis added).  In doing so, she notes that she has not provided the Court with evidence of her "heavily detailed tort claims" because she "lacks copies" of those claims.  *Id.*  Instead, she attaches two letters from BOP showing that—on an unidentified date and June 22, 2022—BOP denied two "[a]dministrative [t]ort [c]laim[s]" previously filed by Pinson.  *See* Ex. 1, Pl.'s Mot., ECF No. 158-1.

To the extent Pinson argues that her SAC contained sufficient "factual detail" regarding her efforts to exhaust her administrative remedies, *see* Pl.'s Mot. at 8, that argument can be quickly dispatched.  As mentioned above, Rule 59(e) motions are "not to be used to relitigate matters already argued and disposed of."  *Anyaso v. U.S. Capitol Police*, 305 F.R.D. 1, 2 (D.D.C. 2014) (quoting *Indep. Petroleum Ass'n of America v. Babbitt*, 178 F.R.D. 323, 324 (D.D.C. 1998)).  In other words, they are not "an opportunity to reargue facts and theories upon which a

court has already ruled." *Lambros v. Federative Republic of Brazil*, No. 19-cv-1929, 2021 WL 5071817, at *1 (D.D.C. Oct. 8, 2021) (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)).  The Court's original order grappled directly with the question of whether Pinson's SAC contained sufficient factual allegations supported by adequate proof such that Pinson had borne her burden of showing administrative exhaustion.  *See* Mem. Op. at 17.  The Court ultimately determined that Pinson had not carried that burden, and Pinson's Rule 59 motion does not provide a vehicle through which the Court will revisit that conclusion.

Pinson's attachment of the two letters from BOP does not alter the calculus.  Critically, Pinson does not explain why she did not attach these letters to her opposition to Defendants' motion to dismiss, which she filed on January 17, 2023.  *See generally* Pl.'s Opp'n Mot. Dismiss, ECF No. 154.  As noted, one of the letters Pinson now attaches was dated June 22, 2022.  *See* Ex. 1, Pl.'s Mot.  Despite the fact that this date precedes the filing of Pinson's opposition by nearly seven months, Pinson fails to explain why she waited until *after* the Court had ruled on the motion to dismiss to bring it to the Court's attention.  *See Footbridge Ltd. Tr. v. Zhang*, No. 04-cv-347, 2005 WL 6959181, at *1 (D.D.C. May 2, 2005) (explaining that a Rule 59(e) motion is not "a method of introducing evidence that was 'available but not offered at the original motion'" (quoting *Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 705 F. Supp. 698, 702 (D.D.C.), *vacated on other grounds*, 707 F. Supp. 3 (D.D.C. 1989))).[4]  Accordingly, to the extent Pinson seeks reconsideration of the Court's decision to dismiss her FTCA claims, her motion is denied.

---

[4] The Court also notes that the June 22, 2022 letter postdates the March 9, 2022 filing of Pinson's SAC.  Thus, even were the Court inclined to consider the newly filed letters as a basis for granting reconsideration, it is far from clear that those letters would support Pinson's claim that she administratively exhausted her tort claims *before* filing her SAC.  *Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 20 (D.C. Cir. 2010) ("[T]he claimant [must] have exhausted [her] administrative remed[ies] *before* filing suit." (emphasis added)).

## 2. Denial of Leave to File Supplemental Complaint

Second, Pinson moves for reconsideration of the Court's decision to deny her motion for leave to either amend her SAC or file a supplemental complaint reasserting her First Amendment claim. As discussed above, Pinson's First Amended Complaint contained a First Amendment claim that Pinson then "dropped" when she filed her SAC. *See* Mem. Op. at 26. In its opinion, the Court denied Pinson leave to amend on two main grounds. First, the Court held that Pinson had "undu[ly] delay[ed]" in seeking leave to amend. *Id.* at 27. The Court explained that, on March 9, 2022, the Court had "issued [an] opinion noting Pinson's dropped First Amendment claim." *Id.*; *see also Pinson v. U.S. Dep't of Just.*, No. 18-cv-486, 2022 WL 703924, at *2 (D.D.C. Mar. 9, 2022). Despite that fact, Pinson waited until November 2022 (three months after Defendants filed their motion to dismiss) to "raise[] her assertion that she in fact intended to include her First Amendment claim in the SAC." Mem. Op. at 27. The Court found that— "[e]ven accounting for Pinson's status as a *pro se* litigant"—such a lengthy delay was unjustified, and that Pinson's "undue delay" alone provided a sufficient basis upon which to deny Pinson leave to amend. *See id.* (collecting cases). That said, the Court further found that allowing Pinson leave to amend would unduly prejudice Defendants, given that Defendants had already "moved to dismiss several times" and that they had done so again "in reliance on Pinson's descriptions of her claims." *Id.* at 27–28. Separately, the Court held that Pinson's new allegation that she had "suffered additional retaliation" after filing her SAC "d[id] not suffice to merit further supplementation of the SAC . . . , given that the incident report at issue has since been expunged and [Pinson] has not shown any evidence that Defendants have in fact deprived her of access to paper and envelopes in response to her litigation." *Id.* at 28.

Pinson makes two arguments for why the Court should reconsider these holdings.  First, she argues that the Court did not adequately explain how it "reached the conclusion" that Pinson had unduly delayed in seeking leave to amend.  *See* Pl.'s Mot. at 4.  To that end, she argues that she has "repeatedly" explained to the Court that "BOP was denying her law library time, paper, envelopes, pens, stamps, [and] access to her legal files."  *Id.*  Second, she argues that the Court erroneously concluded that she "ha[d] not shown any evidence that Defendants have in fact deprived her of access to paper and envelopes in response to her litigation."  Pl.'s Mot. at 1–2 (emphasis omitted) (quoting Mem. Op. at 28).  She argues that she did, in fact, present evidence (in the form of "her own declarations as well as those of other inmates") and thus the Court's "use of the term 'any' evidence [was] not factually accurate."  *Id.* at 2.

Pinson's contentions do not provide a basis for reconsideration.  As explained, "[a] Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Ciralsky v. C.I.A.*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone*, 76 F.3d at 1208).  Pinson does not contend that there was an "intervening change of controlling law," nor does she contend that the Court should reconsider its prior opinion on the basis of "new evidence."  *See id.* (quoting *Firestone*, 76 F.3d at 1208).  And the Court concludes that reconsideration is not necessary to correct a clear error or prevent manifest injustice.

A movant seeking to demonstrate clear error or manifest injustice in the context of Rule 59(e) faces exceptionally long odds.  As to the former, courts have explained that the "'clear error' standard is a 'very exacting standard.'"  *StimLabs, LLC v. Becerra*, 651 F. Supp. 3d 56, 59 (D.D.C. 2023) (quoting *Bond v. U.S. Dep't of Just.*, 286 F.R.D. 16, 22 (D.D.C. 2012)).  In other

words, "[a] final judgment must be 'dead wrong' to constitute clear error." *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 78 (D.D.C. 2013) (quoting *Lardner v. FBI*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012)); *see also StimLabs, LLC*, 651 F. Supp. 3d at 59 ("A court 'should have "a clear conviction of error" before finding a final judgment was predicated on clear error.'" (quoting *Bond*, 286 F.R.D. at 22)).  And for a movant to show manifest injustice, she must generally show "at least (1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law." *Leidos*, 881 F.3d at 217 (quoting *Mohammadi*, 947 F. Supp. 2d at 78).

Simply put, Pinson fails to show that the Court's prior opinion was clearly erroneous or effectuates a manifest injustice.  Although Pinson seems to allege that her delay in attempting to reassert her First Amendment claim was because BOP was denying her access to the materials she needed to file a motion, *see* Pl.'s Mot. at 4, she provides no evidence tending to explain or show why it took her over eight months to alert the Court of the alleged "clerical error" that resulted in the dropped claim, *see* Mem. Op. at 26.  Moreover, Pinson's motion for reconsideration wholly fails to address the alternate basis on which the Court denied her motion for leave to amend—that is, that allowing Pinson leave to amend "would impose undue prejudice on Defendants." *Id.* at 27.  As noted above, Pinson—as the party seeking reconsideration—bears the burden of establishing that relief is warranted and that "harm or injustice would result if reconsideration were denied." *Zuza*, 2016 WL 447442, at *1 (quoting *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012).  Given Pinson's failure to even feint at addressing the alternative basis on which the Court denied her

motion to amend, the Court concludes that no harm or injustice would inure as a result of denying her motion for reconsideration on this front.[5]

### 3. Pinson's Other Challenges

Finally, Pinson raises a number of challenges to conclusions the Court made regarding the strength of her allegations and the evidence she provided to support her various claims. More specifically, she argues (1) that the Court wrongfully assumed that BOP was providing her with paper and envelopes when, in fact, she acquired those items by buying them from other inmates, *see* Pl.'s Mot. at 3–4, and (2) that the Court improperly concluded that Pinson's allegations and evidence of prison staff misconduct were insufficient to warrant sanctions or the issuance of a preliminary injunction, *see id.* at 5–8.

Neither of these arguments merits relief under Rule 59.  First, to the extent that Pinson now claims that BOP was not supplying her with paper and envelopes, but rather that Pinson "acquired such [items] from other inmates by selling her own meals and fishing them into her cell," *id.* at 3, Pinson does not explain why she waited until now to raise this point.[6]  Thus, to grant reconsideration would be to ignore the principle that a Rule 59(e) motion is neither "a vehicle for presenting theories or arguments that could have been advanced earlier," *Ellis v. Comm'r of Internal Revenue Serv.*, No. 14-cv-0471, 2014 WL 12943158, at *2 (D.D.C. Dec. 3,

---

[5] In that vein, the Court also declines to award Rule 59 relief based on Pinson's claim that the Court inaccurately stated that Pinson had not offered "'any' evidence" that Defendants had deprived her of paper or envelopes.  *See* Pl.'s Mot. at 2 (quoting Mem. Op. at 28).  This argument, too, fails to account for the Court's conclusion that granting Pinson leave to file a supplemental complaint would unfairly prejudice Defendants.  *See* Mem. Op. at 27.

[6] In support of this contention, Pinson purports to cite a new declaration which she claims is "attached" to her instant motion.  *See* Pl.'s Mot. at 3.  That declaration is not actually attached to the version of the motion filed on the docket.  Ultimately, however, the unavailability of the declaration is immaterial, as the Court assumes that the declaration supports Pinson's new argument regarding how she acquired paper and envelopes.

2014) (quoting *Swedish Am. Hosp. v. Sebelius*, 845 F. Supp. 2d 245, 250 (D.D.C. 2012)), nor an opportunity to present "evidence that was 'available but not offered [alongside] the original motion,'" *Int'l Painters & Allied Trades Indus. Pension Fund v. Design Techs.*, 254 F.R.D. 13, 19 (D.D.C. 2008) (quoting *Nat. Res. Def. Council*, 705 F. Supp. at 702).

Second, Pinson's arguments regarding the strength of various pieces of evidence and the allegations she made in support of her motions for sanctions and for a preliminary injunction simply amount to attempts to "reargue facts and theories upon which [the] [C]ourt has already ruled." *See Swedish Am. Hosp.*, 845 F. Supp. 2d at 250 (quoting *New York*, 880 F. Supp. at 38). For instance, she variously asserts that the Court improperly found that her evidence was "not 'convincing,'" Pl.'s Mot. at 5 (quoting Mem. Op. at 33), "ignore[d] . . . detailed declarations," *see id.*, failed to grasp the "plain" import of other declarations, *see id.* at 7, and drew conclusions for which there was "simply no factual or evidentiary support," *see id.* at 8.  The Court declines Pinson's invitation to "re-weigh the same evidence [it has already] considered," *Banks v. Booth*, 518 F. Supp. 3d 57, 71 (D.D.C. 2021), and to revisit "theories upon which [it] has already ruled," *Swedish Am. Hosp.*, 845 F. Supp. 2d at 250 (quoting *New York*, 880 F. Supp. at 38).  Her motion is, therefore, denied on this basis as well.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration (ECF No. 158) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 7, 2024                                    RUDOLPH CONTRERAS
                                                                     United States District Judge